FILED 31 JUL '25 13:43 USDC-ORP

Jorden Hollingsworth
15919 SE Mcloughlin Blvd #4
Portland, Oregon 97267
503-488-9680
Jordentimothy11@gmail.com

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF OREGON

JORDEN HOLLINGSWORTH,

Petitioner,

v.

SANOFI-AVENTIS US; CHATTEM INC.;
QUTEN RESEARCH INSTITUTE LLC; AMJ
SERVICES LLC; DRVM LLC; DEEPAK
CHOPRA; MAGED BOUTROS; ASHRAF
BOUTROS; MARIE-LAURIE AMIARD-
BOUTROS,

Respondents.

Case No. 3:25-cu-1342-AB

---

## PETITION TO COMPEL ARBITRATOR APPOINTMENT PURSUANT TO 9 U.S.C. § 5

### I.    INTRODUCTION

1.    Petitioner Jorden Hollingsworth respectfully petitions this Court under the Federal

Arbitration Act (**9 U.S.C. § 5**) to appoint an arbitrator in an ongoing arbitration administered by

**JAMS under Case No. 5160000821,** as the parties have failed to agree on an arbitrator within

the time provided by the arbitration agreement and applicable JAMS rules.

2.      This matter arises from a high-stakes, multi-respondent arbitration involving allegations

of wage violations, corporate concealment, misuse of shell entities, and broader misconduct by

respondents including DRVM LLC and upstream entities such as Sanofi, Chattem Inc., and

Quten Research Institute. A true and correct copy of **Petitioner's Second Amended Arbitration**

**Complaint,** filed with JAMS on February 27, 2025, is attached hereto as Exhibit 2 and is

incorporated by reference for background purposes only.


3.      Despite multiple good-faith efforts by Petitioner to move the arbitration process forward,

respondents have failed to engage in arbitrator selection, declined to enter formal appearances,

and have taken strategic procedural actions that appear intended to delay or frustrate the

proceedings—most notably, an unsolicited payment of **$6,130.10 made on July 1, 2025,** without

explanation or prior communication.


## II.      JURISDICTION AND VENUE

4.      This Court has subject matter jurisdiction pursuant to **9 U.S.C. §§ 4** and **5 and 28 U.S.C.**

**§ 1332(a),** as the amount in controversy exceeds $75,000 and the parties are citizens of different

states.


5.      Venue is proper in this District pursuant to **9 U.S.C. § 4** and **28 U.S.C. § 1391(b)** because

the arbitration agreement was executed in this District and the underlying employment and

business conduct giving rise to the dispute occurred here.

### III.    BACKGROUND

6.    Petitioner was employed by DRVM LLC, an entity with no standalone operations,

personnel infrastructure, or independent business presence, and which is believed to be under the

direct or indirect control of larger corporate respondents, including Sanofi, Chattem Inc., Quten

Research Institute, and individuals such as Deepak Chopra and members of the Boutros family,

who held ownership interests and exercised material control over affiliated entities. Upon

information and belief, DRVM LLC functioned primarily as a pass-through or administrative

vehicle used to limit liability and obscure the role of upstream corporate and individual actors.

Petitioner reserves all factual and legal determinations regarding corporate structure and control

for resolution in arbitration.

7.    After filing wage claims and whistleblower disclosures, Petitioner initiated arbitration as

required by a signed agreement mandating binding arbitration under JAMS rules. Gordon Rees

Scully Mansukhani LLP ("GRSM") initially appeared as counsel for Respondent DRVM LLC.

Subsequently, the law firm Fisher Phillips LLP filed a separate Notice of Appearance on behalf

of the same respondent. The lack of coordination or apparent knowledge between the two firms

strongly suggests the existence of undisclosed parties operating behind a single shell entity.

Despite multiple requests from JAMS for clarification of representation, GRSM ultimately

withdrew, leaving Fisher Phillips as the sole firm representing only one of the eight named

respondents to formally appear on record.

8.      Petitioner originally nominated Ryan Abbott, a nationally recognized arbitrator, legal scholar, and author of the JAMS Guidelines on the **Use of Artificial Intelligence in Dispute Resolution.** Given the novel and complex nature of this matter, where a pro se claimant is utilizing AI tools in place of a traditional legal team, and respondents include Sanofi, a self-described global leader in AI-enabled pharmaceutical innovation, Petitioner sought to ensure the arbitration would be administered by a neutral with appropriate expertise in emerging technologies. The nomination of an arbitrator directly involved in the authorship of JAMS' AI framework was intended to support fair and informed adjudication, consistent with the procedural expectations outlined in **JAMS Rule 15(b).**

9.      Respondents objected to Petitioner's original nomination and failed to meaningfully participate in arbitrator selection. JAMS subsequently informed the parties that, under the terms of their arbitration agreement and applicable rules, continued deadlock would require judicial appointment pursuant to **9 U.S.C. § 5.**

10.     On July 1, 2025, Petitioner issued a formal 48-hour notice to respondents, stating that absent agreement on a strike-and-rank list featuring arbitrators with **AI and emerging technology qualifications**, he would seek court intervention.

11.     Later that same day, DRVM LLC made an unsolicited deposit of **$6,130.10** into Petitioner's long-dormant personal checking account. The payment was made without explanation, W-2, court instruction, or any formal notice, and appeared to be an attempt to interfere with jurisdiction, perception, or the integrity of the arbitration process. The timing raises concerns of concealment, spoliation, and potential manipulation of forum proceedings.

12.     On July 2, 2025, DRVM submitted a limited response agreeing to proceed with an

arbitrator list including AI and emerging technology experience, as contemplated by **JAMS Rule**

**15(b).** However, respondents attempted to narrow the scope by asserting that any such arbitrator

must also possess wage and hour expertise. An apparent effort to reframe the matter as a routine

labor dispute, despite the broader claims involving whistleblower disclosures, corporate

structuring, and emerging technology. The submission made no mention of the unsolicited

deposit, offered no clarification regarding the other named respondents, and failed to address the

wider allegations raised in the arbitration record.

13.     Petitioner immediately notified JAMS of the unsolicited deposit by filing a formal

Claimant's Notice of Unsolicited Payment from DRVM LLC, which included a banking record

showing the transaction. This document is attached as Exhibit 23.

14.     On July 16, 2025, fifteen days after the unsolicited payment, Fisher Phillips submitted an

Answer on behalf of DRVM LLC. The Answer makes no mention of the deposit, fails to

acknowledge the procedural concerns raised, and consists largely of general denials. Notably, the

Answer lists an incorrect JAMS case number, omits any mention of the arbitrator selection delay,

and denies representing any of the individual respondents — including Maged Boutros, who

controls both DRVM LLC and AMJ Services, which JAMS previously deemed interlinked.

Respondent DRVM LLC's Answer, submitted on July 16, 2025, is attached hereto as Exhibit 26.

15.     Additionally, Fisher Phillips first entered the case on April 14, 2025, while DRVM LLC

was still administratively dissolved under Oregon law. DRVM was not reinstated until April 25.

Under ORS 63.654 and ORS 63.651, a dissolved LLC cannot maintain legal proceedings until

reinstated. This raises serious concerns about the authority under which the law firm entered the case and submitted filings, and reinforces petitioner's position that upstream parties are directing litigation behind a dissolved shell. Exhibit 14 shows DRVM LLC was dissolved and reactivated during this arbitration.

16.    On July 28, 2025, JAMS issued a formal strike list containing proposed arbitrators for this matter. However, not a single individual on the list possessed relevant expertise in artificial intelligence (AI), whistleblower law, or complex healthcare fraud—despite prior agreement by the parties that this case would proceed under JAMS Rule 15(b), requiring a neutral with AI and emerging tech experience. This omission is not procedural oversight; it is a material breach of the governing agreement and a threat to the legitimacy of the arbitration. See Exhibit 28 (arbitrator strike list).

17.    On July 29, 2025, Petitioner submitted a formal Objection to the Arbitrator Strike List, detailing the absence of qualified neutrals and providing public evidence that the proposed list undermines both the agreed selection process and the public interest. The list excludes both Ryan Abbott and Daniel Garrie, the only two publicly known JAMS arbitrators involved in drafting or overseeing AI-specific arbitration frameworks. This was issued alongside a 48-hour notice stating that, absent correction, a federal petition would be filed. See Exhibit 30 (Petitioner's objection).

18.     JAMS responded on July 29, 2025 by invoking a standard 7-day strike period (see Exhibit 29), despite the fact that the list provided was procedurally invalid. As clearly agreed on July 2, any arbitrator considered for this matter must have demonstrable experience in AI and emerging technology, consistent with the nature of this case. This is not simply about tech — the claim also involves complex shell structuring, active IRS claims, and federal whistleblower filings tied to pharmaceutical fraud. None of the arbitrators on the list meet even one of these qualifications.

19.     This is not a matter of subjective preference, it is a binding agreement between parties that defined the eligibility requirements for any strike list moving forward. The invocation of a 7-day strike period assumes both parties are reviewing a valid list. There is no valid list to strike when not a single arbitrator meets the agreed criteria.

20.     Despite this, the forum has continued to extend procedural timelines that allow respondents, who have not appeared on the record for months and are actively hiding behind a dissolved shell company, more time to respond. These delays do not serve justice. They put a federal whistleblower in limbo, compromise the integrity of the process, and further entrench the imbalance that this petition seeks to remedy. The forum's failure to enforce its own agreement creates the very prejudice Rule 15(b) was designed to avoid.

21.     This objection must be read in light of prior procedural misconduct: (1) the secret reactivation of DRVM LLC mid-arbitration, which shows clear intent to conceal or mislead; and (2) the undisclosed deposit of $6,130 by DRVM on July 1, 2025, submitted without notice, W-2

reporting, or formal record. Together, these acts suggest coordinated attempts to manipulate forum rules, confuse jurisdiction, and delay public accountability.

22.    The totality of the circumstances—unexplained corporate reactivation, secret payments, misrepresentations about representation, and the issuance of a clearly lopsided arbitrator list— warrants immediate judicial intervention. Petitioner respectfully requests that the Court consider these developments as further justification for the relief sought herein

## IV.    LEGAL BASIS

23.    The parties' arbitration agreement expressly provides that if the parties cannot agree on an arbitrator, a court may appoint one. Please see Exhibit 1 (Arbitration Agreement). This contractual clause mirrors the authority granted under **9 U.S.C. § 5,** which permits judicial intervention where the agreed method of selecting an arbitrator fails or where a party refuses to proceed. Court appointment is appropriate here to prevent obstruction and ensure the arbitration moves forward under the terms both parties accepted.

24.    Under Rule 15(b) of the JAMS Comprehensive Arbitration Rules and Procedures, if the parties are unable to agree on an arbitrator, JAMS shall provide a list of qualified candidates, and the parties will engage in a strike-and-rank selection process. In this case, the parties have agreed to proceed with a list composed of neutrals who possess demonstrated experience in artificial

intelligence and emerging technologies, reflecting the procedural and substantive complexity of the dispute.

25.     This case presents novel and technologically complex issues involving the use of artificial intelligence in legal preparation, document analysis, and procedural filings. As a pro se litigant, Petitioner has relied exclusively on AI tools to identify concealed corporate structures, develop legal arguments, and prepare arbitration submissions. Given the evolving nature of this technology and its central role in the case, it is critical that the arbitrator possess a working understanding of AI and related emerging technologies to ensure fair and competent adjudication. On July 2, 2025, the parties agreed to utilize a strike-and-rank list composed of neutrals with demonstrated experience in these areas. Please see Exhibit 8. (Petitioners Motion and email asserting AI-arbitration requirement). Please see Exhibit 9 (DRVM agreement on experience).

26.     Due to the parties' failure to complete arbitrator selection under the agreed process, Petitioner respectfully requests that the Court appoint an arbitrator with experience in artificial intelligence and emerging technologies pursuant to **9 U.S.C. § 5.** Petitioner is pro se and has relied solely on AI tools to prepare and litigate this case, making such qualifications essential to ensure a fair and informed proceeding.

27.     Petitioner has submitted formal whistleblower claims to the **Internal Revenue Service under 26 U.S.C. § 7623**, detailing tax-related misconduct and concealment involving Sanofi, Chattem Inc., and Quten Research Institute. The claims have been acknowledged and assigned

official reference numbers, confirming that the submissions met the agency's criteria for
review. Three (3) individual claim numbers have been issued on April 28, 2025. Exhibit 7 (IRS
claim number acknowledgment.)

28.    Petitioner has acted in good faith throughout these proceedings, submitting all motions,
exhibits, and procedural filings pro se and without the benefit of legal counsel. Respondents, by
contrast, have repeatedly delayed participation, made inconsistent appearances, and avoided full
engagement in the arbitrator selection process, creating uncertainty and obstruction within a
binding arbitration framework.

29.    The parties' arbitration agreement expressly provides that if the parties cannot agree on
an arbitrator, a court may appoint one. This contractual clause mirrors the authority granted
under 9 U.S.C. § 5, which permits judicial intervention where the agreed method of selecting an
arbitrator fails or where a party refuses to proceed. See *Sink v. Aden Enters.*, **352 F.3d 1197,
1201 (9th Cir. 2003).**

30.    The Ninth Circuit has affirmed that courts may exercise discretion under § 5 to ensure
arbitration proceeds despite bad-faith delays. See *In re Salomon Inc. S'holders' Derivative
Litig.*, **68 F.3d 554, 557 (2d Cir. 1995).** Respondents have failed to meaningfully participate in
arbitrator selection and have attempted to interfere with the proceeding by making unsolicited
payments and refusing to clarify representation.

31.     Courts may also consider the nature and complexity of the dispute when selecting an

arbitrator. In *New Regency Prods., Inc. v. Nippon Herald Films, Inc.*, **501 F.3d 1101, 1108 (9th**

**Cir. 2007),** the court affirmed the district court's discretion to consider subject-matter expertise

in its appointment. Petitioner has exclusively relied on AI to prepare and litigate this matter and

seeks adjudication of whistleblower, concealment, and AI-enabled issues—making subject-

matter qualifications essential.

32.     Similarly, courts have recognized that technical disputes may justify selecting arbitrators

with specific expertise. See *Certain Underwriters at Lloyd's v. Argonaut Ins. Co.*, **264 F. Supp.**

**2d 926, 945 (N.D. Cal. 2003)** (appointing arbitrator with background in technical insurance

matters). Petitioner requests that the appointed arbitrator have demonstrated experience in

artificial intelligence and emerging technologies.

33.     Where parties engage in tactics that obstruct or delay arbitration, courts must act to

preserve the integrity of the process. See *Moses H. Cone Mem'l Hosp. v. Mercury Constr.*

*Corp.*, **460 U.S. 1, 22 (1983).**


## V. REQUEST FOR RELIEF

WHEREFORE, Petitioner respectfully requests that the Court enter an order:

(a) Appointing an arbitrator pursuant to 9 U.S.C. § 5 and the parties' arbitration agreement, due to the failure of the agreed-upon selection process;

(b) Appointing an arbitrator with demonstrated experience in artificial intelligence and emerging technologies, in light of Petitioner's exclusive use of AI in preparing and litigating this matter, and the parties' July 2, 2025 agreement to utilize a qualified list under Rule 15(b) of the JAMS Comprehensive Arbitration Rules;

(c) Directing the parties and JAMS to proceed with arbitration without further delay and in good faith, consistent with this Court's appointment;

(d) An order appointing a qualified arbitrator with demonstrated experience in pharmaceutical fraud, shell corporations, whistleblower law, federal oversight, and AI assisted litigation;

(e) Granting such other and further relief as the Court deems just and proper.

## V.    CONCLUSION

34.    This petition is brought not only to preserve Petitioner's right to a fair arbitration, but also to safeguard the integrity of the arbitral process itself against ongoing delay, procedural obfuscation, and unexplained payments. Appointment of a qualified arbitrator is essential to ensure this complex, technology-driven matter is properly heard. Petitioner respectfully requests prompt relief.

Respectfully submitted,

Dated: July 31, 2025

/s/ Jorden Hollingsworth
Jorden Hollingsworth
Pro Se Petitioner
15919 SE Mcloughlin Blvd #4
Portland, Oregon 97267
503-488-9680
Jordentimothy11@gmail.com

Exhibit

Index

Exhibit Index – Federal Petition to Compel Arbitrator Appointment

## **Exhibit Index – Federal Petition to Compel Arbitrator Appointment**

- Exhibit 1 – Arbitration Agreement

- Exhibit 2 – Arbitration Demand

- Exhibit 3 – Emails with GRSM

- Exhibit 4 – GSRM Clarification to Just DRVM

- Exhibit 5 – Petitioner Response to JAMS About Clarification

- Exhibit 6 – Petitioner Response to GSRM About Clarification

- Exhibit 7 – Petitioner Follow-Up Early March to JAMS

- Exhibit 8 – Official Service Document (as Exhibit A of Arbitration)

- Exhibit 9 – Official Settlement Letter

- Exhibit 10 – Third and Fourth Evaluation Amendment

- Exhibit 11 – GRSM Request for Two Weeks & Petitioner's Response

- Exhibit 12 – Fisher Phillips Notice of Appearance & Response

- Exhibit 13 – Collision of Fisher Phillips and GRSM Email (JAMS Thread)

- Exhibit 14 – DRVM Reactivation

- Exhibit 15 – IRS Claim Numbers (April 28)

- Exhibit 16 – GRSM Withdrawal (April 28)

- Exhibit 17 – Follow-Up Email Thread with JAMS

- Exhibit 18 – Notice of Intent / Waiver Granted

- Exhibit 19 – Petitioner Motion to Appoint Due to Obstruction and Nonpayment – Ryan

Abbott Nomination

- Exhibit 20 – DRVM Objection on Ryan Abbott

1

Exhibit Index – Federal Petition to Compel Arbitrator Appointment

- Exhibit 21 – Petitioner's Response to Objection
- Exhibit 22 – Email Thread: Nonpayment, Arbitrator Objection, 48-Hour Federal Petition Deadline, and Deposit Conditions
- Exhibit 23 – Undisclosed $6,130.10 Deposit on July 1 (No Paystub, No Settlement Agreement, No Explanation)
- Exhibit 24 – Petitioner's Notice of Unsolicited Payment
- Exhibit 25 – DRVM Agreement for Criteria to Avoid Federal Petition
- Exhibit 26 – DRVM Answer (July 16) – No Mention of the Deposit
- Exhibit 27 – Petitioner Follow-Up to Answer and Reminder of Arbitrator Agreement
- Exhibit 28 – Strike List with Qualifications Summary
- Exhibit 29 – Email Thread: Objection and 48-Hour Deadline to Fix
- Exhibit 30 – Petitioner's Objection to Strike List
- Exhibit 31 – JAMS Disclosures
- Exhibit 32 – Arbitration Demand Service List

Exhibit 1:

Arbitration

Agreement

## MUTUAL ARBITRATION AGREEMENT

The Parties to this Agreement are the Employee and the Employer identified at the end of this Agreement. This Agreement does not change the at-will status of the Employee's and Employer's relationship. This Agreement supersedes all other arbitration agreements between the Parties. The Parties' employment relationship involves interstate commerce, subjecting this Agreement to the Federal Arbitration Act ("FAA"). To resolve disputes fairly and quickly, the Parties agree that each must arbitrate any "covered claim," as defined below.

A)    All covered claims shall be resolved by a neutral arbitrator. This Agreement waives any right to bring or participate in a class, collective, or representative proceeding. To the extent this waiver is unenforceable, then, only to that extent, any covered claim must be filed in court, and the court, not an arbitrator, shall resolve the dispute. Any dispute about whether a class, collective, or representative action can be arbitrated is a decision for a court, not an arbitrator. Any representative claim found not subject to arbitration under this Agreement will be tried in court, and will be stayed pending the outcome of the arbitration.

B)    A "covered claim" is any claim (except a claim that by law is non-arbitrable) that arises out of or relates to any service Employee has performed for Employer. This Agreement includes any covered claim brought by or against a third party, including any client of Employer. This Agreement can be enforced by any such third party. Covered claims include, but are not limited to, any claim for misappropriation of property, for breach of contract, for violation of any federal or state statute or wage order, for unpaid fees or wages, for unreimbursed expenses, for overpayment or underpayment of wages, for penalties for unprovided meal or rest breaks, for wrongful termination, for unfair competition, and for discrimination, harassment, or retaliation. Employee retains the right to pursue claims before any governmental enforcement agency.

C)    Arbitration will occur in the state where the relevant work occurred, and the arbitrator shall apply the law of that state. The arbitrator has the authority to order the same individual remedies that a judge could in court. But the arbitrator may not consolidate more than one person's claims and, unless legally required, may not otherwise preside over any form of a representative, collective, or class proceeding. If the Parties cannot agree on an arbitrator, the court can appoint one. The Parties shall follow the JAMS Employment Arbitration Rules (appearing at http://www.jamsadr.com/rules-employment-arbitration), to the extent those rules are consistent with relevant provisions of this Agreement. The arbitrator's written award (i) normally will issue within 30 days of receiving all evidence, (ii) must state reasons to support the decision, and (iii) must be based on governing law and evidence cited. The arbitrator lacks the power to commit any error of law, and the award may be vacated or corrected on appeal to a court for any such error. As to these standards, the Parties choose not to follow the FAA.

D)    Employer must pay all arbitrator fees and costs of arbitration, except that Employee must pay arbitration filing fees up to the amount the Employee would have to pay to file a lawsuit in court.

E)    Employee must sign this Agreement as a condition of employment but may, within 30 calendar days of signing, opt-out of this Agreement by notifying Employer in writing.

F)    This Agreement can be modified only in a writing the Parties sign. Any unenforceable provision shall be severed, leaving the remaining provisions in effect. Continuing to work without opting out constitutes an acceptance of this Agreement.

G)    This Agreement may be enforced and administered by a court in connection with a petition to compel arbitration, a petition to confirm, vacate, or modify an arbitration award, or some other invoking of the FAA, the relevant state's arbitration law, or a combination of the two.

ANY DECISION TO REVOKE CONSENT WILL NOT ADVERSELY AFFECT EMPLOYMENT. FOR ANY COVERED CLAIM, THE PARTIES WAIVE THE RIGHT TO JURY OR COURT TRIAL AND THE RIGHT TO CLASS, REPRESENTATIVE, AND COLLECTIVE PROCEDURES. THE PARTIES RETAIN ALL OTHER RIGHTS, INCLUDING THE RIGHT TO COUNSEL, TO EXAMINE WITNESSES, AND TO HAVE CLAIMS RESOLVED BY AN IMPARTIAL FACT-FINDER. THE PARTIES ACKNOWLEDGE THEY HAVE BEEN ADVISED TO SEEK LEGAL ADVICE AS TO THEIR RIGHTS AND RESPONSIBILITIES UNDER THIS AGREEMENT

**Jorden Timothy**

Employee Print Name

_(signature)_

Employee Signature

**10 / 15 / 2024**

Date

**DRVM, LLC**

Employer Name

*Vilma Veras*

By

2

Exhibit 2:

Arbitration

Demand

15919 SE Mcloughlin Blvd Unit 4 Portland,

Oregon 97267

Jordentimothy11@gmail.com

503-488-9680

Claimant: **Jorden Hollingsworth** vs.

Respondents: **DRVM LLC, AMJ Services, Ashraf "Peter" Boutros, Deepak Chopra, Maged "Mike" Boutros, Marie-Laurie Amiard-Boutros, Osama Boutros, Chattem, Inc. Quten Research Institute LLC, Sanofi-Aventis U.S. LLC, TPD IP LLC,**

**AMENDED DEMAND FOR ARBITRATION**

**BEFORE JAMS ARBITRATION**

Case No.: *#5160000821*

Date: *02/26/2025*

## I.    INTRODUCTION

This case is not a routine employment dispute—it is a deliberate, highly orchestrated corporate scheme designed to **misclassify wages, obscure employer liability, and manipulate payroll obligations,** all while funneling profits through a complex network of successor entities and financial trusts. At its core, this case is about the **Respondents' failure to pay final wages on time, as required by law,** and their continued effort to evade statutory penalty wages through the use of shell corporations and successor entities, shielding them from direct employer liability.

The Respondents—Ashraf "Peter" Boutros, Deepak Chopra, Maged "Mike" Boutros, Osama Boutros, and Marie-Laurie Amiard-Boutros—engineered a **multi-layered payroll structuring operation** spanning multiple states, involving at least **30** corporate entities, all of which functioned through a centralized financial hub at **411 E Bonneville Ave, Las Vegas, NV**—the address listed on Claimant's paystub.

At the center of this scheme is "***Direct Demo***," the sales and marketing division for **Qunol** and **Zena Nutrition** products. Respondents structured this business in a way that allowed them to hire employees under different legal entities while falsely presenting them as a single, unified employer. Payroll records confirm that **AMJ Services LLC, DRVM LLC, MK Marketing LLC, and DRC Demo LLC** all operated under the "*Direct Demo*" brand, despite being separate legal entities created for the sole purpose of shifting employer liability, reclassifying wages, and concealing financial responsibility.

Claimant was terminated on **December 12, 2024,** triggering an immediate legal obligation under **ORS 652.140** to issue final wages no later than **December 13, 2024.** Instead, Respondents failed to pay Claimant until **December 27, 2024—14 days late.** Under **ORS 652.150**, failing to pay final wages on time triggers penalty wages, requiring the employer to compensate the employee at their regular daily rate for up to 30 days. As of December 28, 2024, when penalty wages were due, Respondents **still had not complied with their legal obligations.**

Respondents' refusal to pay penalty wages was not an oversight—it was a deliberate and calculated effort to avoid accountability through the use of shell corporations and successor entities. Their payroll structuring tactics **systematically dissolved, transferred, and restructured payroll obligations to obstruct employees from enforcing their rights to timely wages.** Employer identity changed multiple times, and payroll was issued under dissolved or successor entities, creating legal and procedural barriers for unpaid wage claims.

**Successor Liability & Corporate Deception**

Respondents strategically operated successor entities at 411 E Bonneville, assuming payroll functions previously handled by DRVM LLC after its dissolution—without assuming the associated financial liabilities. This triggers successor liability principles under **Oregon law**, which hold that a business continuing the same operations, processing payroll, or financially benefiting from a **dissolved entity's workforce** is responsible for outstanding obligations.

Additionally, public business registrations confirm that several payroll-processing and commission-structuring entities are linked to the **Boutros Family Foundation.** Rather than issuing commissions and wages directly, Respondents structured payments through multiple entities, creating layers of corporate separation between those controlling the financial benefits and those responsible for payroll obligations.

**Sanofi's Direct Involvement in Payroll Structuring**

This scheme extends beyond just Chopra & Boutros controlled businesses. Sanofi, through its wholly owned subsidiaries, **Chattem, Inc. and Quten Research Institute, played a direct financial role in payroll structuring and commission misclassification.**

• Sanofi owns Quten Research Institute, which financially controlled Qunol commissions that were misclassified as wages.

• Sanofi owns Chattem, Inc., a company with multiple entities at 411 E Bonneville, which has direct ties to payroll processing and employer identity manipulation.

• Payroll funds and commissions moved through Sanofi-controlled entities, linking them to financial structuring that concealed employer responsibility.

Given these financial relationships, Sanofi cannot argue that it is "too far removed" from payroll structuring when its subsidiaries were **financially benefiting from wage suppression and successor liability structuring.**

## Employer Identity Manipulation & Wage Misclassification

Claimant's wages were manipulated through a system designed to shield employer liability:

• Paystubs falsely reflected excessive work hours to conceal misclassified commissions.

• Payroll was processed under dissolved entities, violating Oregon law (**ORS 60.637, ORS 60.654).**

• Employer identity changed repeatedly, obstructing legal claims for unpaid wages.

## Full Discovery is Necessary to Uncover Financial Responsibility

Given these concerns, full discovery is required to clarify:

• The flow of payroll processing and financial transfers between Respondents' entities.

• The structuring of commissions to determine whether earnings were misclassified as wages.

• The role of successor entities in processing payroll and whether liability was concealed.

• The relationship between businesses handling payroll and those financially benefiting from the workforce.

**Requested Relief**

Accordingly, Claimant respectfully requests that the arbitrator:

1. Hold all named Respondents jointly and severally liable for unpaid wages, misclassified earnings, and financial mismanagement where successor liability applies.

2. Grant full financial discovery into payroll structuring, commission reclassification, and the potential concealment of employer responsibilities.

3. Issue an adverse inference ruling should any Respondent fail to produce relevant payroll or financial records.

4. Enforce full statutory penalty wages under **ORS 652.140** and **ORS 652.150.**

**Conclusion**

This arbitration is necessary to expose the full extent of this payroll structuring scheme, hold the Respondents accountable for wage violations, and ensure that financial liability is no longer concealed behind layers of corporate deception. Sanofi, as the ultimate parent company, must answer for the payroll decisions made by its subsidiaries. The Respondents' deliberate payroll structuring efforts obstructed the Claimant's ability to seek unpaid wages, demonstrating bad faith and employer deception.

## II.    PARTIES

### A. Claimant

Jorden Hollingsworth

Claimant was employed under the "*Direct Demo*" brand and was directly impacted by the Respondents' payroll structuring scheme, wage misclassification, and successor liability maneuvers. Claimant's paystubs list 411 E Bonneville as the payroll location, confirming that **payroll processing was centralized through the corporate structure controlled by the Respondents.**

## B. Respondents

### 1. Ashraf "Peter" Boutros (Chief Architect of Payroll Structuring & Financial Concealment, Co-Founder of Quten Research Institute)

Role: Central financial architect of the successor business network at 411 E Bonneville and primary controller of financial trusts used to manage payroll obligations and transfer employer liability.

Business Ties at 411 E Bonneville:

• **Basil Management Trust** – *Primary financial hub for payroll structuring & successor business control.*

• **Rita GP Partners LLC** – *Payroll movement & financial transfers among successor businesses.*

• **VitaMina Labs LLC** – *Successor business for payroll & commission processing from Zena Nutrition sales.*

• **Zena Nutrition Inc.** – *Payroll processing & commission movement for Zena product sales.*

• **FC – Nevada Inc.** – *Corporate successor entity for payroll & financial transfers at 411 E Bonneville.*

• **Boutros Boys Inc.** – *Privately controlled financial entity with ties to payroll movement & financial structuring.*

### 2. Deepak Chopra (Financial & Payroll Structuring Specialist, Co-Founder of Quten Research Institute)

Role: Co-managed multiple financial entities used for payroll structuring, commission processing, and financial transfers tied to Qunol commissions and employer identity concealment.

Business Ties at 411 E Bonneville:

• **Quten Research Institute** – *Financially linked to payroll movement & Qunol product sales structure.*

• **TPD IP LLC** – *High-value financial holding entity tied to payroll & financial transfers at 411 E Bonneville.*

• **Rita GP Partners LLC** – *Co-managed with Ashraf Boutros, involved in payroll transfers & financial structuring at 411 E Bonneville.*

### 3. Maged "Mike" Boutros (Payroll Movement & Successor Business Management)

Role: Managed payroll transfers, employee onboarding, and wage movement between successor entities while operating multiple payroll-processing businesses.

Business Ties at 411 E Bonneville:

• **DRVM LLC** – *Dissolved, with payroll responsibilities shifted to successor businesses at 411 E Bonneville.*

• **MK Marketing LLC** – *Payroll processor & employer entity listed in Direct Demo employee portals.*

• **AMJ Services LLC** – *Successor payroll movement for Direct Demo employees & payroll processing at 411 E Bonneville.*

• **MB Stewardship LLC** – *Financial structuring entity with payroll links at 411 E Bonneville.*

• **MMB Marketing LLC** – *Payroll & employee onboarding entity at 411 E Bonneville.*

• **Pishoy Holdings LLC** – *Financial entity tied to payroll transfers & successor business operations.*

6

### 4. Marie-Laurie Amiard-Boutros (Financial Transfers & Payroll Processing Manager)

Role: Oversaw payroll processing, wage structuring, and financial transactions tied to successor businesses, including those used for employer identity concealment.

Business Ties at 411 E Bonneville:

• **MK Marketing LLC (*Washington*)** – *Employer entity tied to employee onboarding & payroll processing at 411 E Bonneville.*

• **QIP Management Trust** – *Financially linked to payroll movement, tax structuring, & employee transfers at 411 E Bonneville.*

• **FC – Nevada Inc.** – *Corporate successor entity for payroll & financial transactions at 411 E Bonneville, linked to employee wage processing.*

### 5. Osama Boutros (Payroll Structuring & Financial Decision-Making for Successor Businesses)

Role: Controlled successor businesses responsible for payroll movement, wage distribution, and tax structuring.

Business Ties at 411 E Bonneville:

• **QIP Management Trust** – *Payroll movement entity & successor business to DRVM LLC at 411 E Bonneville.*

• **FC – Nevada Inc.** – *Corporate payroll structuring entity tied to payroll movement & wage processing at 411 E Bonneville.*

### 6. Sanofi (Global Parent Company of Payroll-Linked Subsidiaries)

Role: Ultimate parent company of Chattem, Inc. and Quten Research Institute, both of which played a role in payroll movement and employer identity manipulation.

Business Ties to Payroll Structuring:

• **Quten Research Institute** – *Handled Qunol commissions & financial structuring linked to payroll movement.*

• **Chattem, Inc.** – *Owns multiple entities at 411 E Bonneville, connected to financial movement & wage processing.*

• **TPD IP LLC** – *Sanofi-controlled financial entity involved in payroll structuring & wage classification changes.*

## C. The Entities Used to Structure Payroll & Conceal Liability

The Respondents' payroll structuring network at 411 E Bonneville involved **multiple shell companies, successor businesses, and financial trusts,** all designed to obscure financial responsibility and shift employer liability. While each Respondent directly controlled individual entities, the following businesses collectively played a role in payroll movement and wage misclassification:

• **Sanofi & Its Subsidiaries**

• **Quten Research Institute –** *Controlled Qunol commission processing & payroll-related transfers.*

• **Chattem, Inc.** – *Financially linked to payroll movement & payroll-related employer deception.*

• **TPD IP LLC** – *Sanofi-controlled financial holding entity involved in payroll & financial transfers.*

## Payroll Structuring & Employer Identity Manipulation Entities

• **AMJ Services LLC** – *Payroll processing & successor entity for "Direct Demo" employees.*

• **MK Marketing LLC** – *Employer entity appearing in "Direct Demo" employee portals.*

• **Basil Management Trust** – *Financial hub controlling payroll structuring & successor business movement.*

• **QIP Management Trust** – *Payroll movement & financial transactions for successor entities.*

• **FC – Nevada Inc.** – *Corporate successor business handling payroll obligations at 411 E Bonneville.*

**Commission Structuring & Wage Classification Entities**

• **VitaMina Labs LLC** – *Zena Nutrition product processing & commission movement tied to payroll transfers.*

• **Zena Nutrition Inc.** – *Commission payments & wage processing structured through 411 E Bonneville.*

• **Rita GP Partners LLC** – *Payroll movement & financial control over payroll structuring network at 411 E Bonneville.*

**Conclusion**

The Respondents are not independent business owners operating separate entities—they are part of a coordinated financial network designed to transfer payroll obligations, obscure employer liability, and evade wage-related responsibilities. Sanofi, as the ultimate parent company, must answer for its subsidiaries' involvement in payroll structuring and wage misclassification.

The next sections will analyze how these successor businesses functioned to shift payroll liabilities, misclassify earnings, and prevent employees from filing wage claims against a clear employer.

## III.    STATEMENT OF AMENDMENT

Claimant Jorden Hollingsworth submits this Amended Demand for Arbitration to expand the scope of arbitration based on **newly uncovered evidence** that implicates additional Respondents and successor entities involved in **payroll structuring, wage misclassification, and employer deception.**

This amendment is legally necessary under **Oregon successor liability laws (ORS 60.637 & ORS 60.654)** and **JAMS Arbitration Rules,** as Respondents engaged in a coordinated payroll structuring scheme at 411 E Bonneville Ave, Las Vegas, NV—the address listed on Claimant's paystub. The misclassification of wages, concealment of employer identity, and use of shell corporations to obscure payroll obligations necessitate expanded arbitration relief.

**Respondents & Their Direct Involvement in Payroll Structuring**

• **Ashraf "Peter" Boutros** – *Central financial architect of payroll structuring, responsible for financial decision-making, employer identity manipulation, and successor business creation.*

• **Deepak Chopra** – *Commission reclassification and payroll processing, financially linked to successor entities and Qunol product commissions.*

• **Maged "Mike" Boutros** – *Payroll movement & successor business management, responsible for payroll obligations after DRVM LLC's dissolution.*

• **Osama Boutros** – *Payroll concealment & financial structuring, linked to successor entities that continued payroll obligations at 411 E Bonneville.*

• **Marie-Laurie Amiard-Boutros** – *Financial transactions & employer identity manipulation, involved in payroll processing and successor liability structuring.*

• **Sanofi** – *Global parent company of Chattem, Inc. and Quten Research Institute, both of which played a role in payroll movement and employer identity manipulation.*

• **Chattem, Inc.** – *Sanofi-owned entity linked to financial movement, payroll processing, and potential tax misclassification of earnings.*

• **Quten Research Institute** – *Sanofi-owned subsidiary responsible for Qunol commissions, which were fraudulently reclassified as hourly wages.*

### Key Evidence Supporting This Amendment

• DRVM LLC was dissolved, yet payroll obligations continued under successor entities, violating Oregon successor liability laws.

• Claimant's paystubs continued listing DRVM LLC **after its dissolution,** proving employer misrepresentation and payroll structuring.

• Payroll responsibilities were transferred to AMJ Services LLC, MK Marketing LLC, QIP Management Trust, TPD IP LLC, and FC – Nevada Inc., **all of which continued payroll obligations.**

• Commissions from Qunol & Zena Nutrition were reclassified as **hourly wages**, allowing the employer to **manipulate tax obligations and avoid commission-based liability.**

• Employer **identity was repeatedly changed**, preventing employees from filing wage claims against a singular employer.

• Failure to pay final wages as required by **ORS 652.140** and **ORS 652.150** triggers statutory penalty wages, which are now part of the expanded relief sought.

**Why This Amendment Must Be Accepted**

• It adds newly identified Respondents who controlled payroll movement, successor liability structuring, and wage reclassification.

• It expands the scope of arbitration to include financial concealment, employer misrepresentation, and payroll structuring violations.

• It ensures full transparency regarding who controlled payroll, how wages were classified, and whether financial fraud occurred.

• It provides the arbitrator with the necessary legal framework to hold all liable parties accountable for payroll deception and wage violations.

**Relief Sought Under This Amendment**

1. Hold all named Respondents jointly and severally liable for unpaid wages, successor liability, and financial mismanagement.

2. Grant full discovery into payroll structuring, commission reclassification, and employer concealment.

3. Award statutory penalty wages under **ORS 652.150** for Respondents' failure to pay final wages on time.

4. Issue an adverse inference ruling if Respondents fail to provide relevant payroll or financial records.

This amendment is critical to ensuring full accountability for the financial structuring that allowed Respondents to avoid their wage obligations. The arbitrator must permit this amendment to prevent Respondents from using corporate structuring as a shield against legitimate wage claims.

## IV.    FACTUAL BACKGROUND

### A. A Highly Orchestrated Payroll Structuring and Concealment Scheme

11

This case is not simply about unpaid wages—it is about a **deliberate, highly orchestrated payroll concealment scheme** designed to **misclassify earnings, obscure employer identity, and shield financial liability** through a network of successor entities and financial trusts.

The Respondents—Ashraf "Peter" Boutros, Deepak Chopra, Maged "Mike" Boutros, Marie-Laurie Amiard-Boutros, and Osama Boutros—engineered a multi-state payroll structuring operation spanning over 30 corporate entities, all of which were strategically designed to shift **employer liability, manipulate payroll obligations, and conceal financial responsibility.**

At the center of this scheme is "*Direct Demo*," **a sales and marketing front** used to obscure employer responsibility for Qunol and Zena Nutrition products. Rather than operating as a legitimate business, "*Direct Demo*" was a **corporate shell,** allowing Respondents to funnel payroll obligations through successor entities while profits remained controlled by the Boutros family and Deepak Chopra.

Instead of issuing paychecks from a single employer, the Respondents systematically structured payroll obligations across multiple successor entities, rotating employer names to **obstruct wage claims and mislead employees about their actual employer.**

**Key Facts Proving the Payroll Concealment Scheme:**

• Employees were falsely led to believe they worked for "*Direct Demo*," but payroll was processed through shell companies.

• Claimant's paystubs list 411 E Bonneville as the payroll location, proving centralized payroll control, yet wages were issued from entities registered in multiple states.

• DRVM LLC was dissolved, yet payroll obligations continued under successor businesses, violating **ORS 60.637** (prohibiting post-dissolution business activity).

• Employer identity was altered across pay periods, preventing employees from knowing which entity was actually responsible for their wages.

• Commissions from Qunol and Zena Nutrition were fraudulently reclassified as hourly wages, manipulating tax obligations and creating payroll discrepancies.

**B. 411 E Bonneville – The Centralized Payroll Hub with Direct Links to Sanofi**

The Respondents operated payroll through multiple successor entities, all registered at 411 E Bonneville Ave, Las Vegas, NV, proving that this address was used as a centralized financial hub to control payroll movement while preventing legal accountability.

Sanofi, a multinational pharmaceutical company, **directly owns and controls entities registered at 411 E Bonneville.** These entities, including Quten Research Institute and Chattem, Inc., were financially involved in payroll movement, commission reclassification, and successor business transfers.

**Key Connections to Sanofi and Payroll Structuring:**

• Sanofi owns Chattem, Inc., which is a listed member of TPD IP LLC, a payroll-linked business registered at 411 E Bonneville.

• Sanofi owns Quten Research Institute, which oversees Qunol products, directly linking Sanofi to payroll movement and commission structuring.

• The payroll manager handling wage **disputes used a Tennessee phone number**—the same state where Chattem, Inc. is headquartered—raising concerns about whether payroll was processed through Sanofi-controlled entities.

Sanofi, through its subsidiaries, is financially linked to the businesses that controlled payroll at 411 E Bonneville. This creates a direct connection between Claimant's payroll, the entities processing wages, and Sanofi's financial oversight of those entities.

**C. The Boutros Family Foundation & Payroll Structuring**

One of the most alarming financial discoveries in this case is the direct link between payroll structuring and the Boutros Family Foundation.

• VitaMina Labs, a company financially linked to Zena Nutrition product sales, lists its mailing address as **15 Vela Way, Bridgewater, NJ**—the same address as the **Boutros Family Foundation.**

• This raises serious concerns about whether profits from Zena Nutrition were funneled into the Boutros Family Foundation while **payroll obligations remained unpaid.**

• Rather than wages and commissions being processed transparently, profits appear to have been **rerouted into private financial trusts,** ensuring that liability remained fragmented while the Boutros family retained financial control.

The fact that a payroll-linked company is registered to the same address as a private family foundation suggests a deliberate effort to separate financial gains from payroll responsibilities.

13

## D. DRVM LLC's Dissolution & Continued Payroll Use (Successor Liability Fraud)

Despite being legally dissolved, DRVM LLC continued issuing wages, a direct violation of **ORS 60.637.**

• Claimant's paystubs still listed DRVM LLC as the payroll provider, proving that business operations were never legally wound down.

• Instead of properly closing the business, DRVM's payroll functions were transferred to AMJ Services LLC, MK Marketing LLC, and FC – Nevada Inc., ensuring that wage obligations remained hidden behind successor businesses.

• Under **ORS 60.654**, any business that assumes payroll responsibilities from a dissolved entity is legally responsible for unpaid wages, confirming that successor liability applies in this case.

## E. Payroll Misclassification & Concealment of Wages

The Respondents deliberately misclassified commissions as wages to reduce employer tax liabilities, manipulate tax burdens, and obscure true earnings.

## Key Payroll Misclassification Findings:

• Claimant's ADP payroll records show excessive work hours—some exceeding **200 hours** per pay period—despite an average of **30 hours** worked.

• Commissions from Qunol and Zena Nutrition were blended into hourly wages, **distorting tax obligations and reducing employer liabilities.**

• Rather than issuing commissions separately, payroll structuring ensured that commissions were concealed within general payroll earnings, making it impossible for employees to track actual earnings.

## F. Employer Identity Concealment & the Use of Multiple Identities

Ashraf "Peter" Boutros deliberately used different names across business filings to create legal separation between financial control and payroll responsibility.

• For Quten Research Institute, he is listed as "Peter Boutros."

• For VitaMina Labs and Zena Nutrition, he is listed as "Ashraf Boutros."

• This name manipulation allowed him to control multiple payroll-linked businesses while avoiding direct liability for wage obligations.

By fragmenting payroll structuring across multiple names and businesses, Ashraf Boutros ensured that employer responsibility was concealed, preventing wage claims from being properly pursued.

### G. The Payroll Manager Identity Cover-Up

When Claimant demanded unpaid wages, a payroll manager named **Collins Coltharp** responded—but with a signature listing **AMJ, LLC**, not AMJ Services LLC.

• The phone number associated with Coltharp was a Tennessee number, yet no "*Direct Demo*" payroll entities are registered in Tennessee.

• This raises major concerns about whether Chattem, Inc.—a Tennessee-based company financially linked to TPD IP LLC and payroll structuring at 411 E Bonneville—played a role in wage processing.

### Critical Questions That Require Discovery:

• Who was Collins Coltharp actually working for when handling payroll disputes?

• Why was AMJ, LLC referenced in payroll correspondence instead of AMJ Services LLC?

• Did Chattem, Inc. play a direct role in processing payroll?

### H. Conclusion – A Deliberate Payroll Structuring Scheme

This was not an isolated payroll issue—it was a deliberate financial strategy designed to:

• Conceal employer identity and obstruct wage claims.

• Reclassify commissions to shift employer tax burdens.

• Funnel payroll-linked profits into private financial trusts.

• Use successor businesses to shield Respondents from financial responsibility.

This case demands full discovery into payroll structuring and successor liability violations to expose how employer deception was used to suppress wages, obscure employer accountability, and avoid legal consequences.

## V.    PAYROLL STRUCTURING NETWORK & SUCCESSOR LIABILITY

Respondents engaged in a deliberate and sophisticated payroll structuring scheme designed to **conceal employer identity, manipulate payroll obligations,** and shift financial responsibility across a network of successor businesses and multinational corporate entities. The objective was clear: **evade liability for unpaid wages while continuing operations** under different legal entities to prevent accountability.

This case is not just about unpaid wages—it is about fraudulent payroll structuring, successor liability evasion, and the intentional misclassification of employer identities to obstruct wage claims. Every Respondent, including Sanofi, Chattem, Inc., and Quten Research Institute, played a **direct role** in structuring the financial movement of payroll obligations across multiple entities, ensuring that wage claims could not be directed at a **singular employer.**

At the center of this scheme is Ashraf "Peter" Boutros, who intentionally used two different names in business registrations—"Peter" for Quten Research Institute and "Ashraf" for VitaMina Labs and Zena Nutrition—to obscure financial control and ownership across multiple businesses. This deliberate manipulation of corporate records prevents a clear link between the companies controlling payroll and the entities processing employee wages, making it nearly impossible for employees to file direct wage claims against the true employer.

Successor liability under **ORS 60.637** and **ORS 60.654** mandates that when one business absorbs the workforce, payroll processing, and financial benefits of a predecessor, it assumes that entity's financial responsibilities. The evidence overwhelmingly confirms that successor businesses at 411 E Bonneville Ave, Las Vegas, NV, inherited payroll obligations from DRVM LLC and must be held financially responsible.

### A. The Payroll Structuring Scheme & Employer Identity Concealment

Respondents intentionally structured payroll through layers of interconnected shell corporations and multinational corporate entities to:

• Conceal the identity of the actual employer to obstruct wage claims.

• Rotate payroll obligations between successor businesses to evade liability.

• Misclassify commissions as wages to manipulate tax reporting.

• Funnel payroll-related funds through successor businesses while continuing operations.

**Ashraf "*Peter*" Boutros' Name Manipulation to Hide Financial Control**

Ashraf Boutros used two different names in corporate filings depending on the company he was associated with:

• "Peter Boutros" for Quten Research Institute, which was later acquired by Sanofi.

• "Ashraf Boutros" for VitaMina Labs and Zena Nutrition, which were responsible for commission payments to Claimant.

By altering his name depending on the entity, he obscured financial transfers and payroll responsibilities, ensuring that no single entity could be held directly liable for unpaid wages.

**B. Successor Entities That Assumed Payroll Obligations**

The payroll structuring scheme involved successor businesses, multinational subsidiaries, and private financial trusts, all linked to the 411 E Bonneville address and Sanofi-controlled entities.

**Direct Payroll Processors & Employer Identity Manipulators**

• **DRVM LLC** – *Dissolved but continued issuing payroll on Claimant's paystubs.*

17

• **AMJ Services LLC** – *Took over payroll processing after DRVM LLC was dissolved.*

• **MK Marketing LLC** – *Listed on the Direct Demo employee portal, confirming its employer role.*

• **FC – Nevada Inc.** – *Financially linked to payroll processing at 411 E Bonneville.*

• **TPD IP LLC** – *Managed payroll transfers and is financially connected to Chattem, Inc. and Sanofi.*


**Financial Entities Facilitating Payroll Transfers & Wage Structuring**

• **Sanofi** (*Parent Company of Chattem, Inc. and Quten Research Institute*) – *Financially linked to payroll obligations at 411 E Bonneville.*

• **Basil Management Trust** – *Central financial hub controlling payroll-linked businesses.*

• **QIP Management Trust** – *Managed financial transfers linked to payroll funding.*

• **Rita GP Partners LLC –** *Handled payroll and financial structuring.*

• **Boutros Boys Inc.** – *Directly linked to financial transactions at 411 E Bonneville.*


**Business Entities with Ties to Commission Payments & Payroll Processing**

• **VitaMina Labs LLC** – *Financially linked to commission payments for Zena Nutrition. Heavily invested entity by PB Management Trust, Mina Management, and Ashraf Boutros. Connected to Boutros Family Foundation.*

• **Zena Nutrition Inc.** – *Processed payments related to Claimant's commissions. Specifically owned by Ashraf Boutros, which is connected to the Boutros Family Foundation.*

• **MAK Nutrition LLC** – *Highly invested entity by QRIB intermediate Holdings* (*Quten Research Institute, Chattem, Inc (With the Sanofi U.S. Headquarters address)*

• **MAK Media LLC –** *Highly invested by QRIB Intermediate Holdings, Mina GP Partners LLC, and Basil Management Trust, connected to payroll transactions at 411 E Bonneville.*

• **MAK Digital LLC** – *Highly invested entity by QRIB Intermediate Holdings, Mina GP Partners, and Basil Management Trust. Associated with commission payments and financial transfers.*

These entities, all tied to 411 E Bonneville, functioned as part of a single business network designed to obscure payroll obligations and protect Sanofi's financial interests.

## C. Successor Liability Under Oregon Law

Under **ORS 60.637** and **ORS 60.654,** successor businesses are financially responsible for the payroll obligations of their predecessors when they:

1. Continue operations under a different name.

2. Retain the same employees or workforce.

3. Assume payroll functions and employer responsibilities.

4. Financially benefit from the predecessor's operations.

**Respondents' business restructuring meets all four conditions:**

• Claimant's paystub continued listing DRVM LLC after its dissolution, confirming successor businesses absorbed payroll functions.

• DRVM LLC ceased operations, but AMJ Services LLC, MK Marketing LLC, and FC – Nevada Inc. continued payroll processing.

• Payroll funding was moved between successor businesses, shielding Respondents from **direct liability while continuing operations.**

• Sanofi subsidiaries, including Chattem, Inc., were **financially tied to payroll transactions,** reinforcing successor business control.

Successor businesses cannot inherit payroll functions without inheriting financial liability.

## D. Financial Discovery Will Confirm Successor Liability

To expose the full scope of payroll structuring fraud, Claimant requests discovery into:

• Payroll records from DRVM LLC, AMJ Services LLC, MK Marketing LLC, and FC – Nevada Inc.

• Bank transfers reflecting payroll movement between these entities.

• Corporate filings, tax records, and business agreements confirming payroll transitions.

• Internal emails discussing employer name changes and wage reclassification.

• Financial transactions involving Sanofi, Chattem, Inc., and Quten Research Institute, **related to payroll processing.**

Successor liability is not optional—payroll obligations transfer automatically when businesses inherit workforce and payroll functions.

### E. Sanofi's Financial Ties to Payroll Structuring at 411 E Bonneville

Sanofi is not an uninvolved third party—its subsidiaries **financially benefited** from payroll transactions processed through the 411 E Bonneville business network.

• Chattem, Inc. is a registered member of TPD IP LLC, a payroll-linked entity at 411 E Bonneville.

• Sanofi's acquisition of Quten Research Institute connects its subsidiaries to payroll-related financial transfers.

• Sanofi-controlled subsidiaries assumed payroll obligations, triggering successor liability. Controls multiple entities at the 411 E. Bonneville. Not just one. Multiple.

Financial discovery will determine whether payroll structuring fraud extended into Sanofi-controlled businesses.

### F. Conclusion – Successor Businesses Must Assume Payroll Liabilities

• Oregon law mandates that successor businesses assume payroll obligations when they continue payroll processing.

• Claimant's wages were processed through successor entities, confirming their financial responsibility.

• Sanofi's subsidiaries played a financial role in payroll obligations at 411 E Bonneville.

• Employer identity manipulation and payroll transfers confirm fraudulent wage structuring.

• Discovery will expose payroll fraud and inter-company transactions linking successor businesses to unpaid wage obligations.

Claimant respectfully requests that the arbitrator enforce full successor liability and require Respondents, including Sanofi and its subsidiaries, to assume all financial obligations related to unpaid wages, penalty wages, and misclassified commissions.

## VI. LEGAL CLAIMS AND BASIS FOR RELIEF

This case presents a deliberate, highly orchestrated corporate scheme designed to **misclassify wages, obscure employer liability, and manipulate payroll obligations**, all while funneling profits through a complex network of **successor entities, financial trusts, and global parent companies** like Sanofi.

The Respondents—Ashraf "Peter" Boutros, Deepak Chopra, Maged "Mike" Boutros, Marie-Laurie Amiard-Boutros, Osama Boutros, Sanofi, Chattem, Inc., and Quten Research Institute—engineered a multi-layered payroll structuring operation that **strategically transferred wage obligations** across multiple businesses at 411 E Bonneville Ave, Las Vegas, NV.

**This was not an accident or a technical payroll error**—it was a structured effort to evade employer responsibility for unpaid wages, delay final wage payments, and manipulate tax obligations, ensuring that no single entity retained liability long enough to be held accountable.

Under Oregon employment law **(ORS 652.140, ORS 652.150, ORS 60.637, and ORS 60.654)**, federal wage laws, and common law fraud principles, Claimant seeks full accountability for payroll structuring fraud, successor liability violations, and deliberate failure to issue final wages.

## A. FAILURE TO PAY WAGES & PENALTY WAGES (ORS 652.140 & ORS 652.150)

Oregon law mandates strict timelines for wage payment upon termination and imposes penalty wages for willful nonpayment:

• **ORS 652.140** requires employers to pay all final wages immediately upon termination if an employee is discharged and within five days if the employee resigned with notice.

• **ORS 652.150** imposes penalty wages for up to **30 days** when an employer willfully fails to pay wages on time.

Oregon law does not allow an employer to delay payment indefinitely or issue penalty wages later at their discretion—penalty wages themselves must be paid within the statutory period, just like unpaid wages.

### Violations by Respondents:

• Claimant's final wages were not issued within the legally required timeframe.

• Respondents deliberately manipulated payroll records and transferred wage obligations to successor businesses to obstruct wage payment.

• Payroll was processed under dissolved or misclassified entities, further preventing Claimant from receiving earned wages.

• Penalty wages should have been paid within the statutory 12-day period following termination under ORS 652.150, yet Respondents ignored their obligation and failed to issue them.

### Sanofi, through its subsidiaries, directly benefited from the payroll structuring used to evade wage payments:

• Chattem, Inc., a Sanofi subsidiary, is financially linked to TPD IP LLC, which controlled payroll transfers for Direct Demo.

• Quten Research Institute, also owned by Sanofi, played a role in structuring Qunol commissions that were misclassified as wages.

• By controlling multiple businesses financially tied to payroll obligations, Sanofi assumed liability under successor business principles.

## B. SUCCESSOR LIABILITY FOR DRVM LLC'S PAYROLL OBLIGATIONS (ORS 60.637 & ORS 60.654)

Oregon law prohibits the continuation of business operations under a dissolved entity while transferring its obligations to successor businesses without assuming financial liabilities:

• **ORS 60.637** prohibits dissolved entities from conducting ongoing business operations.

• **ORS 60.654** states that any business assuming payroll obligations from a dissolved entity inherits its outstanding debts.

### Violations by Respondents:

• DRVM LLC was legally dissolved, yet payroll continued to be processed under its name in violation of **ORS 60.637.**

• Payroll functions were absorbed by successor entities at 411 E Bonneville, confirming successor liability.

• Claimant's paystubs continued listing DRVM LLC as the employer even after its dissolution, proving continued business operations.

• Sanofi and its subsidiaries, Chattem, Inc. and Quten Research Institute, were financially linked to businesses that continued payroll obligations.

## C. PAYROLL MISCLASSIFICATION & WAGE STRUCTURING FRAUD

Respondents intentionally misclassified commissions as wages to manipulate tax reporting, payroll structuring, and employee compensation.

### Violations by Respondents:

• Instead of paying commissions separately, Respondents structured them as part of Claimant's hourly wages, **distorting tax withholdings.**

• ADP payroll records falsely inflated work hours, sometimes exceeding **200 hours** per pay period despite actual hours worked being significantly lower.

• Commissions for Qunol and Zena Nutrition products were embedded in payroll, preventing employees from tracking earnings separately.

**Sanofi subsidiaries financially benefited from this misclassification:**

• Quten Research Institute structured Qunol commissions in a way that allowed payroll processing through TPD IP LLC & MAK Nutrition LLC, **a Sanofi-controlled entity.**

• Chattem, Inc., a registered member of **TPD IP LLC & MAK Nutrition LLC**, played a role in handling payroll-related financial movement.

## D. FRAUDULENT CONCEALMENT OF EMPLOYER IDENTITY & PAYROLL RESPONSIBILITIES

Respondents deliberately structured payroll movement and successor businesses to evade employer liability.

**Violations by Respondents:**

• Employer names were rotated across pay periods, obstructing legal accountability.

• Payroll obligations were shifted between AMJ Services LLC, MK Marketing LLC, and FC – Nevada Inc. to ensure no single entity retained responsibility.

• Sanofi-controlled entities, including Chattem, Inc. and Quten Research Institute, were financially tied to businesses handling payroll at 411 E Bonneville.

• Ashraf "Peter" Boutros deliberately used different names for different entities—appearing as "Peter Boutros" for Quten Research Institute and "Ashraf Boutros" for VitaMina Labs and Zena Nutrition—to manipulate employer accountability.

## E. DAMAGES REQUESTED

Claimant seeks full and fair compensation for the financial and emotional harm caused by Respondents' payroll structuring scheme:

**1. Unpaid Wages & Misclassified Commissions** – *Full compensation for all unpaid earnings.*

**2. Statutory Penalty Wages Under ORS 652.150** – *$10,050 in penalty wages.*

**3. Compensatory & General Damages** – *Compensation for financial losses and wage misclassification.*

**4. Successor Liability Damages** – *Full liability imposed on successor businesses.*

**5. Personal Liability for Respondents** – *Corporate veil-piercing to hold individual executives accountable.*

**6. Punitive Damages** – *Additional damages for fraudulent payroll structuring and financial misconduct.*

**7. Legal Fees & Arbitration Costs** – *Full reimbursement for Claimant's arbitration and legal expenses.*


## F. CONCLUSION – RESPONDENTS MUST BE HELD FULLY ACCOUNTABLE


This was not a payroll mistake—it was an **intentional, structured financial operation.**

• Employer identity was deliberately concealed to **obstruct wage claims.**

• Payroll movement was intentionally structured to **evade liability.**

• Commissions were misclassified to **manipulate payroll tax obligations.**

• Sanofi and its subsidiaries financially **benefited from the fraudulent payroll structuring.**


Arbitration must enforce successor liability, mandate full payroll transparency, and impose maximum statutory penalties. The case law supports these claims, and the evidence is clear.

## VII. PIERCING THE CORPORATE VEIL – PERSONAL LIABILITY OF RESPONDENTS

The Respondents—Ashraf "Peter" Boutros, Deepak Chopra, Maged "Mike" Boutros, Marie-Laurie Amiard-Boutros, Osama Boutros, Sanofi, Chattem, Inc., and Quten Research Institute—utilized **a network of successor businesses and multinational corporate entities** to transfer payroll obligations while **shielding themselves from financial liability.** These corporate entities, including AMJ Services LLC, MK Marketing LLC, FC – Nevada Inc., TPD IP LLC, and Basil Management Trust, were not legitimate, independent businesses—they were deliberate financial structures used to **conceal employer identity, evade payroll obligations, and prevent wage claims.**

This payroll structuring scheme did more than just evade liability—it actively prevented Claimant from exercising **their right to request unpaid wages**. By deliberately concealing the true employer and rotating payroll responsibilities between successor entities, Respondents ensured that Claimant **could not directly** pursue unpaid wages through standard legal channels.

Additionally, Sanofi, as the corporate parent of Chattem, Inc. and Quten Research Institute, **benefited** financially from the payroll scheme. These companies controlled entities involved in payroll movement at 411 E Bonneville, reinforcing the need to pierce the corporate veil to expose the **full extent** of their involvement.

The Oregon Supreme Court has established clear legal standards for piercing the corporate veil, and every requirement is met in this case.

## A. LEGAL REQUIREMENTS FOR PIERCING THE CORPORATE VEIL (Oregon Supreme Court Standards)

Oregon law permits courts to pierce the corporate veil and impose personal liability when the following factors are met:

### 1. The Individual Defendants Exercised Control Over the Business Entities

### 2. Corporate Formalities Were Ignored or Abused

**3. The Entities Were Inadequately Capitalized**

**4. The Corporations Were Used to Perpetrate Fraud or Avoid Liability**

**5. Injustice Would Result if the Corporate Veil Were Not Pierced**

Each of these elements applies in this case.

## B. HOW RESPONDENTS' ACTIONS MEET THE REQUIREMENTS FOR VEIL PIERCING

### 1. The Individual Defendants Exercised Control Over the Business Entities

Legal Standard: Oregon law holds that if individuals or corporate parents treat a business as an extension of their personal or financial interests, rather than a separate legal entity, they may be **personally liable** for its debts.

**How This Applies Here:**

• Ashraf "Peter" Boutros, Deepak Chopra, Maged "Mike" Boutros, Marie-Laurie Amiard-Boutros, and Osama Boutros personally controlled all successor businesses involved in payroll structuring.

• Each Respondent was a managing member or controlling financial entity of multiple businesses operating from 411 E Bonneville, proving their direct financial control over payroll structuring.

• Payroll obligations were transferred between these entities without proper dissolution or assumption of liability, showing **intentional manipulation.**

• Sanofi's subsidiaries (Chattem, Inc. and Quten Research Institute) were financially linked to businesses handling payroll, meaning they benefited from **payroll structuring fraud.**

Because Respondents directly controlled and financially benefited from these businesses, personal liability must be imposed.

27

## 2. Corporate Formalities Were Ignored or Abused

Legal Standard: Oregon law requires that businesses maintain corporate formalities, such as separate finances, distinct corporate governance, and adherence to legal requirements.

### How This Applies Here:

• DRVM LLC was dissolved, yet continued issuing wages through successor entities, violating **ORS 60.637.**

• Employer identity was changed on paystubs across pay periods, ensuring no single entity retained liability.

• Corporate records were manipulated to reflect ownership shifts between members of the Boutros family and Chopra, confirming an abuse of corporate formalities.

• Sanofi subsidiaries controlled entities involved in payroll movement, yet failed to maintain clear corporate separations.

## 3. The Entities Were Inadequately Capitalized

Legal Standard: Courts consider whether an entity was undercapitalized to the point that it could not meet legal obligations, such as payroll responsibilities.

### How This Applies Here:

• DRVM LLC, AMJ Services LLC, and MK Marketing LLC did not maintain adequate financial reserves to pay employees.

• Wages were continuously processed through different entities at 411 E Bonneville to evade liability, showing that no single entity was adequately capitalized to meet its obligations.

• The only financial capital **remained in trusts** controlled by Ashraf "Peter" Boutros, rather than being retained for payroll purposes.

## 4. The Corporations Were Used to Perpetrate Fraud or Avoid Liability

Legal Standard: The corporate veil may be pierced when business entities are used to commit fraud, evade debts, or circumvent wage laws.

**How This Applies Here:**

• Payroll obligations were systematically transferred across multiple successor entities to prevent Claimant from recovering unpaid wages.

• Wages were **misclassified,** commissions were **restructured**, and employer identity was rotated, proving **intent to defraud employees.**

• Business records confirm that multiple successor businesses shared management, financial resources, and payroll responsibilities, showing a **deliberate scheme** to evade liability.

• Sanofi's subsidiaries financially benefited from **payroll structuring and wage misclassification,** confirming their involvement in successor liability fraud.

**5. Injustice Would Result if the Corporate Veil Were Not Pierced**

Legal Standard: Oregon courts will pierce the corporate veil when failing to do so would allow business owners or corporate parents to escape liability while unjustly harming others.

**How This Applies Here:**

• Claimant was actively blocked from exercising their legal right to request unpaid wages.

• By concealing employer identity and rotating payroll obligations across multiple successor businesses, Respondents ensured that Claimant had **no direct employer** to file a claim against.

• Even if Claimant knew which entity issued a paycheck, that entity **was often dissolved** or financially incapable of paying wages.

• Sanofi subsidiaries financially benefited from these payroll structuring tactics, reinforcing the need for corporate veil piercing.

For justice to be served, Respondents and Sanofi must be held personally liable.

## C. RELEVANT CASE LAW SUPPORTING VEIL PIERCING

Oregon courts have consistently ruled that the corporate veil can be pierced when individuals or corporate parents use business entities to evade legal and financial responsibilities.

### 1. Amfac Foods, Inc. v. Int'l Systems & Controls Corp., 294 Or 94 (1982)

• The Oregon Supreme Court ruled that personal liability is warranted when a company is undercapitalized and used to evade liability.

### 2. Klokke Corp. v. Classic Exposition, Inc., 139 Or App 399 (1996)

• The court ruled that shuffling liabilities between business entities is a key factor in piercing the corporate veil.

### 3. Pettit v. Price, 196 Or App 84 (2004)

• The court ruled that when business entities are used to obstruct financial obligations, individuals behind them must be held personally responsible.

### 4. State ex rel Neidig v. Superior National Insurance Co., 343 Or 434 (2007)

• The court reaffirmed that a business entity cannot be used as a shield to avoid wage liability.

These rulings confirm that Respondents and Sanofi cannot hide behind corporate entities to avoid paying wages that they were legally required to issue.

## D. CONCLUSION – PERSONAL LIABILITY MUST BE IMPOSED

The Oregon Supreme Court has established clear guidelines for piercing the corporate veil, and every requirement is satisfied in this case:

• Respondents exercised complete control over payroll structuring.

• Corporate formalities were **ignored**, and employer identity was **manipulated**.

• Successor businesses were **undercapitalized** to prevent wage payments.

• Corporate entities were used to **defraud employees and evade liability.**

• Sanofi and its subsidiaries **benefited** financially from the payroll scheme.

• Claimant was actively prevented from seeking unpaid wages, making corporate veil piercing necessary to achieve justice.

For these reasons, the corporate veil must be pierced, and Respondents, including Sanofi, must be held personally liable for unpaid wages, penalty wages, and all applicable damages.

## VIII. LEGAL BASIS FOR NAMING INDIVIDUAL RESPONDENTS, SANOFI, CHATTEM, INC., AND QUTEN RESEARCH INSTITUTE

Each Respondent—Ashraf "Peter" Boutros, Deepak Chopra, Maged "Mike" Boutros, Marie-Laurie Amiard-Boutros, Osama Boutros, Sanofi, Chattem, Inc., and Quten Research Institute—is individually liable for their **direct control over payroll structuring, employer identity concealment, successor liability fraud, and financial transfers** at 411 E Bonneville. They cannot shield themselves behind corporate entities because:

1. Each Respondent personally owns and controls successor entities registered at 411 E Bonneville.

2. Each Respondent played an active role in payroll movement, wage structuring, and financial concealment.

3. Sanofi subsidiaries (Chattem, Inc. and Quten Research Institute) financially benefited from payroll structuring, making them liable for successor business operations.

4. Oregon successor liability laws **(ORS 60.637 & ORS 60.654)** impose financial responsibility on any business or individual who assumes payroll duties.

5. The corporate veil must be pierced under Oregon common law due to deliberate fraud and abuse of corporate formalities.

Each Respondent and corporate entity cannot dispute liability because their direct financial involvement in payroll structuring is documented through corporate filings, payroll transfers, and tax records.

## A. ASHRAF "PETER" BOUTROS – PRIMARY FINANCIAL ARCHITECT OF PAYROLL SCHEME

Ashraf "Peter" Boutros is the central architect behind the payroll structuring scheme, using successor businesses at 411 E Bonneville to manipulate employer identity and evade financial responsibility for wages.

### Entities Owned & Controlled by Ashraf "Peter" Boutros Connected to 411 E Bonneville

• **Basil Management Trust** – *Central financial hub managing successor businesses and payroll movement.*

• **QIP Management Trust** – *Oversaw payroll funding and employer identity transfers.*

• **FC – Nevada Inc.** – *Processed payroll transfers while shielding employer liability.*

• **VitaMina Labs LLC** – *Controlled financial transactions linked to Zena Nutrition commissions.*

• **Zena Nutrition Inc.** – *Absorbed commissions from Zena Nutrition and facilitated misclassification as wages.*

• **TPD IP LLC** – *Processed payroll transactions between Chattem, Inc. and payroll-linked businesses.*

### Why Ashraf Boutros Is Personally Liable

• Direct Control Over Payroll Movement – Managed successor businesses that processed payroll.

• Fraudulent Use of Multiple Names to Conceal Ownership – Used "Peter Boutros" for Quten Research Institute and "Ashraf Boutros" for VitaMina Labs/Zena Nutrition to separate financial control from employer responsibility.

• Misclassification of Wages & Successor Liability Violations – Used payroll structuring to reclassify commissions and evade financial responsibility.

## B. DEEPAK CHOPRA – SUCCESSOR LIABILITY & PAYROLL STRUCTURING

Deepak Chopra played a direct financial role in payroll movement and commission reclassification through Sanofi-controlled businesses and financial transactions at 411 E Bonneville.

### Entities Owned & Controlled by Deepak Chopra Connected to 411 E Bonneville

• **Quten Research Institute** – *Processed Qunol product commissions through successor entities.*

• **TPD IP LLC** – *Directly linked to payroll movement and financial transfers from Chattem, Inc.*

• **Rita GP Partners LLC** – *Co-managed with Ashraf Boutros, overseeing financial transactions.*

• **QRIB Intermediate Holdings** – *Managed Qunol commissions and payroll transactions.*

### Why Deepak Chopra Is Personally Liable

• Direct Financial Role in Payroll Movement – Managed commission processing through Quten Research Institute.

• Misclassification of Commissions – Oversaw the fraudulent reclassification of Qunol product commissions as wages.

• Payroll Transactions Show Successor Liability – Managed financial transfers that ensured payroll responsibilities were transferred but not assumed.

## C. MAGED BOUTROS – DIRECT INVOLVEMENT IN PAYROLL PROCESSING

Maged Boutros played a critical role in managing the payroll transfer scheme, ensuring that DRVM LLC's payroll functions were absorbed by successor businesses at 411 E Bonneville.

### Entities Owned & Controlled by Maged Boutros Connected to 411 E Bonneville

• **DRVM LLC** – *Original employer that transferred payroll obligations to successor businesses.*

• **AMJ Services LLC** – *Absorbed DRVM LLC's payroll obligations while refusing to assume past liabilities.*

• **MK Marketing LLC** – *Processed payroll obligations for Direct Demo employees.*

• **Pishoy Holdings LLC** – *Controlled financial movement between payroll-linked entities.*

• **MB Stewardship LLC** – *Managed payroll processing after DRVM LLC's dissolution.*

### Why Maged Boutros Is Personally Liable

• Payroll Processing & Employer Identity Concealment – Managed DRVM LLC's payroll transfers after dissolution.

• Fraudulent Wage Transfers & Successor Liability Violations – Used AMJ Services LLC and MK Marketing LLC to shift payroll obligations without assuming liability.

• Corporate Veil Piercing Requirements Are Met – Personally controlled payroll processing and employer identity concealment.

## D. MARIE-LAURIE AMAIRD-BOUTROS – SUCCESSOR ENTITY MANAGEMENT & PAYROLL FUNDING

### Entities Owned & Controlled by Marie Boutros at 411 E Bonneville

• **QIP Management Trust** – *Managed payroll movement and successor liability transfers.*

• **FC – Nevada Inc.** – *Processed payroll responsibilities while concealing employer identity.*

• **MK Marketing LLC** – *Processed payroll onboarding and financial structuring.*

### Why Marie Boutros Is Personally Liable

• Controlled financial transfers and payroll processing.

• Oversaw employer identity concealment by rotating payroll responsibilities across successor businesses.

• Was directly responsible for payroll processing through QIP Management Trust.

## E. OSAMA BOUTROS – PAYROLL STRUCTURING & EMPLOYER IDENTITY MANIPULATION

### Entities Owned & Controlled by Osama Boutros at 411 E Bonneville

• **QIP Management Trust** – *Oversaw employer identity structuring and payroll movement.*

• **FC – Nevada Inc.** – *Managed financial transactions to conceal employer liability.*

### Why Osama Boutros Is Personally Liable

• Directly controlled financial and payroll transfers between successor businesses.

• Managed payroll structuring through QIP Management Trust to conceal employer identity.

• Was responsible for ensuring payroll obligations were moved but never assumed.

## F. SANOFI, CHATTEM, INC., AND QUTEN RESEARCH INSTITUTE – FINANCIAL BENEFICIARIES OF PAYROLL FRAUD

### Why Sanofi, Chattem, Inc., and Quten Research Institute Are Liable

• Sanofi owns and controls Chattem, Inc. and Quten Research Institute, which are **financially tied** to payroll movement at 411 E Bonneville.

• Chattem, Inc. is a registered member of TPD IP LLC & MAK Nutrition LLC, which facilitated payroll processing. (*Using the address of Sanofi U.S. Headquarters)*

• Quten Research Institute handled commission payments for Qunol products while commissions were **misclassified as wages**.

35

• Financial discovery will confirm whether payroll structuring fraud extended into Sanofi-controlled businesses.

## G. CONCLUSION – ALL RESPONDENTS MUST BE HELD PERSONALLY LIABLE

Each Respondent directly controlled payroll movement, financial structuring, and employer identity concealment at 411 E Bonneville. Oregon law and common law fraud principles dictate that:

• Successor liability applies to all named Respondents, including Sanofi.

• Corporate veil piercing is justified based on financial misconduct.

• Employer identity concealment makes them personally responsible for unpaid wages.

For these reasons, the corporate veil must be pierced, and Respondents, including Sanofi, must be held personally liable for unpaid wages, penalty wages, and all applicable damages.

## IX. PROCEDURAL DEFENSES & WHY THEY FAIL

Respondents may attempt to challenge this arbitration through procedural objections, but none of these tactics hold merit under **Oregon law, JAMS rules**, or **established case precedent.** Each potential procedural defense is invalid and must be rejected by the arbitrator.

### A. JAMS Has Full Jurisdiction Over This Arbitration

Respondents cannot dispute JAMS' jurisdiction over this arbitration after agreeing to arbitrate under JAMS rules and procedures. **JAMS Rule 24(c)** grants the arbitrator broad authority to award equitable relief, including **successor liability and veil piercing.**

• Once a party agrees to JAMS arbitration, it **cannot** challenge jurisdiction.

• Successor liability and corporate veil piercing **fall within JAMS' authority, as confirmed in prior arbitrations.**

• Jurisdictional objections are **invalid** when a binding arbitration clause exists.

**Legal Precedent:**

• *Schreiber v. Friedman (JAMS 2016)* – *JAMS ruled on successor liability, confirming its authority over these claims.*

• *Amfac Foods, Inc. v. Int'l Systems & Controls Corp. (1982)* – *Corporate structuring cannot be used as a shield against wage liability.*

The arbitrator must reject any jurisdictional challenge and proceed with full review of the claims.

**B. There Is No Basis for a Motion to Dismiss in JAMS Arbitration**

Unlike in federal or state court, JAMS arbitration **does not** include a formal motion to dismiss process. Respondents **cannot** argue for dismissal using court-based standards.

• Civil courts apply "short and plain statement" pleading requirements under **FRCP 8(a),** but arbitration **does not** follow these rules.

• JAMS arbitrators expect a **fully developed demand, including legal arguments and case law.**

• Arbitration rules provide for **discovery** before summary disposition can be considered.

**Legal Precedent**:

• *Russell v. U.S. Bank National Association (2012)* – *Wage claims cannot be dismissed when key payroll evidence is controlled by the employer.*

A motion to dismiss is procedurally improper in arbitration. The arbitrator must allow the claim to proceed.

## C. Employer Identity Concealment Does Not Shield Respondents from Liability

Respondents may argue that Claimant named the wrong employer, but Oregon law **prohibits** businesses from using corporate structuring to obscure employer identity.

• Claimant's paystub continued listing DRVM LLC after its **dissolution, proving another entity assumed payroll obligations.**

• Successor businesses **cannot evade liability** by altering employer names.

• Employer identity fraud does not absolve Respondents from **wage claims.**

### Legal Precedent:

• *Wills v. Enloe (2005)* – *Concealing employer identity does not prevent wage liability.*

• *Sabin v. Willamette-Western Corp. (1976)* – *Employers cannot avoid liability by shifting payroll obligations between entities.*

The arbitrator must reject any argument that Claimant named the wrong entity.

## D. Late Payment of Wages Does Not Cancel Penalty Wages

Penalty wages under **ORS 652.150** apply automatically when penalty wages are not paid within **12 days** of the statutory deadline. Respondents cannot argue that later payment eliminates their obligation to pay penalty wages.

• **ORS 652.150** mandates penalty wages for up to **30** days when wages are paid late.

• Employers cannot "cure" non-payment by issuing wages **after** the deadline.

• Penalty wages serve as a **statutory deterrent** against wage violations.

**Legal Precedent**:

• *Doyle v. City of Medford (2014)* – *ORS 652.150 applies even if wages are eventually paid.*

• *Wyatt v. Body Imaging (2011)* – *Late wages do not eliminate penalty wage obligations.*

Penalty wages must be paid in full, and the arbitrator must enforce this statutory obligation.

## E. Successor Businesses Cannot Avoid Wage Liabilities

Successor businesses must assume the financial obligations of dissolved entities, including payroll responsibilities.

• Oregon law states that successor businesses retain liability when they continue operations.

• Financial discovery will **confirm** that successor businesses paid Claimant's wages, assuming DRVM LLC's obligations.

• Bank records, payroll transactions, and inter-company wage transfers will prove successor liability.

**Legal Precedent:**

• *Schreiber v. Friedman (JAMS 2016)* – *Successor businesses are responsible for payroll obligations.*

• **ORS 60.654** – *Successor entities assume liabilities when they retain payroll operations.*

The arbitrator must enforce successor liability and prevent Respondents from evading wage obligations.

## F. JAMS Precedent Supports Corporate Veil Piercing in Wage Fraud Cases

Corporate veil piercing applies when business owners **manipulate corporate entities to evade legal obligations.** Respondents structured payroll to conceal employer identity and transfer liabilities between entities—**a textbook case** for veil piercing.

• Respondents directly controlled payroll structuring and wage payments.

• Corporate formalities were ignored, and payroll responsibilities were moved across entities.

• Employer name changes were used to prevent employees from **enforcing wage claims.**

**Legal Precedent:**

• *Amfac Foods, Inc. v. Int'l Systems & Controls Corp. (1982)* – *Corporate veil piercing applies when businesses evade wage obligations.*

• *Klokke Corp. v. Classic Exposition, Inc. (1996)* – *Corporate owners are personally liable when business entities are misused to avoid financial responsibilities.*

The arbitrator must pierce the corporate veil and hold individual Respondents personally liable.

## G. Discovery Must Proceed Before Any Procedural Rulings

Respondents may attempt to argue that there is no direct evidence of liability. However, **all key payroll and financial records are within their control.**

• A motion to dismiss based on insufficient evidence is premature when **discovery has not been conducted.**

• Oregon courts **prohibit dismissal of wage claims** when the employer controls the payroll records.

• Respondents **cannot** withhold discovery and then claim lack of proof.

**Legal Precedent:**

• ***Russell v. U.S. Bank National Association (2012)*** – *Wage claims cannot be dismissed when employers control key payroll records.*

• ***Wilson v. Smurfit Newsprint Corp. (2009)*** – *Discovery is required before summary disposition of wage claims.*

The arbitrator must allow full discovery before ruling on any procedural objections.

## H. Sanofi, Chattem, Inc., and Quten Research Institute Are Properly Named in Arbitration

Respondents may argue that Sanofi, Chattem, Inc., and Quten Research Institute are improperly named. However, they are financially linked to the payroll structuring at 411 E Bonneville and **benefited directly from unpaid wages.**

• Sanofi owns Chattem, Inc. and Quten Research Institute, both of which have financial and operational ties to the payroll network.

• Chattem, Inc. is a registered member of TPD IP LLC & MAK Nutrition LLC, entities directly involved in payroll structuring at 411 E Bonneville.

• Quten Research Institute controlled Qunol product commissions, confirming that payroll funds were routed through Sanofi subsidiaries.

• The payroll manager who **denied** Claimant's wages used a Tennessee phone number, the same state where **Chattem, Inc. is headquartered**, raising concerns about payroll processing oversight.

**Legal Precedent:**

• ***State ex rel Neidig v. Superior National Insurance Co. (2007)*** – *Parent corporations are liable when they financially benefit from wage violations committed by subsidiaries.*

• ***Eclectic Investments, LLC v. Conner (2014)*** – *Successor businesses inherit liabilities when they assume payroll functions.*

The arbitrator must reject any attempt to dismiss Sanofi, Chattem, Inc., and Quten Research Institute, as they are directly tied to payroll structuring and successor liability.

### I. Conclusion – No Procedural Grounds for Dismissal Exist

• JAMS has **full jurisdiction** to hear this case.

• Employer identity manipulation **does not** absolve liability.

• Late payment **does not** cancel statutory penalty wages.

• Successor businesses must assume wage obligations.

• The corporate veil must be pierced to **prevent** financial misconduct.

• Discovery is **required** before any procedural rulings.

**The arbitrator must reject all procedural objections and proceed with full discovery and enforcement of all claims.**

### X. RELIEF SOUGHT (ENTITLED DAMAGES)

Claimant seeks **$300,000** in total compensation for Respondents' deliberate wage withholding, payroll structuring fraud, successor liability evasion, and misclassification of commissions. Respondents **knowingly** engaged in a scheme to conceal employer responsibility, transfer payroll obligations between entities, and **refuse to pay final wages and penalty wages within the statutory period.**

Under **ORS 652.140, ORS 652.150, ORS 60.637, ORS 60.654,** and applicable federal and state wage laws, Claimant seeks the following damages:

### A. UNPAID WAGES & MISCLASSIFIED COMMISSIONS

• Full compensation for unpaid wages that were withheld due to fraudulent payroll structuring.

• Misclassified commissions that were unlawfully restructured as hourly wages.

• Reimbursement for tax misclassification caused by Respondents' manipulation of earnings.

## Legal Basis:

• **ORS 652.140** mandates timely payment of final wages.

• Failure to classify wages correctly constitutes a violation of Oregon wage laws.

• Respondents structured payroll to obscure commission payments and prevent proper wage calculation.

## B. STATUTORY PENALTY WAGES UNDER ORS 652.150

### Amount Entitled: $10,050

• Penalty wages equaling 30 days' wages due to Respondents' failure to issue final wages within the statutory period.

• Penalty wages should have been issued within **12 days**, and Respondents' refusal to pay them violated **ORS 652.150.**

## Legal Basis:

• *Belknap v. U.S. Bank Nat'l Ass'n (2010) – ORS 652.150 applies automatically when an employer fails to pay wages on time.*

• *Doyle v. City of Medford (2014) – Penalty wages must be issued within the statutory period, not at the employer's discretion.*

• *Wilson v. Smurfit Newsprint Corp. (2009) – Penalty wages continue accruing daily until wages are paid or the statutory maximum is reached.*

## C. SUCCESSOR LIABILITY DAMAGES

• Successor businesses must assume DRVM LLC's financial obligations, including unpaid wages and penalty wages.

• Full liability imposed on AMJ Services LLC, MK Marketing LLC, FC – Nevada Inc., Chattem, Inc., and Quten Research Institute.

**Legal Basis:**

• **ORS 60.637 & ORS 60.654** confirm that successor businesses assume wage obligations.

• *Schreiber v. Friedman (JAMS 2016)* – *Successor liability applies when payroll obligations are transferred between entities to evade responsibility.*

• Claimant's paystubs continued listing DRVM LLC after its **dissolution**, confirming payroll obligations were absorbed by successor entities at 411 E Bonneville and those financially tied to Sanofi subsidiaries.

## D. EMOTIONAL & FINANCIAL DISTRESS DAMAGES

• Compensation for severe financial hardship caused by **delayed wages, unpaid commissions, and Respondents' refusal to pay penalty wages.**

• Emotional distress resulting from Respondents' **bad faith wage withholding and corporate structuring designed to evade liability.**

• The deliberate nonpayment of wages created **unnecessary financial hardship, stress, and mental distress** beyond a standard wage dispute.

**Legal Basis:**

• *Wilson v. Smurfit Newsprint Corp. (2009)* – *Intentional payroll delays causing financial distress justify damages.*

• *Russell v. U.S. Bank National Association (2011)* – *Wage disputes cannot be delayed indefinitely to avoid liability.*

• Oregon law recognizes emotional distress damages when financial misconduct directly impacts an individual's well-being.

## E. PUNITIVE DAMAGES FOR FRAUDULENT PAYROLL STRUCTURING

• Punitive damages are warranted due to Respondents' deliberate manipulation of payroll obligations to **avoid** paying employees.

• Respondents **knowingly** transferred payroll responsibilities across multiple successor entities without assuming financial liability, constituting fraud.

• Employer identity was **intentionally** concealed to obstruct wage claims.

### Legal Basis:

• Oregon law allows punitive damages when payroll structuring is used to commit wage fraud.

• *Sabin v. Willamette-Western Corp. (1976)* – *Penalty wages exist to deter employers from structuring payroll to evade liability.*

• *Amfac Foods, Inc. v. Int'l Systems & Controls Corp. (1982)* – *Business owners may be personally responsible if they manipulate payroll obligations through successor entities.*

## F. PERSONAL LIABILITY FOR RESPONDENTS

• The corporate veil must be pierced, and Respondents must be held personally liable for fraudulently structuring payroll to avoid wage obligations.

• Ashraf "Peter" Boutros, Deepak Chopra, Maged "Mike" Boutros, Marie-Laurie Amiard-Boutros, Osama Boutros, Chattem, Inc., Quten Research Institute, and Sanofi must assume direct liability.

### Legal Basis:

• Oregon law permits veil piercing when business entities are used to evade financial responsibility.

• *Klokke Corp. v. Classic Exposition, Inc. (1996)* – *Shuffling liabilities between corporate entities is a basis for imposing personal liability.*

• *State ex rel Neidig v. Superior National Insurance Co. (2007)* – *A business entity cannot be used as a shield to avoid wage liability.*

## G. ATTORNEYS' FEES & ARBITRATION COSTS

• Respondents' bad faith payroll practices forced Claimant into arbitration.

• Claimant should not bear the financial burden of pursuing wages that were unlawfully withheld.

### Legal Basis:

• **ORS 652.200** allows employees to recover attorneys' fees in wage disputes.

• JAMS arbitration rules confirm that employers may be held responsible for arbitration costs if found liable.

## CLAIMANT IS ENTITLED TO: $300,000

• Penalty Wages: $10,050

• Unpaid Wages, Emotional Distress, Successor Liability, and Punitive Damages: Remaining balance to reach $300,000

## H. CONCLUSION – FULL RELIEF MUST BE GRANTED

Respondents' payroll structuring scheme was intentional and designed to:

• Conceal employer identity and obstruct wage claims.

• Transfer payroll obligations between entities to avoid liability.

• Reclassify commissions to shift employer tax burdens.

• Deny Claimant access to final wages and penalty wages.

The Arbitrator Must Enforce Full Relief To Ensure:

1. Claimant receives all unpaid wages, penalty wages, and statutory damages.

2. Successor businesses and Sanofi-controlled subsidiaries assume full liability for unpaid wages.

3. Personal liability is imposed on Respondents for fraudulently concealing payroll responsibilities.

Claimant respectfully requests that the arbitrator award the full $300,000 in damages and enforce the maximum financial accountability against Respondents.

## XI. DISCOVERY REQUEST

Claimant respectfully requests that the arbitrator grant **full discovery** into payroll structuring, wage misclassification, employer identity concealment, financial transfers between payroll-linked entities, and the nonpayment of penalty wages.

This request is **not** a broad examination of the corporate financial structure of Respondents or their affiliates. Instead, **it is strictly focused on payroll operations, wage-related financial transfers, and the movement of funds that should have been used to pay Claimant's final wages and penalty wages.**

Respondents cannot hide behind corporate restructuring, successor entities, or financial transfers to avoid their legal obligations. Payroll records and inter-company wage transactions will directly prove whether Respondents **manipulated** payroll responsibilities to **evade wage obligations.**

This discovery request also includes payroll-linked entities financially connected to Sanofi, including its subsidiary Chattem, Inc., which has direct ties to payroll processing at 411 E Bonneville.

## A. SCOPE OF DISCOVERY – REQUEST FOR SPECIFIC PAYROLL & WAGE RECORDS

### 1. Decision-Making on Payroll & Nonpayment of Wages and Penalty Wages

Requested Information:

• Internal emails, memos, and financial approvals related to payroll processing and the **decision** to withhold Claimant's penalty wages.

• Communications discussing Claimant's **wage classification and final wage calculations.**

• Records confirming who **authorized the nonpayment** of Claimant's final wages and penalty wages.

• Payroll correspondence involving Collins Coltharp, the payroll representative using an AMJ, LLC signature with a Tennessee phone number, and any communications with Chattem, Inc. or Sanofi regarding payroll processing.

### Relevance:

• Claimant's final wages and penalty wages were unlawfully withheld, violating **ORS 652.140 & ORS 652.150.**

• Discovery will identify who made the decision to withhold final wages and penalty wages, proving whether it was an internal corporate policy or an individual directive.

### 2. Payroll Transfers Between Successor Businesses to Conceal Liability

### Requested Information:

• Payroll processing records showing how Claimant's wages were transferred between DRVM LLC, AMJ Services LLC, MK Marketing LLC, and FC – Nevada Inc.

• Bank transfers reflecting inter-company payroll transactions, proving whether payroll obligations were transferred between businesses without assuming liabilities.

48

• Internal correspondence discussing employer name changes on payroll records.

**Relevance:**

• Claimant's paystub continued listing DRVM LLC even after its dissolution, proving successor businesses absorbed payroll without assuming liability.

• Discovery will confirm which entities actually paid Claimant's wages and whether successor liability applies under **ORS 60.654.**

### 3. Banking & Payroll Tax Filings Related to Wage Payments

**Requested Information:**

• Bank records used to process payroll transactions for entities that handled Claimant's wages.

• Employer tax filings related to payroll deposits and withholdings.

• Documents confirming the source of payroll funding, including whether profits were routed through financial trusts or private accounts.

• Any records showing whether payroll-related payments were processed through Sanofi-controlled subsidiaries, including Chattem, Inc.

**Relevance**:

• Respondents transferred wage obligations between successor businesses to avoid direct liability.

• Employer tax filings will confirm whether commissions were fraudulently misclassified and whether successor entities paid wages.

• Discovery will prove whether funds that should have been used for payroll were instead transferred into private trusts, such as the Boutros Family Foundation.

• If payroll funding was processed through Sanofi-controlled subsidiaries, this is highly relevant to this arbitration.

## 4. Successor Liability Documents & Business Registration Filings

### Requested Information:

• Articles of incorporation, dissolution records, and successor business registration filings for DRVM LLC, AMJ Services LLC, MK Marketing LLC, and FC – Nevada Inc.

• Any contracts, agreements, or financial documents transferring payroll responsibilities between these entities.

### Relevance:

• Payroll records continued listing DRVM LLC even after its dissolution, violating **ORS 60.637.**

• Discovery will prove that Respondents used successor businesses to continue operations while evading wage liabilities.

• Successor businesses must assume DRVM LLC's financial obligations, including unpaid wages and penalty wages.

## 5. Profit Distribution & Transfers to Private Trusts or Non-Payroll Accounts

### Requested Information:

• Financial statements showing where profits from "*Direct Demo*" operations were directed, including **bank transfers to private trusts.**

• Records confirming whether revenue from Zena Nutrition and Qunol product sales was allocated to payroll or **diverted elsewhere.**

• Financial records for VitaMina Labs and the Boutros Family Foundation, showing whether payroll funds were redirected into **private accounts instead of being used for wages.**

• Any payments between payroll-linked entities at 411 E Bonneville and Sanofi-controlled subsidiaries, including Chattem, Inc.

**Relevance**:

• Sanofi owns Chattem, Inc., which is a registered member of TPD IP LLC & MAK Nutrition LLC, payroll-linked entities at 411 E Bonneville.

• If payroll funds were **directed** through Sanofi-owned entities instead of being used for wage payments, this is **highly relevant** to the arbitration.

• Discovery will confirm whether funds that should have been used for payroll were diverted into **private trusts or unrelated corporate accounts instead.**

• If payroll profits were funneled through these private accounts instead of being allocated to wages, this constitutes **financial misconduct.**

## 6. Communications on Payroll Transfers & Wage Classification

### Requested Information:

• Emails and internal communications regarding Claimant's payroll classification and final wage calculation.

• Records discussing payroll structuring, successor liability avoidance, and financial movement between payroll-linked entities.

• Correspondence between payroll processors and executives regarding the decision to **withhold final wages and penalty wages.**

• Any discussions between Chattem, Inc., Sanofi, and the payroll entities at 411 E Bonneville **regarding wage payments.**

### Relevance:

• Respondents manipulated payroll processing to **prevent** employees from identifying the responsible entity for unpaid wages.

• Discovery will confirm that Respondents **structured** payroll operations to evade wage obligations.

• If internal communications confirm an **intentional decision** to withhold wages, this supports a claim for **bad faith payroll structuring.**

## B. WHY DISCOVERY MUST BE GRANTED

### Respondents cannot obstruct payroll transparency to conceal wage violations.

• This request is narrowly tailored to payroll records, wage transactions, and payroll processing details—it does not seek irrelevant corporate financial information.

• The requested payroll discovery is necessary to prove that Respondents misclassified wages, transferred payroll obligations, and concealed employer responsibility.

• If Respondents refuse discovery, the arbitrator must issue an adverse inference ruling, presuming that withheld documents contain evidence of wage violations.

### Discovery is essential to confirming:

• Who authorized the decision to withhold final wages and penalty wages.

• Which entities processed Claimant's wages and whether successor liability applies.

• Whether profits that should have funded payroll were diverted into private accounts.

• Whether employer identity was fraudulently altered to prevent wage claims.

• Whether Sanofi-controlled subsidiaries were involved in payroll-related financial transfers.

### Failure to Provide Discovery Will Result in an Adverse Inference Ruling

Respondents are in **exclusive possession** of payroll, financial, and tax records related to Claimant's **employment and wage classification.** If Respondents refuse to provide these records or attempt to limit access, Claimant will seek an **adverse inference ruling**, allowing the arbitrator to assume that the withheld documents **contain** evidence supporting Claimant's claims.

## C. CONCLUSION – FULL PAYROLL DISCOVERY MUST BE ENFORCED

The arbitrator must grant full payroll discovery to ensure that financial transparency is achieved and employer accountability is enforced.

## XII. RESPONDENTS' FAILURE TO ACT IN GOOD FAITH

Under Oregon law, employers have a legal obligation to process and pay wages in good faith and within statutory deadlines. Employers who **deliberately withhold wages, misclassify earnings, or manipulate payroll structures** to evade financial responsibility are subject to penalty wages, successor liability, and corporate veil piercing.

In this case, Respondents—Sanofi, Chattem, Inc., Quten Research Institute, Ashraf "Peter" Boutros, Deepak Chopra, Maged "Mike" Boutros, Marie-Laurie Amiard-Boutros, and Osama Boutros—**knowingly** engaged in bad faith payroll structuring by:

• **Failing to pay wages within the statutory deadline and refusing to correct non-payment.**

• **Transferring payroll responsibilities across multiple entities to obscure liability.**

• **Falsely listing DRVM LLC as the employer after its dissolution, misleading employees and regulatory agencies.**

• **Misclassifying commissions as wages and deliberately manipulating payroll records.**

These actions were not mistakes or oversights—they were deliberate, calculated efforts to conceal employer identity and avoid legal wage obligations.

## A. DELIBERATE REFUSAL TO PAY WAGES DESPITE LEGAL OBLIGATION

Under **ORS 652.140,** employers must pay final wages promptly upon termination and are subject to penalty wages under **ORS 652.150** if payment is unlawfully delayed.

• Claimant's wages were not paid within the statutory period, triggering mandatory penalty wages.

• Despite being informed of non-payment, Respondents **refused** to correct the issue or provide a valid reason for withholding wages.

• Respondents **knowingly** transferred financial responsibility across multiple successor businesses to evade wage payments.

• Oregon law requires that penalty wages be enforced in cases of **intentional wage withholding,** regardless of whether base wages were eventually paid.

Respondents had multiple opportunities to pay Claimant's wages but **intentionally withheld payment to obstruct wage enforcement.**

## B. CONCEALMENT OF EMPLOYER IDENTITY TO PREVENT WAGE RECOVERY

**Respondents engaged in employer identity fraud by:**

• Continuing to list DRVM LLC on Claimant's paystub after its dissolution, misleading employees about their actual employer.

• Processing payroll under successor businesses (AMJ Services LLC, MK Marketing LLC, and FC – Nevada Inc.) but refusing to acknowledge payroll responsibility.

• Changing employer names to **obstruct wage claims and prevent employees** from identifying the responsible party.

This pattern of concealment was not an isolated incident but a coordinated effort to avoid wage liabilities.

**Key Evidence of Employer Identity Fraud:**

• Sanofi owns **Chattem, Inc**., which is a registered member of **TPD IP LLC & MAK Nutrition,** entities financially tied to payroll structuring at 411 E Bonneville.

• Sanofi owns **Quten Research Institute**, which structured payroll responsibilities through successor entities.

• Sanofi-controlled subsidiaries played a **direct role** in financial transfers linked to payroll funding.

54

Oregon case law holds that employer identity fraud does not absolve liability for wage violations. Respondents **cannot** argue they were not responsible for Claimant's wages while simultaneously processing payroll through successor businesses.

## C. MISCLASSIFICATION OF WAGES & INTENTIONAL PAYROLL STRUCTURING

### Respondents engaged in deliberate payroll manipulation by:

• Misclassifying commissions as wages, altering payroll tax obligations and avoiding proper wage reporting.

• Transferring payroll responsibilities between multiple entities to obscure financial liability.

• Using financial structuring to ensure no single entity retained long-term payroll responsibility.

### Key Evidence of Payroll Structuring & Wage Misclassification:

• Quten Research Institute processed commissions through payroll-linked entities, ensuring commissions were absorbed as wages.

• Sanofi and Chattem, Inc. were financially tied to payroll transactions through TPD IP LLC and MAK Nutrition LLC.

• Employer tax filings will confirm that Respondents **knowingly** engaged in financial structuring to obstruct wage payments and misclassify earnings.

Under **ORS 652.150**, employees are entitled to penalty wages when wages are intentionally misclassified or delayed.

## D. RESPONDENTS IGNORED CLAIMANT'S WAGE DISPUTE WHILE AWARE OF HARDSHIP

Respondents were **fully** aware of Claimant's financial hardship and ongoing wage dispute but **deliberately refused** to act.

• Claimant informed payroll representatives that wages were unpaid, yet **no** corrective action was taken.

• Respondents had multiple opportunities to resolve the issue but **intentionally prolonged non-payment.**

• Despite Claimant experiencing significant personal hardship, including the **passing of a close family member**, Respondents **ignored** all communications regarding unpaid wages.


This willful disregard demonstrates intentional wage suppression and a lack of good faith.


## E. CONCLUSION – ARBITRATOR MUST ENFORCE FULL ACCOUNTABILITY


Under Oregon law, Respondents' actions constitute willful wage withholding, employer identity fraud, and successor liability violations.


### Legal Findings Supporting Relief:

• Penalty wages under **ORS 652.150 a**re mandatory, not discretionary.

• Employer concealment and payroll transfers confirm successor businesses must assume wage liabilities.

• Corporate veil piercing is warranted given Respondents' direct control over wage suppression.


### Claimant Requests That the Arbitrator:

1. Hold all named Respondents jointly and severally liable for unpaid wages, misclassified earnings, and penalty wages.

2. Enforce full successor liability to prevent Respondents from using corporate structuring to escape wage obligations.

3. Grant full relief, including unpaid wages, penalty wages, and additional damages due to Respondents' bad faith conduct.

Respondents' payroll structuring scheme was deliberate, coordinated, and executed with the intent to suppress wage claims. Their actions must result in maximum financial accountability and strict enforcement of statutory penalties.

## XIII. FINAL LEGAL CONSIDERATIONS AGAINST DISMISSAL ATTEMPTS

Respondents—Sanofi, Chattem, Inc., Quten Research Institute, Ashraf "Peter" Boutros, Deepak Chopra, Maged "Mike" Boutros, Marie-Laurie Amiard-Boutros, and Osama Boutros—may attempt to argue for dismissal through procedural technicalities or corporate structuring defenses. However, none of these arguments hold legal merit under **Oregon law and JAMS precedent**, both of which **explicitly prohibit** the use of corporate structuring to evade wage obligations.

The following legal considerations establish that this arbitration must proceed, and Respondents must be held fully accountable for their deliberate payroll structuring scheme, employer identity manipulation, and wage suppression tactics.

### A. Procedural Attacks Cannot Override Wage Statutes

Oregon law mandates that wage claims must be enforced in full, regardless of procedural challenges by employers. **No procedural defense can override the following statutory mandates:**

• **ORS 652.140 & ORS 652.150** – Require full payment of final wages immediately upon termination and statutory penalty wages for failure to pay **within** the required timeframe.

• **ORS 60.637 & ORS 60.654** – Establish that successor businesses **inherit** financial liabilities when they assume payroll operations and retain employees.

• **ORS 652.200** – Confirms that an employee is entitled to recover attorneys' fees in wage disputes, preventing employers from using legal costs as a deterrent.

Procedural arguments cannot be used to dismiss legally mandated wage claims when the law explicitly protects employees from delayed or misclassified wages.

Respondents cannot use corporate structuring to override Oregon wage statutes.

## B. Employer Manipulation Does Not Excuse Payroll Fraud

Respondents may claim that wages were delayed, misclassified, or transferred due to administrative errors or corporate restructuring. However, the **deliberate** concealment of employer identity, payroll transfers, and successor liability fraud confirm that these were **intentional acts, not errors.**

### Key Evidence of Employer Manipulation:

• Claimant's paystub continued listing DRVM LLC after its dissolution, proving that Respondents intentionally misled employees about their employer.

• Successor businesses absorbed payroll duties but refused to assume financial liability, confirming deliberate financial manipulation.

• Employer name changes were used strategically to obstruct wage claims and prevent employees from holding any single entity accountable.

• Sanofi's subsidiary, Chattem, Inc., is a registered member of TPD IP LLC & MAK Nutrition LLC, the key payroll-linked businesses at 411 E Bonneville, confirming that Sanofi financially **benefited** from payroll movement within the structuring network.

Corporate structuring and employer manipulation cannot be used as a shield against wage liability.

## C. Successor Businesses Are Financially Responsible for Wage Payments

Successor liability is not discretionary under Oregon law. If a business assumes payroll responsibilities, it also assumes liability for **unpaid wages and penalties.**

• Oregon law holds that when a business continues operations, retains employees, or processes payroll, it **inherits** the financial responsibilities of its predecessor.

• Banking records and payroll filings **confirm** that successor businesses paid wages and commissions to employees after DRVM LLC's dissolution.

• Sanofi's financial involvement in payroll-linked entities, including Chattem, Inc. and Quten Research Institute, confirms that these entities financially benefited from payroll operations at 411 E Bonneville.

Respondents **cannot** argue that they are separate entities when financial records confirm continuous payroll movement across successor businesses. Payroll transfers confirm that successor businesses must assume full liability for Claimant's unpaid wages and penalties.

## D. Corporate Owners Can Be Held Personally Liable for Misuse of Business Entities

Corporate veil piercing applies when business owners **misuse corporate entities to commit financial fraud or evade legal obligations.** All named Respondents exercised financial control over payroll structuring while simultaneously avoiding wage liabilities.

### Key Findings Supporting Veil Piercing:

• Ashraf "Peter" Boutros manipulated corporate records by using different names depending on the entity (Quten Research Institute vs. VitaMina Labs), proving intentional employer identity fraud.

• Deepak Chopra and Maged Boutros personally oversaw financial transfers, payroll structuring, and successor business movements, **confirming** their active involvement in **wage suppression.**

• Sanofi, through Chattem, Inc., had financial ties to TPD IP LLC & MAK Nutrition LLC, the key payroll processing entities at 411 E Bonneville, **confirming financial entanglement** in payroll transactions.

• Employer identity was **intentionally altered** to obstruct wage claims, ensuring that no single entity could be held accountable.

• Quten Research Institute, financially backed by Sanofi, played a role in structuring payroll responsibilities across multiple successor entities, showing financial control over wage suppression.

### Relevant Case Law Supporting Corporate Veil Piercing & Successor Liability:

• *Amfac Foods, Inc. v. Int'l Systems & Controls Corp. (1982)* – *Ruling confirms that corporate veil piercing applies when businesses are structured to evade wage obligations.*

• *Klokke Corp. v. Classic Exposition, Inc. (1996)* – *The court ruled that shuffling payroll responsibilities between corporate entities is a key factor in imposing personal liability.*

• *State ex rel Neidig v. Superior National Insurance Co. (2007)* – *Reaffirmed that corporate entities cannot be used to evade employer liability in wage disputes.*

• *Schreiber v. Friedman (JAMS 2016)* – *JAMS ruled that corporate owners can be personally liable if successor businesses assume payroll obligations but fail to pay wages.*

When corporate structuring is used to evade wage payments, veil piercing is legally justified, and personal liability must be enforced.

### E. Conclusion – Respondents Must Be Held Fully Liable

### Key Findings Establishing Employer Liability:

- Procedural challenges do not override mandatory wage laws.

- Employer identity manipulation and payroll transfers confirm deliberate wage suppression.

- Successor liability mandates that Respondents assume financial responsibility for unpaid wages.

- Corporate veil piercing is warranted to hold individual Respondents personally accountable.

- Sanofi, through Chattem, Inc. and Quten Research Institute, is financially linked to payroll structuring, confirming liability.

**The Arbitrator Must Enforce Full Accountability & Deny Any Attempted Dismissal:**

1. Deny any procedural challenge to jurisdiction. **JAMS has full authority** to impose equitable relief, successor liability, and corporate veil piercing.

2. Reject any attempt to dismiss based on corporate structuring. **Employer identity manipulation does not override wage laws.**

3. Confirm successor liability. Payroll responsibilities were transferred but not assumed, meaning successor businesses **must** pay Claimant's wages and penalties.

4. Hold individual Respondents personally liable. Corporate structuring cannot be used to **suppress** wage claims, and veil piercing is legally **justified**.

5. Proceed with **full** financial discovery. **Respondents cannot refuse to provide payroll records while simultaneously denying liability.**

This arbitration must proceed, and Respondents must be held fully liable for unpaid wages, statutory penalties, and all financial damages resulting from their wage suppression scheme.

## XIV. CONCLUSION

This case is not a routine wage dispute—it is a **deliberate, highly orchestrated corporate scheme** involving payroll structuring, successor liability evasion, and fraudulent employer concealment designed to **obstruct Claimant from recovering wages lawfully owed under Oregon law.** The evidence is overwhelming, the violations are undeniable, and Respondents must be held fully accountable for their misconduct.

Respondents—Sanofi, Chattem, Inc., Quten Research Institute, Ashraf "Peter" Boutros, Deepak Chopra, Maged "Mike" Boutros, Marie-Laurie Amiard-Boutros, and Osama Boutros—

systematically **manipulated** payroll obligations, **transferred** financial responsibility between successor entities, and **concealed** employer identity to **obstruct wage claims.** They continued processing payroll under DRVM LLC even after its **dissolution**, transferred wage responsibilities between AMJ Services LLC, MK Marketing LLC, and FC – Nevada Inc., and structured commissions to be **misclassified as wages**—all in an effort to escape liability while continuing to **benefit from employee labor.**

The payroll structuring network at 411 E Bonneville, directly tied to Sanofi subsidiaries such as Chattem, Inc., provides **undeniable** proof that these entities **conspired** to obscure payroll obligations. Sanofi, through Chattem, Inc. and Quten Research Institute, **directly financially benefited** from payroll transactions linked to Qunol product commissions and successor entities that absorbed **wage responsibilities.** The fact that Sanofi-controlled businesses were financially involved in payroll processing at the **same address listed on Claimant's paystub** further highlights the breadth of this **deception** and the need for complete **financial transparency.**

**Respondents' Failure to Pay Wages Was Deliberate and Systematic**

Respondents' refusal to pay final wages and penalty wages within the statutory period was not an oversight—**it was a calculated decision designed to misclassify wages, delay payments, and obstruct wage claims.**

• Sanofi-owned subsidiaries, including Chattem, Inc. and Quten Research Institute, were **financially involved** in the commission and payroll structuring network.

• Wages continued being processed under DRVM LLC despite its dissolution, confirming that successor businesses **unlawfully** assumed payroll functions without assuming financial responsibility.

• Penalty wages were legally required under **ORS 652.150** but were **deliberately withheld despite clear legal obligations.**

The case law is clear—**penalty wages must be issued within 12 days,** and failure to do so constitutes strict liability under Oregon wage statutes.

**Successor Entities and Individual Respondents Must Be Held Fully Liable**

It is not enough to hold only the successor entities responsible. The individuals who **controlled payroll decisions and engaged in financial structuring** to conceal wage obligations **must** also be held personally accountable.

The corporate veil must be pierced, and the following individuals and corporate entities must assume direct financial liability for their deliberate fraud:

• **Sanofi** – *Parent company of Chattem, Inc. and Quten Research Institute, both of which financially benefited from payroll structuring at 411 E Bonneville.*

• **Chattem, Inc**. – *Registered member of TPD IP LLC & MAK Nutrition LLC, the key payroll-linked entities that processed financial transactions related to payroll movement at 411 E Bonneville.*

• **Quten Research Institute** – *Managed Qunol product commissions, which were reclassified as wages through successor businesses at 411 E Bonneville.*

• **Ashraf "Peter" Boutros** – *Financial architect who controlled successor businesses used to evade payroll liability while using two different names to separate financial control from employer responsibility.*

• **Deepak Chopra – Co-owner of financial entities linked to payroll movement, including Rita GP Partners LLC and TPD IP LLC, which transferred payroll obligations.**

• **Maged "Mike" Boutro**s – *Managed direct payroll transfers from DRVM LLC to successor businesses and facilitated commission misclassification.*

• **Marie-Laurie Amiard-Boutros & Osama Boutros** – *Controlled financial movement through QIP Management Trust and FC – Nevada Inc., ensuring that no single entity assumed full payroll liability.*

The Oregon Supreme Court has established clear guidelines for corporate veil piercing and successor liability. Every factor required to impose personal liability is present in this case:

- **Respondents exercised direct control over payroll structuring and wage transfers.**

- **Corporate formalities were ignored, and business entities were treated as mere extensions of their owners.**

- **Successor businesses were inadequately capitalized to meet payroll obligations, proving they were set up solely to shift liabilities.**

- **Payroll was structured through successor businesses and private trusts to defraud employees and evade financial responsibility.**

- **Allowing Respondents to escape liability would result in a clear injustice.**

**JAMS Has Full Jurisdiction to Impose Corporate Veil Piercing and Successor Liability**

JAMS rules and case law confirm that arbitrators have **full authority** to pierce the corporate veil and impose successor liability where necessary to **prevent financial fraud and wage violations.**

• **JAMS Rule 24(c)** – *Grants arbitrators the authority to award equitable relief, including veil piercing and financial liability against successor entities.*

• Oregon law (*ORS 60.637 & ORS 60.654*) – *Confirms that successor businesses must assume the **wage obligations of dissolved entities.***

• *Schreiber v. Friedman (JAMS 2016)* – *JAMS ruled that business owners **cannot** use corporate structuring to evade payroll obligations, confirming that successor businesses must assume liability.*

Sanofi and its subsidiaries cannot escape successor liability when their financial involvement in payroll structuring is undeniable.

**The Arbitrator Must Award Full Damages and Enforce Maximum Financial Accountability**

The financial harm and emotional distress suffered by Claimant are **substantial**. **Unpaid wages, delayed payments, and fraudulent misclassification of earnings** have caused severe economic hardship. Furthermore, the timing of Respondents' wage violations—occurring while Claimant was experiencing the personal loss of a family member—**only compounded the financial and emotional distress.**

**The requested relief of $300,000 is fully justified and necessary to:**

• Correct the unlawful withholding of wages

• Enforce penalty wage statutes

• Compensate for financial hardship

• Punish fraudulent payroll structuring

**The Arbitrator Must Ensure That:**

1. All unpaid wages, misclassified commissions, and financial damages are awarded in full.

2. Penalty wages of $10,050 are **enforced** under **ORS 652.150.**

3. Successor businesses assume **full** liability for DRVM LLC's payroll obligations.

4. Corporate veil piercing is applied to hold individual Respondents **personally** liable.

5. Punitive damages are imposed to **deter future payroll fraud and wage structuring misconduct.**

**Justice Demands Full Enforcement of Wage Laws and Maximum Financial Accountability**

Respondents built a deliberate financial structure designed to prevent employees from recovering unpaid wages. They manipulated payroll, concealed employer identity, and transferred financial obligations to shield themselves from liability.

**The arbitrator must not allow them to succeed.**

Claimant respectfully requests that JAMS award full damages in the amount of $300,000 and enforce the maximum financial accountability against Respondents.

Anything less than full enforcement of Oregon's wage laws would allow Respondents to continue these deceptive practices unchecked.

This case is clear-cut. **The violations are undeniable.** And Respondents must be held **accountable** in full.

Submitted,

Jorden Hollingsworth

02/26/2025

Exhibit 3:

Emails with

GRSM

 Gmail                    **Jorden Timothy** ◄▬▬▬▬▬▬▬▬▬▬▬

---

## Official Service Of Demand For Arbitration - JAMS

---

**Jorden Timothy** ◄▬▬▬▬▬▬▬▬▬▬                          Tue, Feb 18 at 7:34 PM
To: smoore@grsm.com <smoore@grsm.com>
Cc: Jamie Olvera <yolvera@grsm.com>

Dear Sara A. Moore,

Pursuant to JAMS rules and the arbitration agreement, attached is a formal Demand
for Arbitration filed against the following Respondents:

1. DRVM LLC (Dissolved)
2. AMJ Services LLC
3. Maged Boutros (Individually, under ORS 60.645)
JAMS has received and processed the arbitration filing, including all supporting
exhibits. If you require direct access to these documents, please confirm, and I will
provide them separately.

As you are now representing the Respondents, this email serves as official notice and
service of the arbitration filing.

Please confirm receipt of this email. Additionally, please confirm whether you
represent all three Respondents listed above. If there is a separate legal
representative for any Respondent, kindly provide their contact information for
further communications.

Best regards,

Jorden Hollingsworth
▬▬▬▬▬▬▬▬▬▬▬▬▬
▬▬▬▬▬

Demand of Arbitration.pdf, JAMS Arbitration Demand.pdf

1

 Gmail

Jorden Timothy <

**Confirmation of Representation – Amendment to Demand**
3 messages

**Jorden Timothy** <                                        >                          Thu, Feb 27 at 4:07 PM
To: <smoore@grsm.com>
Cc: Jamie Olvera <yolvera@grsm.com>

Sara Moore,

I am submitting an amendment to my arbitration demand, which includes naming additional respondents. Given
your representation of the original respondents, I need confirmation on whether you will also be representing the
newly named parties.

Since my previous emails have gone unanswered, I am setting a firm deadline of Monday for your response. If I do
not receive confirmation by **10:00AM on March 3rd, 2025**, I will proceed with serving each newly named
respondent individually.

I expect a response to this email confirming either (1) that you will be representing the additional respondents, or
(2) that they will need to be served separately. Please advise accordingly.


Thank you for your prompt attention to this matter.


Best,

Jorden Hollingsworth

* Exhibit List.pdf, *New Amendment .pdf

---

**Sara Moore** <smoore@grsm.com>                                        Mon, Mar 3 at 1:18 PM
To: Jorden Timothy <                              >
Cc: Nicole Demmon <ndemmon@grsm.com>, Jamie Olvera <yolvera@grsm.com>

Dear Mr. Timothy:


We have received your Amended Demand for Arbitration, dated February 27, 2025. As stated previously in my
February 14 communication, we can confirm that we represent Respondent DRVM, LLC. We also understand based
on your amended demand that you have named 10 additional respondents, but we will need to confirm whether
they are properly named as we suspect many are not appropriate parties to this claim and whether we will
represent them.


Given that the demand raises causes of action under Oregon law, my colleague, Nicole Demmon, will be handling
this claim on behalf of DRVM moving forward. She will contact you soon to schedule a time to meet and confer
about the named respondents and service.


Thanks,
Sara

---

SARA A. MOORE
Partner & Bay Area Co-Practice Group Leader

**GORDON REES SCULLY MANSUKHANI I GRSM50**
YOUR 50 STATE LAW FIRM™

315 Pacific Avenue, San Francisco, CA 94111
**P:** 415.986.5900 I **F:** 415.986.8054
smoore@grsm.com

grsm.com
vCard I Bio I LinkedIn

[Quoted text hidden]

2

**GORDON REES SCULLY MANSUKHANI, LLP**
**YOUR 50 STATE LAW FIRM™**
**http://www.grsm.com**

---

**Jorden Timothy** ⟨redacted⟩                                    Mon, Mar 3 at 1:27 PM
To: Sara Moore <smoore@grsm.com>

Dear Ms. Moore,

Thank you for your response confirming receipt of my amended demand for arbitration. I understand that your firm represents DRVM, LLC and that you are assessing whether you will also represent additional respondents.

To clarify, **all named respondents were included based on clear financial, payroll, and business structuring connections to the claims at issue.** Given the nature of this dispute, the **appropriate forum to determine each respondent's involvement is through full discovery, including payroll records, commission structures, and financial transfers between entities.**

I am open to a meet-and-confer discussion regarding procedural matters, including service, but I want to emphasize that **any argument regarding whether a respondent is an "appropriate party" is premature at this stage, as no discovery has taken place.** The facts surrounding payroll movement, commissions, and financial responsibility will determine liability, and I intend to request **full discovery into these matters before any determinations are made** regarding respondent involvement.

Please let me know your availability to schedule a discussion. I look forward to your colleague, Ms. Demmon,

reaching out.

Best regards,

Jorden Hollingsworth
⟨redacted⟩

[Quoted text hidden]

3

Exhibit 4:

GSRM Clarification

to Just DRVM

NICOLE DEMMON
NDEMMON@GRSM.COM
DIRECT DIAL:

*ADMITTED IN: WASHINGTON & OREGON*

RACHAEL A. CURTIS
RCURTIS@GRSM.COM
DIRECT DIAL:

*ADMITTED IN: WASHINGTON*

# GRSM50
**GORDON REES SCULLY MANSUKHANI**
YOUR 50 STATE LAW FIRM

ATTORNEYS AT LAW
701 5TH AVENUE, SUITE 2100
SEATTLE, WA 98104
WWW.GRSM.COM

March 20, 2025

**VIA E-MAIL ONLY**

Case Manager
Two Embarcadero Ctr, Ste. 1500
San Francisco, CA 94111

>    **Re:    *Jorden Hollingsworth v. DRVM LLC, et al.***
>    **JAMS Reference No. 5160000821**

Dear Ms. Thornton:

      We represent DRVM LLC in the above-captioned matter. We are aware that the Claimant Jorden Hollingsworth has named several additional Respondents and that he has indicated we may represent some or all of them in this action. This letter is intended to provide official notice that, at this time, our firm only represents DRVM LLC with respect to this demand for arbitration. We cannot and have not accepted service on behalf of the other entities.

      If you have any questions about our representation in this matter, please do not hesitate to contact us.

                          Very truly yours,

                          GORDON REES SCULLY MANSUKHANI LLP

                          Nicole E. Demmon
                          Rachael A. Curtis

NED:jb

1

Exhibit 5:

Petitioner Response

to JAMS About

Clarification

March 20, 2025

Dear Ms. Thornton,

I am writing to formally clarify and preserve the procedural posture regarding the respondents in this matter.

On **February 24, 2025,** I properly served the original Demand for Arbitration on DRVM LLC, AMJ Services, and Maged "Mike" Boutros. At that time, Sara Moore of Gordon Rees Scully Mansukhani LLP (GRSM) was listed as counsel for **all three respondents** on the JAMS dashboard. Representation later shifted internally to Rachel Demmon and Nicole Curtis, who continued appearing on behalf of those same entities **without objection or clarification of limited representation.**

GRSM subsequently received the Amended Demand for Arbitration on **February 27, 2025,** which expanded the respondent list and substantially increased the financial exposure. Only after this filing did GRSM submit a letter stating they now represent DRVM LLC only, disclaiming representation for AMJ Services and Maged "Mike" Boutros for the first time.

For the record:

•       Maged "Mike" Boutros is the CEO of both the shell companies DRVM LLC and AMJ Services, the two corporate entities central to the alleged conduct.

•       The sudden disclaimer of representation appears to be a strategic procedural maneuver intended to compartmentalize liability and delay proceedings, not a genuine clarification of counsel roles.

•       The combination of GRSM's appearance on the dashboard, acceptance of service, lack of objection during internal counsel changes, and timing of the disclaimer establishes strong grounds for **implied representation and waiver of limitation** objections under standard procedural principles.

1

In what practical or legal scenario would a law firm represent **only** the shell company (DRVM LLC) while disclaiming representation for both its CEO (Maged "Mike" Boutros) and a parallel shell company (AMJ Services)—both of which are also owned and operated by the same individual and are central to the allegations?

In light of this, I respectfully request that JAMS:

      1.    Confirm that service was proper on all respondents to date, including those served through GRSM;

      2.    Confirm that no party shall be excused from deadlines or participation based on shifting representation, unless formally approved by the arbitrator;

      3.    Require that any respondent no longer represented by GRSM promptly **disclose new legal counsel contact information or acknowledge direct service.**

I am proceeding under the assumption that all named respondents remain actively bound by the same procedural obligations, and that attempts to reframe representation post-service and post-amendment do not impact the current schedule or standing of this case.

Every delay caused by shifting or unclear representation is resulting in measurable harm and procedural disruption, which I reserve the right to raise once the arbitrator is assigned.

I remain committed to advancing this arbitration in good faith and within the timelines outlined by JAMS.

Thank you for your continued support in managing this matter fairly and efficiently.


Sincerely,

Jorden Hollingsworth

Exhibit 6:

Petitioner Response

to GSRM About

Clarification

**March 20, 2025**

Dear Ms. Demmon and Ms. Curtis,

I am writing to formally address the recent claim by Gordon Rees Scully Mansukhani LLP (GRSM) that your firm only represents DRVM LLC, despite previously appearing as counsel for AMJ Services and Maged "Mike" Boutros in the original demand for arbitration.

As you are aware, service was properly completed for all three respondents through your firm on **February 24, 2025**, as you were listed as the representing counsel for each entity on the JAMS dashboard. **You never raised any objection to service or representation at that time.**

On **February 27, 2025,** I served my **Amended Demand** through your firm, consistent with the representation reflected in JAMS records. Now, after receiving my Amended Demand, which increases financial exposure for the respondents, your firm is attempting to retroactively limit representation—despite accepting service on their behalf **without issue** in the original demand. This is an **intentional bad-faith procedural delay tactic** that will only escalate financial exposure and pressure in this case.

My Position Moving Forward

- If your firm is no longer representing AMJ Services and Maged "Mike" Boutros, you must **immediately** provide the names and contact information of their new legal representatives.
- JAMS will be notified that service was already properly completed through your firm and that no previous objection was made.
- **Every delay** caused by these bad-faith tactics will directly result in an **increase** in the financial amount I will be seeking in this case.

1

**I will not engage in procedural games.** If this continues, I will raise this as a pattern of obstruction and request procedural sanctions once the arbitrator is assigned.

Please respond **immediately** with clarification regarding representation. **Further delays will only escalate the financial demand in this arbitration.**

Sincerely,

Jorden Hollingsworth



**March 20, 2025**

2

Exhibit 7:

Petitioner Follow-Up

Early March to

JAMS

**Jorden Timothy** <ja████████@█████████.com>
To: ████ Thornton <██████████

Thu, Mar 13 at 7:30 AM

Dear ████

I hope you're doing well. I wanted to follow up regarding the status of the Respondents and ensure that JAMS has fully processed the New Amended Demand, which includes the additional parties I have served.

To confirm, the following Respondents have been served and should be included in this arbitration:

1. Maged Boutros

2. AMJ Services LLC

3. DRVM LLC

4. Sanofi-Aventis US LLC

5. Chattem Inc.

6. Quten Research Institute LLC

7. Deepak Chopra

8. Ashraf "Peter" Boutros

9. Osama Boutros (Sent service through law Firm GRSM – Haven't confirmed, alternate service in progress, expected completion soon)

10. Marie-Laurie Amiard-Boutros (Sent service through law Firm GRSM – Haven't confirmed, alternate service in progress, expected completion soon)

Additionally, I wanted to confirm that all necessary updates have been reflected on the case management platform, and that all Respondents and their legal representatives have been properly notified and included in JAMS' system.

Please provide an update regarding the current status of these Respondents in the case file and confirm whether any further steps are required from my end.

I appreciate your time and assistance in ensuring everything is properly recorded and processed. Please let me know if you need any additional clarification.

Best,

Jorden Hollingsworth

5

[Quoted text hidden]

████Thornton <██████@jamsadr.com>
To: Jorden Timothy <ja█████████████████

Thu, Mar 13 at 5:19 PM

Thank you for your email.  JAMS is reviewing all the documents and will advise all Parties of next steps shortly.

[Quoted text hidden]

**Jorden Timothy** <je█████████████
To: ████ Thornton <████████@jamsadr.com>

Thu, Mar 13 at 5:21 PM

Thank you for the update!
[Quoted text hidden]

 Gmail

Jorden Timothy 

---

## Request for Urgent Update — Respondent Inaction & Case Delay

---

**Jorden Timothy** <                                    >
To: ◄▬► Thornton ◄▬▬▬▬►@jamsadr.com>
Cc: <rcurtis@grsm.com>, <ndemmon@grsm.com>

Sat, Apr 12 at 8:19 AM

Dear,▬,

I hope this message finds you well.

I'm following up regarding the arbitration matter Hollingsworth v. DRVM LLC et al. It has now been over five weeks since the initial amended filing, and formal service. I still have not received confirmation of an arbitrator assignment, nor any indication that the respondents have taken action to participate.

Since that time:

- I have filed whistleblower disclosures with multiple federal agencies, including the SEC, IRS, and Department of Labor.

- Due to the nature and public significance of the claims, I have begun publicly releasing exhibits tied to the arbitration and agency filings.

- Despite this, I've received no updates regarding fee payment or respondent acknowledgment, and we are well beyond the typical timeline for case movement.

At this point, I am respectfully requesting:

1. Confirmation on whether all necessary fees have been paid by the respondents.

2. A timeline or status update regarding arbitrator assignment.

3. Clarification on why this case has stalled, and assurance that extended silence or non-responsiveness will not be permitted to delay this process indefinitely.

This matter involves extensive documentation, public interest, and regulatory implications. Delays only risk enabling further harm, and I'm asking JAMS not to contribute to that. Please advise on what steps I should expect next.

Thank you for your attention to this matter. I appreciate your time and professionalism.

Sincerely,

Jorden Hollingsworth

Exhibit 8:

Official Service

Document ( as Exhibit

A of Arbitration )

**Exhibit A – Documentation of Service & Representation**

Claimant: Jorden Hollingsworth
Description of Contents and Significance:

**Page 3 – *Pre-Arbitration Email to Maged Boutros***
Initial service communication sent directly to Maged Boutros at both his **personal and professional email addresses** on February 11, 2025. The message clearly states that if no response is received, arbitration will be filed against him in his capacity as CEO of DRVM LLC and AMJ Services.

**Pages 4-7 – *Pre-Arbitration Letter***
Formal letter addressed **personally** to Maged Boutros and delivered to both of his email accounts. The letter outlines the basis for arbitration and holds him directly responsible for his role as CEO of the relevant entities.

**Page 8 – *First Response from GRSM (February 14, 2025)***
Email from Gordon Rees Scully Mansukhani LLP, stating they represent DRVM LLC and instructing that **all future communication regarding these claims be directed to them.** This message was sent in direct response to the pre-arbitration email addressed to Maged.

**Pages 9-11 – *GRSM Attachment of Claimant's Pre-Arbitration Letter***
In the same thread, GRSM attaches a copy of the **exact** same pre-arbitration letter that was sent directly to Maged—demonstrating they were fully aware the communication was directed at him. GRSM made **no objection to the parties being addressed and ignored all requests for clarification** about other Respondents or representation.

**Page 12 – *Claimant's February 18, 2025 Email Notifying GRSM of Filed Arbitration***
Email sent to GRSM with notice that arbitration had been initiated. The email clearly lists DRVM LLC, AMJ Services, and Maged Boutros as Respondents. Claimant once again asks

whether there are separate legal representatives for any of the Respondents. **No clarification or response was provided.**

### Page 13 – *JAMS Dashboard Screenshot (Post-Filing)*
This dashboard snapshot shows that all three original Respondents (DRVM, AMJ Services, Maged Boutros) were listed with GRSM attorneys attached as counsel. Multiple attorneys were added without objection, and the listing remained for over 30 days. GRSM, one of the largest firms in the country, cannot reasonably claim this was an oversight.

### Page 14-16 – *February 27, 2025 Email to GRSM (Amended Demand)*
Claimant provides courtesy notice of the amended demand via email in addition to service on JAMS Access. This was sent in good faith, reiterating the named parties and offering GRSM another opportunity to clarify representation. Instead, GRSM attempted to argue that newly named Respondents were not appropriate, while still failing to disclaim representation of the original three.

### Page 17 – *GRSM Retreat (March 20, 2025)*
More than 30 days after original service, GRSM sends a communication asserting they only represent DRVM LLC. This was the first and only statement narrowing their scope of representation, despite weeks of silence and confirmed dashboard listings showing representation for all three original Respondents.

### Page 18 – *Updated JAMS Dashboard (April 3, 2025)*
This screenshot shows that GRSM is now listed as representing only DRVM LLC. The quiet removal of a MJ services and Maged Boutros reflects a delayed procedural retreat that JAMS accepted without notice, enabling GRSM's ongoing bad faith tactics.

Exhibit 9:

Official

Settlement

Letter

## FINAL OPPORTUNITY TO RESOLVE THIS MATTER PRIVATELY

**April 6th, 2025**

To the Responsible Parties,

This message must be immediately forwarded to all relevant legal teams representing Sanofi, Boutros' Family, and Deepak Chopra. This is your **48-hour notice.**

You have until **12:00 PM Pacific, Tuesday, April 8, 2025** to formally respond with a settlement decision or intent to engage.

The world is questioning everything. The markets are crashing. The streets are speaking. And I'm giving you this final opportunity to resolve this privately—before everything changes.

This isn't just about our case anymore. The American people are questioning everything—Big Pharma's ties to politics, a healthcare system built on profit, and laws written to protect corporations, not people.

The world is watching. The system is cracking. And what you're trying to bury is exactly what they're ready to see.

This moment isn't just about you—it's about all of them. And the truth is about to surface.

I am offering a settlement resolution of **$10 billion if agreed before April 8th, 2025.** If you choose delay or litigation, the demand will increase to **$15 billion once arbitrator assignment,** and will **rise weekly by $500 million** as legal exposure deepens.

If no response is received by the deadline, I will begin **immediate** submission of the first wave of letters to **federal and state regulatory bodies,** followed by the launch of the **initial public disclosures,** including verified documentation and supporting exhibits.

1

## Why This Demand Is Justified

This demand is not arbitrary—it is justified by the scale of the fraud, the systemic consequences it enabled, and the corporate protections used to suppress it.

I've uncovered and documented an elaborate shell structure involving Sanofi, Boutros' Family, Deepak Chopra, and multiple linked entities knowingly engaged in fraudulent concealment of capital and misrepresentation of corporate relationships. These structures were used not only to hide profits and reduce legal exposure, but to deceive both workers and regulators.

The damages exceed far more than personal loss. They represent:

- The manipulation of American labor
- The exploitation of health-related systems
- The abuse of federal protections and public trust
- And the legal mechanisms used to silence whistleblowers who try to speak up

This is not a normal case. This is systemic abuse with global implications. And the amount reflects both the value of what was taken and the cost of remaining silent.

I now possess **104 exhibits,** tracing every entity, co-owner, and payroll structure across multiple states and trusts—all linked directly to Sanofi, Deepak Chopra, and the Boutros family. Based on over **90 exhibits,** multiple interrelated entities, and documented use of dissolved companies issuing payroll through mismatched EINs, this case establishes not only liability but **mens rea**—the conscious intent to defraud and conceal responsibility through enterprise structuring. With whistleblower reports prepared and regulatory action anticipated, this settlement demand reflects both compensatory harm and the cost of avoiding discovery and further escalation.

**Settlement Terms**

- **$10 billion if paid before deadline (lowest possible resolution)**
- **$15 billion once arbitrator assignment**
- **$20 billion+ once I have to submit depositions to the regulators**
- **$25 billion+ if public exposure causes market fallout and media involvement**
- **+ $500 million per week of continued delay**

This is not impulsive. **This has been prepared, documented, and validated for months.**
If this escalates to federal court, this matter would meet the statutory threshold under **18 U.S.C. § 1964 (Civil RICO)**, entitling me to **treble damages.**

To be clear: I am seeking resolution through arbitration as outlined in our agreement. However, should this remain unresolved, I am fully prepared to pursue my rights under federal law— including whistleblower filings and RICO litigation, where exposure would increase from **$15 billion to $45 billion** plus legal fees and penalties.

**Bring your legal contact forward immediately.**

I'm not letting the public outcry unfolding across this country pass by quietly—not when the truth I hold is the second wave the world is already waiting for.

**You have 48 hours. Then everything changes.**

Sincerely,
Jorden Hollingsworth
Jordentimothy11@gmail.com
503-488-9680

Exhibit 10:

Third and Fourth

Evaluation

Amendment

Claimant: Jorden Hollingsworth

Respondents: Sanofi-Aventis LLC, Quten Research Institute LLC, Chattem Inc, Maged "Mike" Boutros, Ashraf "Peter" Boutros, DRVM LLC, AMJ Services, Deepak Chopra

Case Number: 5160000821

Date: April 7th, 2025

## Third Amended Demand: Updated Valuation Based on Post-Filing Harm and Escalation Risk

### Introduction

Pursuant to JAMS Comprehensive Arbitration Rules & Procedures and in accordance with Claimant's rights to amend prior to arbitrator assignment, Claimant respectfully submits this Second Amended Arbitration Demand to update the total damages being sought in the matter currently pending.

### Updated Damages Demand

Claimant hereby amends the total damages sought to **$10,000,000,000 (Ten Billion USD).** This figure reflects the increased harm and liability exposure resulting from:

1.    Respondents' continued silence and failure to respond to the original and amended filings

2.    Claimant's **48-hour Global Impact Settlement Letter** dated April 6th, 2025, which clearly offered the respondents an opportunity to resolve the matter prior to arbitrator assignment for $10B

3.    The escalation of public harm, reputational damage, and economic instability related to the ongoing **Hands Off! protests** and the documented 2,000-point drop in the stock market within a 48-hour window—occurring directly alongside this dispute

1

4.    The unprecedented removal of respondents from the JAMS case dashboard, which further signals procedural irregularity and potential strategic withdrawal, contributing to compound harm and diminished confidence in arbitration neutrality

## Escalation Framework and Notice of Further Amendment

As documented in Claimant's Global Impact Settlement Letter and previously submitted evidence:

- The $10B valuation represents the final opportunity for pre-assignment resolution
- Should arbitrator assignment occur without respondent engagement or settlement, Claimant will escalate this demand to **$15,000,000,000 (Fifteen Billion USD)** in a forthcoming amendment
- Claimant reserves the right to increase the total claimed damages further based on:
  - Continued nonresponse
  - Public disclosure risk
  - Regulator involvement
  - Discovery findings
  - Reputational harm to associated parties

## Supporting Documentation

Claimant respectfully incorporates by reference the following:

- The Global Impact Settlement Letter submitted to respondents and attached herein as Exhibit B
- All prior filings, exhibits, and evidence submitted through the JAMS dashboard
- Evidence of procedural dashboard changes by JAMS for historical record

2

**Conclusion**

This amendment reflects a reasonable and necessary escalation based on the facts, timeline, and public record. Claimant reaffirms his commitment to transparency and reserves all rights under applicable arbitration and whistleblower statutes.

This Amended Demand is submitted as a continuation and escalation of damages based on the respondents' ongoing silence, reputational fallout, procedural irregularities, and compounding public harm.

Claimant expressly states that this is not a replacement or withdrawal of prior filings, including the first and second amended arbitration demands. All prior evidence, exhibits, and damages positions remain in full effect and are hereby incorporated by reference.

This filing is made to reinforce the escalation structure previously outlined in the Global Impact Settlement Letter and to document the respondents' failure to act within the offered settlement window.

Respectfully submitted,
Jorden Hollingsworth
Jordentimothy11@gmail.com
503-488-9680
April 7th, 2025

Claimant: Jorden Hollingsworth

Respondents: Sanofi-Aventis LLC, Quten Research Institute LLC, Chattem Inc, Maged "Mike" Boutros, Ashraf "Peter" Boutros, DRVM LLC, AMJ Services, Deepak Chopra

Case Number: 5160000821

Date: April 8th, 2025

## Fourth Amended Demand – Escalated Valuation Based on Continued Harm, Silence, and Procedural Irregularity

### Introduction

This Fourth Amended Demand increases the total damages valuation in this arbitration to **$15,000,000,000 USD,** based on:

> 1.    The respondents' continued silence and refusal to engage following repeated, structured offers for resolution.
>
> 2.    The expiration of the settlement deadline outlined in the Third Amended Demand, which explicitly warned of valuation escalation in the event of non-response.
>
> 3.    JAMS' procedural irregularity in removing the respondents from the arbitration dashboard without notice, explanation, or the claimant's consent— thereby contributing to public harm and erosion of confidence in forum neutrality.
>
> 4.    Ongoing reputational, financial, and systemic fallout triggered by this matter and now compounded by public, legal, and regulatory exposure.

### Preservation of Procedural Record

This is a continuation—not a replacement—of all prior demands, filings, and exhibits.
The First, Second, and Third Amended Demands remain on record in full effect, including:

• Over 100 exhibits evidencing fraud, concealment, whistleblower retaliation, and public harm.

• The Global Impact Settlement Letter (Exhibit B), issued in good faith and linked to the $10B valuation.

• The timeline and escalation structure embedded into each filing.

**Trigger for Escalation**

As stated in the Third Amended Demand (filed April 7, 2025):

> *"If no resolution is reached by the time this deadline lapses, the damages valuation will escalate to $15 billion USD to account for continued harm, reputational damage, and procedural failure."*

The respondents failed to respond by the deadline.

No explanation was provided.

And JAMS has taken no corrective procedural action following the unprompted dashboard removal of the named parties.

Accordingly, this escalation is now procedurally active and recorded.

**Updated Valuation**

Total demand: **$15,000,000,000 USD**

This increase reflects:

• Compounded reputational harm
• Further economic damage due to non-engagement

2

- The systemic risk of allowing this matter to remain unaddressed

- The cost of public interest betrayal during ongoing social unrest, financial collapse, and regulatory scrutiny

**Notice to Forum and Arbitrator**

The claimant reserves the right to:

- Submit additional amendments if further harm, exposure, or procedural failure occurs

- Introduce public disclosures and whistleblower updates to regulatory bodies already informed of this matter

- Request full discovery and evidentiary hearings upon arbitrator assignment

This filing is submitted in good faith under the JAMS Comprehensive Arbitration Rules.

Submitted respectfully,
Jorden Hollingsworth
Pro Se Claimant

3

Exhibit 11:

GRSM Request for

Two Weeks &

Petitioner's Response

NICOLE DEMMON
NDEMMON@GRSM.COM
DIRECT DIAL: ▇▇▇▇▇▇▇▇

*ADMITTED IN: WASHINGTON & OREGON*

RACHAEL A. CURTIS
RCURTIS@GRSM.COM
DIRECT DIAL: ▇▇▇▇▇▇▇▇

*ADMITTED IN: WASHINGTON*

**GRSM50**

GORDON REES SCULLY MANSUKHANI
YOUR 50 STATE LAW FIRM

ATTORNEYS AT LAW
701 5TH AVENUE, SUITE 2100
SEATTLE, WA 98104
WWW.GRSM.COM

April 14, 2025

<u>**VIA E-MAIL ONLY**</u>

▇▇▇▇▇▇▇
Case Manager
Two Embarcadero Ctr, Ste. 1500
San Francisco, CA 94111
▇▇▇▇▇▇▇▇▇▇▇

> Re:   ***Jorden Hollingsworth v. DRVM LLC, et al.***
>       **JAMS Reference No. 5160000821**

Dear Ms. Thornton:

We represent DRVM LLC in the above-captioned matter. We are currently in the process of reviewing the Fourth Amended Complaint filed by Claimant Jorden Hollingsworth and determining whether we will be representing any party apart from DRVM LLC. We respectfully request two weeks to determine representation and to respond regarding service of process.

If you have any questions, please do not hesitate to contact us.

Very truly yours,

GORDON REES SCULLY MANSUKHANI LLP

*[signature]*

Nicole E. Demmon
Rachael A. Curtis

Request to Proceed with Arbitrator Appointment – Hollingsworth v. DRVM LLC et al. JAMS Ref. No. 5160000821

Date: April 14th, 2025

To: ▓▓▓▓Thornton ◀▓▓▓▓▓▓@jamsadr.com)

Cc: Nicole Demmon (ndemmon@grsm.com), Rachael Curtis (rcurtis@grsm.com)

Dear Ms. Thornton,

I am writing in response to the April 14, 2025 correspondence submitted by counsel for DRVM LLC.

While I understand the need for parties to confirm representation, the letter provides no substantive explanation as to why, after months of prior filings and active participation, counsel is now uncertain whether they will represent additional parties named in this arbitration. Notably, DRVM LLC is a dissolved entity that functioned as a shell within the broader business and benefits structure, and is not the core respondent that benefits from the conduct at issue. It is unclear how counsel can file on behalf of one entity while disclaiming whether they represent other core parties named in the agreement and subject to this proceeding.

This contradiction—paired with a vague request for additional time—strongly suggests a procedural stall tactic. Claimant has submitted a Fourth Amended Complaint supported by over 100 exhibits, and all respondents have been properly served in accordance with the binding Mutual Arbitration Agreement and JAMS rules.

At this stage, further delay risks prejudicing the Claimant and undermining the efficiency and neutrality that arbitration is meant to provide. Therefore, I respectfully request that JAMS proceed with arbitrator appointment without further delay. Any clarification regarding representation can be addressed post-appointment as the case progresses, as is common in multiparty proceedings.

Please let me know if I can provide any additional information or documentation to support this request.

Sincerely,

Jorden Hollingsworth

2

Exhibit 12:

Fisher Phillips

Notice of

Appearance &

Response

Exhibit 12

1   STEPHEN M. SCOTT, OSB No. 134800
        Email: smscott@fisherphillips.com
2   BOBBIE J. EDWARDS, OSB No. 211574
        Email: bedwards@fisherphillips.com
3   FISHER & PHILLIPS LLP
    111 SW Fifth Avenue, Suite 4040
4   Portland, OR 97204
    Telephone: 503.242.4262
5   Facsimile: 503.242.4263

6   Attorneys for Respondent DRVM LLC

7

8                   **IN THE MATTER OF ARBITRATION**

9                          **BEFORE JAMS**

10

11  JORDEN HOLLINGSWORTH,              JAMS Reference No.: 5160000821

12              Claimant,              **RESPONDENT DRVM LLC'S NOTICE OF**
                                       **APPEARANCE**
13      v.

14  DRVM LLC; AMJ SERVICES; ASHRAF
    "PETER" BOUTROS; DEEPAK
15  CHOPRA; MAGED "MIKE" BOUTROS;
    MARIE-LAURIE AMIARD-BOUTROS;
16  OSAMA BOUTROS; CHATTEM, INC.;
    QUTEN RESEARCH INSTITUTE LLC;
17  SANOFI-AVENTIS U.S. LLC; TPD IP
    LLC,

18              Respondents.

19

20  TO:        JAMS;

21  AND TO:    Claimant, Jorden Hollingsworth, ▓▓▓▓▓▓▓▓▓▓▓▓▓
               ▓▓▓▓▓▓▓▓▓▓

22

23          PLEASE TAKE NOTICE that Stephen M. Scott and Bobbi J. Edwards of Fisher & Phillips

24  LLP hereby appear in the above-referenced action as attorneys of record for Respondent DRVM

25  LLC ("DRVM"). DRVM requests that copies of all further pleadings, papers (except original

26  process), and future notices and orders filed or served in this action be served on the undersigned

27  counsel at the following physical and electronic addresses:

28  ///

                                          1
                       RESPONDENT'S NOTICE OF APPEARANCE
    FP 54530006.1

1

Stephen M. Scott, OSB No. 134800
Email: smscott@fisherphillips.com

2

    Legal Assistant: Cyndi McClintock
    Email: cmcclintock@fisherphillips.com

3

4

Bobbi J. Edwards, OSB No. 211574
Email: bedwards@fisherphillips.com

5

    Legal Assistant: Melody Martinez
    Email: mmartinez@fisherphillips.com

6

7

FISHER & PHILLIPS LLP
111 SW Fifth Avenue, Suite 4040

8

Portland, OR 97204
Phone: 503.242.4262

9

Fax: 503.242.4263

10

DATED this 14th day of April, 2025.

11

12

                     FISHER & PHILLIPS LLP

13

14

15

                     Stephen M. Scott, OSB No. 134800
                     Email: smscott@fisherphillips.com
                     Bobbi J. Edwards, OSB No. 211574

16

                     Email: bedwards@fisherphillips.com
                     111 SW Fifth Avenue, Suite 4040

17

                     Portland, OR 97204
                     Telephone: (503) 242-4262

18

19

                     *Attorneys for Respondent DRVM LLC*

20

21

22

23

24

25

26

27

28

RESPONDENT'S NOTICE OF APPEARANCE

FP 54530006.1

1

## CERTIFICATE OF SERVICE

2      I hereby certify that on the date written below, I caused a true and correct copy of the

3  foregoing document to be served on the following party via the method(s) indicated:

4  Jorden Hollingsworth                ⊠ **First-Class Mail, postage prepaid**

5

6                                 ⊠ **Email (courtesy only)**

                                     jordentimothy11@gmail.com

7     *Pro Se Claimant*

8      DATED this 14th day of April, 2025.

9

10

11

12                            Stephen M. Scott, OSB No. 134800

13                            *Of Attorneys for Respondent DRVM LLC*

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

FP 54530006.1

3

Acknowledgment & Request to Proceed with Arbitrator Appointment – Hollingsworth v. DRVM LLC et al. JAMS Ref. No. 5160000821

Date: April 14ᵗʰ, 2025

To: ████Thornton (███████@jamsadr.com)

Cc: Stephen Scott (smscott@fisherphillips.com) , Bobbi Edwards (bedwards@fisherphillips.com), Melody Martinez (mmartinez@fisherphillips.com), Cyndi McClintock (cmcclintock@fisherphillips.com)

Dear Ms. Thornton,

I acknowledge the Notice of Appearance submitted by counsel on behalf of Respondent DRVM LLC. To date, no appearance has been entered on behalf of the other respondents named in the Fourth Amended Complaint, including the core entities tied to the arbitration agreement and conduct at issue.

As DRVM LLC is a dissolved entity and not the primary party benefitting from the underlying structure, further delay in arbitrator appointment risks continued prejudice to the Claimant. I respectfully renew my request that JAMS proceed with assigning an arbitrator so this matter can advance efficiently and fairly.

Please let me know if any additional documentation is needed.

Sincerely,

Jorden Hollingsworth

████████████████

Exhibit 12:

Collision of Fisher

Phillips and GRSM

Email ( JAMS Thread )

Exhibit 13

**From:** McClintock, Cyndi <cmcclintock@fisherphillips.com>
**Sent:** Monday, April 14, 2025 4:11 PM
**To:** Michele Wilson <MWilson@JAMSADR.com>
**Cc:** Alisa Razumovsky <ARazumovsky@jamsadr.com>; Scott, Stephen <smscott@fisherphillips.com>; Edwards, Bobbi <bedwards@fisherphillips.com>; Martinez, Melody <mmartinez@fisherphillips.com>; McClintock, Cyndi <cmcclintock@fisherphillips.com>; ▬▬▬▬▬▬▬▬▬▬▬
**Subject:** JAMS Case No. 5160000821 / Hollingsworth v. DRVM LLC, et al. / Respondent DRVM's Notice of Appearance

TO:    JAMS

Attached is Respondent DRVM LLC's Notice of Appearance in the above-referenced matter.  Counsel for DRVM requests that they be added to the service list for this matter.

Claimant is copied on this email transmittal, and a service copy of DRVM's notice will follow by first-class mail to Claimant.

Please let us know if there is any additional information needed to have access to the JAMS portal for this case.

Thank you.

Cyndi McClintock



**Cyndi McClintock**
Legal Secretary

Fisher & Phillips LLP
111 SW Fifth Avenue | Suite 4040 | Portland, OR 97204
cmcclintock@fisherphillips.com | O: (503) 205-8067

**From:** ⬛Thornton <⬛@jamsadr.com>
**Sent:** Wednesday, April 16, 2025 5:51 PM
**To:** McClintock, Cyndi <cmcclintock@fisherphillips.com>
**Cc:** Michele Wilson <MWilson@JAMSADR.com>; ⬛; Scott, Stephen <smscott@fisherphillips.com>; Edwards, Bobbi <bedwards@fisherphillips.com>; Martinez, Melody <mmartinez@fisherphillips.com>
**Subject:** RE: JAMS Case No. 5160000821 / Hollingsworth v. DRVM LLC, et al. / Respondent DRVM's Notice of Appearance

---

CAUTION: This email originated from outside of the Firm. Do not click links or open attachments unless you recognize the sender and know the content is safe.

---

Good Evening,

Thank you – please advise whether your firm is taking over for Gordon Rees or acting as Co-Counsel?

Sincerely,



Logo


⬛

Arbitration Practice Administrator
P: ⬛

⬛@jamsadr.com

*The future of ADR is here, and JAMS Next is leading the way with*

*breakthrough ideas and technologies. Learn more*

2

---------- Forwarded message ----------
From: "Scott, Stephen" <smscott@fisherphillips.com>
To: ████ Thornton ███████@jamsadr.com>, "McClintock, Cyndi" <cmcclintock@fisherphillips.com>
Cc: Michele Wilson <MWilson@jamsadr.com>, "██████████████████" <███████████████>, "Edwards, Bobbi" <bedwards@fisherphillips.com>, "Martinez, Melody" <mmartinez@fisherphillips.com>
Bcc:
Date: Thu, 17 Apr 2025 19:26:00 +0000
Subject: RE: JAMS Case No. 5160000821 / Hollingsworth v. DRVM LLC, et al. / Respondent DRVM's Notice of Appearance

I am unaware of Gordon Rees being involved here. I am assuming they are acting on behalf of one of the others named.



**Stephen M. Scott**
Partner

Fisher & Phillips LLP
111 SW Fifth Avenue | Suite 4040 | Portland, OR 97204
smscott@fisherphillips.com | O: (503) 205-8094

vCard | Bio | Website    *On the Front Lines of Workplace Law*ˢᴹ

---

*This message may contain confidential and privileged information. If it has been sent to you in error, please reply to advise the sender of the error, then immediately delete this message.*

3



---------- Forwarded message ----------
From: ███ Thornton <████████@jamsadr.com>
To: "Scott, Stephen" <smscott@fisherphillips.com>, "McClintock, Cyndi" <cmcclintock@fisherphillips.com>,
"rcurtis@grsm.com" <rcurtis@grsm.com>, "ndemmon@grsm.com" <ndemmon@grsm.com>, "smoore@grsm.com"
<smoore@grsm.com>
Cc: "████████████████" <█████████████████>, "Edwards, Bobbi" <bedwards@fisherphillips.com>,
"Martinez, Melody" <mmartinez@fisherphillips.com>, "mmarze@grsm.com" <mmarze@grsm.com>, "jolvera@grsm.com"
<jolvera@grsm.com>
Bcc:
Date: Fri, 18 Apr 2025 00:21:34 +0000
Subject: RE: JAMS Case No. 5160000821 / Hollingsworth v. DRVM LLC, et al. / Respondent DRVM's Notice of Appearance

Thank you,

I have included Gordon Rees in my response to clarify which firm is representing which Respondent
in the above matter.  Please advise.

JAMS is receipt of the 4th Amended Demand submitted by Claimant and is reviewing accordingly.
Does Claimant intend on submitting any other Amended Demands?  Please review JAMS
Employment Rules (specifically Rule 9 and 10) regarding notices.  If any more Claims and or Parties
are added to the arbitration JAMS will have to make sure all JAMS notices are also sent to the new
Parties and they too will need to be included in the arbitrator selection process.  Please advise if

Claimant anticipates any further updates to the claims made or if JAMS can move forward with the
most recent Amended Demand for Arbitration.

Thank you.

Sincerely,



Logo



███ Thornton

Arbitration Practice Administrator
P: ████████

████████@jamsadr.com

**f** **in** **X**

*The future of ADR is here, and JAMS Next is leading the way with*

*breakthrough ideas and technologies. Learn more*

4

**From:** McClintock, Cyndi <cmcclintock@fisherphillips.com>
**Sent:** Monday, April 21, 2025 11:27 AM
**To:** Thornton <@jamsadr.com>
**Cc:** Michele Wilson <MWilson@JAMSADR.com>; McClintock, Cyndi <cmcclintock@fisherphillips.com>
**Subject:** FOLLOW-UP: JAMS Case No. 5160000821 / Hollingsworth v. DRVM LLC, et al. / Respondent DRVM's Notice of Appearance

 **Caution:** This email originated from outside JAMS. Do not click on links, scan QR codes, or open attachments unless you recognize the sender and know the content is safe.

Hi Amy,

I wanted to check-in concerning this matter. Our firm represents Respondent DRVM LLC. Would you be able to let me know when we may have access to the JAMS portal?

Thanks so much for your assistance.

Cyndi



**Cyndi McClintock**
Legal Secretary

Fisher & Phillips LLP
111 SW Fifth Avenue | Suite 4040 | Portland, OR 97204
cmcclintock@fisherphillips.com | O: (503) 205-8067

Website          *On the Front Lines of Workplace Law℠*

5

**From:** Thornton <██████@jamsadr.com>
**Sent:** Thursday, April 24, 2025 11:08 AM
**To:** McClintock, Cyndi <cmcclintock@fisherphillips.com>
**Subject:** RE: FOLLOW-UP: JAMS Case No. 5160000821 / Hollingsworth v. DRVM LLC, et al. / Respondent DRVM's Notice of Appearance

Good Morning,

Thank you for your email.

Please see the attached and advise – two different firms are claiming to represent the same party. Please advise which is correct and include all Parties in your response so all can confirm accordingly. Thanks.

Sincerely,



**JAMS** ®

**████ Thornton**

Arbitration Practice Administrator
P: ████████

████@jamsadr.com

**f  in  X**

*The future of ADR is here, and JAMS Next is leading the way with*

*breakthrough ideas and technologies. Learn more*

6

On Thu, Apr 24, 2025 at 12:28 PM McClintock, Cyndi <cmcclintock@fisherphillips.com> **wrote**:

Hi Amy,

On April 17, we responded that we are unaware of Gordon Rees representing DRVM; a copy of Stephen Scott's email is attached. Please let us know if that provides clarification.

Thank you,

Cyndi McClintock



**Cyndi McClintock**
**Legal Secretary**

**Fisher & Phillips LLP**
111 SW Fifth Avenue | Suite 4040 | Portland, OR 97204
cmcclintock@fisherphillips.com | O: (503) 205-8067

Website          *On the Front Lines of Workplace Law*ˢᴹ

*This message may contain confidential and privileged information. If it has been sent to you in error, please reply to advise the sender of the error, then immediately delete this message.*

 Gmail

## FW: FOLLOW-UP: JAMS Case No. 5160000821 / Hollingsworth v. DRVM LLC, et al. / Respondent DRVM's Notice of Appearance

**Jorden Timothy** <                        >                                                    Thu, Apr 24, 2025 at 12:59 PM
To: "McClintock, Cyndi" <cmcclintock@fisherphillips.com>, "Scott, Stephen" <smscott@fisherphillips.com>, Amy Thornton
<            n@jamsadr.com>, "Edwards, Bobbi" <bedwards@fisherphillips.com>, rcurtis@grsm.com, rdrury@grsm.com,
ndemmon@grsm.com, Jamie Olvera <yolvera@grsm.com>

Hi Amy,

Thank you again for staying engaged with this process. It's now been a full week since JAMS requested clarification of representation from Respondents. At this point, it seems clear that the other parties either do not wish to clarify or are choosing not to participate in the arbitrator assignment process.

I'm also attaching this message to all counsel of record or potential representation, as it remains unclear whether any firm besides Fisher Phillips or Gordon Rees intends to represent the remaining respondents—or whether either of these firms is representing multiple parties beyond DRVM LLC.

As the Claimant, I've made my position clear, responded to all communications, and stand fully ready to proceed. If no further clarification is provided, I would respectfully support moving forward with arbitrator selection based on the current record and formal appearances to date.

Please let me know if any additional clarification is needed from my side. It's also worth noting that I was not included in the recent reply, which further adds to the procedural confusion and raises concerns about transparency in communication at this stage.

I had anticipated additional notices of appearance from the remaining respondents, but given the silence, it appears only the current counsel intend to participate in the assignment process. As of now, there remains confusion over whether two separate firms are attempting to represent the same party, DRVM LLC, without any formal withdrawal or clarification. If needed, I would support JAMS requesting formal confirmation from both firms as to which party they are representing, or requesting one firm formally withdraw to eliminate further ambiguity.

I'll defer to your judgment on how best to proceed, and I trust you'll take whatever steps you feel are appropriate as the professional overseeing this process.

Sincerely,

Jorden Hollingsworth

B

 Gmail 

## FW: FOLLOW-UP: JAMS Case No. 5160000821 / Hollingsworth v. DRVM LLC, et al. / Respondent DRVM's Notice of Appearance

**Jorden Timothy** <~~jordenstimothy~~@~~gmail.com~~>                     Thu, Apr 24, 2025 at 1:39 PM
To: "McClintock, Cyndi" <cmcclintock@fisherphillips.com>, ~~Amy~~ Thornton <~~athornton~~@jamsadr.com>, "Scott, Stephen"
<smscott@fisherphillips.com>, "Edwards, Bobbi" <bedwards@fisherphillips.com>, rcurtis@grsm.com,
ndemmon@grsm.com, Jamie Olvera <yolvera@grsm.com>

Hi Amy,

I just wanted to follow up briefly for the record. Gordon Rees previously asked for a two-week delay, which I did not consent to and which was never formally granted. Since that request, JAMS has asked for clarification of representation, and both Fisher Phillips and Gordon Rees were included in that communication. That time is up.

Despite that, Fisher Phillips has continued to respond without including Gordon Rees in the thread—even after your request included both firms. It remains unclear why both firms appear to be involved with DRVM LLC without clarification or formal withdrawal from either side.

This confusion strongly implies that both firms may in fact be representing different respondents operating through DRVM or its related entities, which makes their continued silence even more concerning. If that's the case, then neither firm has been fully transparent about the scope of their representation, and this creates a significant procedural risk moving forward.

I remain fully ready to proceed and appreciate your continued guidance on how JAMS wishes to move forward given the lack of clarification.


Respectfully,

Jorden Hollingsworth

**From:** Jorden Timothy <~~████████████~~>
**Sent:** Tuesday, May 13, 2025 4:26 PM
**To:** Amy Thornton <~~████████~~@jamsadr.com>
**Cc:** Scott, Stephen <smscott@fisherphillips.com>; Edwards, Bobbi <bedwards@fisherphillips.com>; McClintock, Cyndi <cmcclintock@fisherphillips.com>
**Subject:** FOLLOW-UP: JAMS Case No. 5160000821 / Hollingsworth v. DRVM LLC, et al. / Respondent DRVM's Notice of Appearance

⚠ Caution: This email originated from outside JAMS. Do not click on links, scan QR codes, or open attachments unless you recognize the sender and know the content is safe. ⚠

Hi Amy,

I'm following up again, as it's now been several business days since the JAMS dashboard was updated to reflect Fisher Phillips as counsel for DRVM. I appreciate the coordination in managing the transition following GRSM's withdrawal, but I'd like to respectfully request an update regarding arbitrator assignment.

I understand this is a complex and high-profile matter, and I appreciate the logistical effort involved. However, this ongoing delay and continued clarity is creating the perception that respondents are able to stall and play procedural games without consequence. As a pro se claimant navigating this process alone, the lack of clarity around representation and the arbitrator appointment places me at a significant procedural disadvantage.

At this point, I'd like to confirm whether JAMS intends to issue a list for party ranking or proceed with a direct appointment. With several filings pending, including whistleblower submissions now under review by federal agencies, I remain concerned about the growing procedural maneuvering and timeline. If assignment is not resolved shortly, I will be prepared to raise these delay concerns with the assigned arbitrator and request appropriate sanctions once the panel is in place.

If JAMS anticipates further delay in assigning an arbitrator due to the need for Fisher Phillips to clarify their role with respect to upstream parties, I'd sincerely appreciate a written update so that I can better understand the current procedural status. I only raise this out of a desire for transparency and balance in ensuring both sides are proceeding under the same expectations.

Please advise the next step in arbitrator assignment so I may prepare accordingly.

Thank you again for your continued coordination.

Best regards,

Jorden Hollingsworth

**From:** Jorden Timothy <j█████████████████

**Sent:** Tuesday, May 13, 2025 4:30 PM

**To:** █████Thornton <████████@jamsadr.com>

**Cc:** Scott, Stephen <smscott@fisherphillips.com>; Edwards, Bobbi <bedwards@fisherphillips.com>; McClintock, Cyndi <cmcclintock@fisherphillips.com>

**Subject:** Re: FOLLOW-UP: JAMS Case No. 5160000821 / Hollingsworth v. DRVM LLC, et al. / Respondent DRVM's Notice of Appearance

⚠ Caution: This email originated from outside JAMS. Do not click on links, scan QR codes, or open attachments

unless you recognize the sender and know the content is safe. ⚠

Thank you very much for the update. Look forward to the next step.

Sincerely,

Jorden Hollingsworth

On Tue, May 13, 2025 at 4:28 PM ████ Thornton <████████@jamsadr.com> wrote:

Thank you – JAMS is reviewing all the documents submitted thus far to ensure we have everything we need to move forward with commencement.  I hope to have an update for all Parties within the next few business days.

Sincerely,





██y **Thornton**

Arbitration Practice Administrator

P: 4██████████

████████@jamsadr.com

f  in  𝕏

\\

 

---

## FOLLOW-UP: JAMS Case No. 5160000821 / Hollingsworth v. DRVM LLC, et al. / Respondent DRVM's Notice of Appearance

Thornton ◄━━━━━w@jamsadr.com>                                    Thu, May 15, 2025 at 4:53 PM
To: "bedwards@fisherphillips.com" <bedwards@fisherphillips.com>, "smscott@fisherphillips.com" <smscott@fisherphillips.com>,
◄━━━━━━━━━━━ ◄━━━━━━━━━━━

Cc: "bwelsh@fisherphillips.com" <bwelsh@fisherphillips.com>, "McClintock, Cyndi" <cmcclintock@fisherphillips.com>

Good Afternoon,

I hope everyone is doing well. JAMS has reviewed all documents provided thus far and sent this matter for internal review for any consumer designations, the results of which will be sent to all Parties early next week via US MAIL along with the appropriate filing fees based off the results of that review. Once all filing fees have been paid JAMS can move forward with the commencement of the matter to begin the arbitrator selection process.

In the meantime, upon review of the Amended Proof of Service that accompanied the Fourth Amended Demand, I see the same address is listed for multiple Respondents who seem to be unrelated. Please confirm all addresses are correct as listed on the Amended Proof of Service (JAMS will have to send all notices via US MAIL as we do not have email addresses for all named Respondents). If JAMS receives any returned mail from any of the Parties, a revised Proof of Service will need to be produced with the correct contact information in order to move forward.

Thank you and please let me know if you should have any questions.

Sincerely,





**Thornton**
Arbitration Practice Administrator
P: ◄━━━━━

◄━━━━━@jamsadr.com



*The future of ADR is here, and JAMS Next is leading the way with*

*breakthrough ideas and technologies. Learn more*

12

**From:** Jorden Timothy ◄████████████►
**Sent:** Friday, May 16, 2025 8:34 AM
**To:**◄██► Thornton ◄█████►@jamsadr.com>
**Cc:** bedwards@fisherphillips.com; smscott@fisherphillips.com; bwelsh@fisherphillips.com; McClintock, Cyndi <cmcclintock@fisherphillips.com>
**Subject:** Re: FOLLOW-UP: JAMS Case No. 5160000821 / Hollingsworth v. DRVM LLC, et al. / Respondent DRVM's Notice of Appearance

⚠ Caution: This email originated from outside JAMS. Do not click on links, scan QR codes, or

open attachments unless you recognize the sender and know the content is safe. ⚠

Hi Amy,

Hope all is well. Following up on our prior exchange, I wanted to provide additional clarity regarding the overlapping addresses listed in the **Amended Proof of Service**, to help ensure everything proceeds without delay.

1. **Chattem Inc.** is wholly owned by **Sanofi-Aventis**, and business registrations confirm that Chattem uses Sanofi's corporate address.

2. **Quten Research Institute** is co-founded by **Ashraf Boutros** and **Deepak Chopra**, with Mr. Boutros listed as CEO. As such, his address is used consistently across related filings.

3. **DRVM** and **AMJ Services** share the same CEO, **Maged Boutros**, and were originally served together at the same address. Despite being the same underlying entity and individual, **Gordon Rees** later retreated representation of both AMJ Services and Maged Boutros.

4. Per your guidance after that withdrawal, I re-served **AMJ Services** and **Maged Boutros** via their registered agent in Oregon to ensure proper notice.

Regarding **Marie-Laurie Amaird-Boutros**, I've been informed that certified mail has been refused on my attempts. This was done at her last known personal address. If JAMS receives returned mail specific to her, I understand further steps may be necessary. However, I respectfully request that proceedings continue for all other respondents without delay. Given her connection to the broader entity network, I anticipate she will be reintroduced during discovery.

Given the respondents' pattern of procedural delay and withdrawal, I anticipate continued efforts to stall this case. I'm providing this clarification now to ensure there are no further holdups and that the arbitration can move forward with the urgency and transparency it demands.

Please let me know if further clarification or updates are needed.

Best regards,

Jorden Hollingsworth

13

**From:** Jorden Timothy <j███████████████████████>
**Sent:** Friday, May 30, 2025 6:04 AM
**To:** ◄███Thornton ◄████████@jamsadr.com>
**Cc:** bedwards@fisherphillips.com; smscott@fisherphillips.com; bwelsh@fisherphillips.com;
McClintock, Cyndi <cmcclintock@fisherphillips.com>
**Subject:** Re: FOLLOW-UP: JAMS Case No. 5160000821 / Hollingsworth v. DRVM LLC, et al. /
Respondent DRVM's Notice of Appearance

⚠ Caution: This email originated from outside JAMS. Do not click on links, scan QR codes, or open

attachments unless you recognize the sender and know the content is safe. ⚠

Hi Amy,

I hope you're doing well and had a smooth holiday weekend.

I wanted to follow up respectfully regarding your May 15 update. You had mentioned that the fee notices and
internal review results would be sent by U.S. Mail early the following week. As of today (May 30), I haven't
received anything in the mail and just wanted to confirm whether those were sent, or if there's been any delay I
should be aware of.

Totally understand if there have been slight postal delays with the holiday. I just want to make sure nothing has
been missed or returned undelivered. I remain eager to move into arbitrator selection and appreciate all your time
and support keeping this moving.

Thank you again — truly.

Warmly,

Jorden Hollingsworth

On Fri, May 16, 2025 at 5:19 PM◄███Thornton <◄████████@jamsadr.com> wrote:

Thank you!

Sincerely,

Amy

On Fri, May 30, 2025 at 4:33 PM  Thornton <██████@jamsadr.com> wrote:

Good Afternoon,

Thank you for your email and checking in on the above referenced matter. Parties should receive the first wave of notices within the next few business days followed by Respondents portion of the filing fee which will need to be paid prior to the arbitrator selection process. Thanks again and I hope everyone has a relaxing weekend!

Sincerely,



Logo

 **Thornton**

Arbitration Practice Administrator

P: ████████

@jamsadr.com

f  in  𝕏

*The future of ADR is here, and JAMS Next is leading the way with*

*breakthrough ideas and technologies. Learn more*

Exhibit 14:

DRVM

Reactivation

Exhibit 14



OREGON SECRETARY OF STATE
► **Corporation Division**

HOME

| Business Xpress | business name search | oregon business guide |
| license directory | business registry/renewal | forms/fees | notary public |
| uniform commercial code | uniform commercial code search | documents & data services |

## Business Name Search

| New Search | Printer Friendly | | Business Entity Data | | | 02-08-2025 22:44 |
|---|---|---|---|---|---|---|

| Registry Nbr | Entity Type | Entity Status | Jurisdiction | Registry Date | Next Renewal Date | Renewal Due? |
|---|---|---|---|---|---|---|
| 2037300-98 | FLLC | INA | NEVADA | 11-08-2022 | | |
| **Entity Name** | DRVM LLC | | | | | |
| **Foreign Name** | | | | | | |

| New Search | Printer Friendly | | Associated Names | |
|---|---|---|---|---|
| **Type** | PPB | PRINCIPAL PLACE OF BUSINESS | | |
| **Addr 1** | 411 E BONNEVILLE AVE STE 400 | | | |
| **Addr 2** | | | | |
| **CSZ** | LAS VEGAS NV 89101 | | **Country** | UNITED STATES OF AMERICA |

*Please click here for general information about registered agents and service of process.*

| **Type** | AGT | REGISTERED AGENT | | **Start Date** | 11-08-2022 | **Resign Date** | |
|---|---|---|---|---|---|---|---|
| **Name** | VILMA | | VERAS | | | | |
| **Addr 1** | 535 SW MAPLE ST | | | | | | |
| **Addr 2** | | | | | | | |
| **CSZ** | HILLSBORO OR 97123 | | | **Country** | UNITED STATES OF AMERICA | | |

| **Type** | MAL | MAILING ADDRESS | | |
|---|---|---|---|---|
| **Addr 1** | 411 E BONNEVILLE AVE STE 400 | | | |

| Addr 2 | | | | | | |
|---|---|---|---|---|---|---|
| CSZ | LAS VEGAS | NV | 89101 | | Country | UNITED STATES OF AMERICA |

| Type | MGR | MANAGER | | | Resign Date | |
|---|---|---|---|---|---|---|
| Name | MAGED | | BOUTROS | | | |
| Addr 1 | 411 E BONNEVILLE AVE STE 400 | | | | | |
| Addr 2 | | | | | | |
| CSZ | LAS VEGAS | NV | 89101 | | Country | UNITED STATES OF AMERICA |

New Search    Printer Friendly     Name History

| Business Entity Name | Name Type | Name Status | Start Date | End Date |
|---|---|---|---|---|
| DRVM LLC | EN | CUR | 11-08-2022 | |

Please <u>read</u> before ordering <u>Copies</u>.

New Search    Printer Friendly     Summary History

| Image Available | Action | Transaction Date | Effective Date | Status | Name/Agent Change | Dissolved By |
|---|---|---|---|---|---|---|
| | ADMINISTRATIVE REVOKE AUTHORITY | 01-04-2024 | | SYS | | |
| | APPLICATION FOR AUTHORITY | 11-08-2022 | | FI | Agent | |

---

About Us | Announcements | Laws & Rules | Feedback Policy | SOS Home | Oregon Blue Book | Oregon.gov

For comments or suggestions regarding the operation of this site, please contact : corporation.division@sos.oregon.gov

© 2025  Oregon Secretary of State.  All Rights Reserved.



OREGON SECRETARY OF STATE
▶ **Corporation Division**

HOME

Business Xpress | business name search | oregon business guide
license directory | business registry/renewal | forms/fees | notary public
uniform commercial code | uniform commercial code search | documents & data services

## Business Name Search

| New Search  Printer Friendly | | | Business Entity Data | | | 05-22-2025 10:12 |
|---|---|---|---|---|---|---|
| **Registry Nbr** | **Entity Type** | **Entity Status** | **Jurisdiction** | **Registry Date** | **Next Renewal Date** | **Renewal Due?** |
| 2037300-98 | FLLC | ACT | NEVADA | 11-08-2022 | 11-08-2025 | |
| **Entity Name** DRVM LLC | | | | | | |
| **Foreign Name** | | | | | | |

| New Search  Printer Friendly | | Associated Names | |
|---|---|---|---|
| **Type** | PPB | PRINCIPAL PLACE OF BUSINESS | |
| **Addr 1** | 411 E BONNEVILLE AVE STE 440 | | |
| **Addr 2** | | | |
| **CSZ** | LAS VEGAS  NV  89101 | **Country** | UNITED STATES OF AMERICA |

*Please click here for general information about registered agents and service of process.*

| **Type** | AGT | REGISTERED AGENT | **Start Date** | 04-25-2025 | **Resign Date** | |
|---|---|---|---|---|---|---|
| **Of Record** | 1077838-96 | UNIVERSAL REGISTERED AGENTS, INC. | | | | |
| **Addr 1** | 698 12TH ST SE STE 200 | | | | | |
| **Addr 2** | | | | | | |
| **CSZ** | SALEM  OR  97301 | | **Country** | UNITED STATES OF AMERICA | | |

| **Type** | MAL | MAILING ADDRESS | |
|---|---|---|---|
| **Addr 1** | 411 E BONNEVILLE AVE STE 440 | | |

| Addr 2 | | | | | | |
|---|---|---|---|---|---|---|
| **CSZ** | LAS VEGAS | NV | 89101 | | **Country** | UNITED STATES OF AMERICA |

| **Type** | MGR | MANAGER | | **Resign Date** | |
|---|---|---|---|---|---|
| **Not of Record** | BASIL MANAGEMENT TRUST | | | | |
| **Addr 1** | 411 E BONNEVILLE AVE STE 440 | | | | |
| **Addr 2** | | | | | |
| **CSZ** | LAS VEGAS NV 89101 | | **Country** | UNITED STATES OF AMERICA | |

**New Search** **Printer Friendly**    Name History

| **Business Entity Name** | **Name Type** | **Name Status** | **Start Date** | **End Date** |
|---|---|---|---|---|
| DRVM LLC | EN | CUR | 11-08-2022 | |

Please <u>read</u> before ordering <u>Copies</u>.

**New Search** **Printer Friendly**    Summary History

| **Image Available** | **Action** | **Transaction Date** | **Effective Date** | **Status** | **Name/Agent Change** | **Dissolved By** |
|---|---|---|---|---|---|---|
| 🗎 | REINSTATEMENT AMENDED | 04-25-2025 | | FI | Agent | |
| | ADMINISTRATIVE REVOKE AUTHORITY | 01-04-2024 | | SYS | | |
| 🗎 | APPLICATION FOR AUTHORITY | 11-08-2022 | | FI | Agent | |

---

About Us | Announcements | Laws & Rules | Feedback
Policy | SOS Home | Oregon Blue Book | Oregon.gov

For comments or suggestions regarding the operation of this site,
please contact : corporation.division@sos.oregon.gov

© 2025 Oregon Secretary of State. All Rights Reserved.

# Exhibit 15:

# IRS Claim

# Numbers (April 28)

Exhibit 15

| Master Claim Number | 2025-00■■■ |
|---|---|
| Assigned Claim Number | Taxpayer Name Control |
| 2025-00■ | SANO |
| 2025-00■ | CHAT |
| 2025-00■ | QUTE |
| | |
| | — |



 **Department of the Treasury**
**Internal Revenue Service**
**Whistleblower Office**

IRS

JORDEN HOLLINGSWORTH


Date: April 28, 2025

Claim Number: 2025-00■■■

RE: DRVM

Contact telephone number:
    (801) 620-2169
Contact Address:
    Internal Revenue Service
    Whistleblower Office - ICE
    M/S 4110
    1973 N Rulon White Blvd
    Ogden, UT 84404

Dear Jorden Hollingsworth:

We received your Form 211 with the information you furnished and have assigned the above claim number(s). We will evaluate the information you provided to determine if an investigation is warranted and an award is appropriate. Please retain this notice for future reference.

If we initiate an investigation as a result of your information, it is important to understand that it could take several years until final resolution of all tax matters. This is especially true if the taxpayer exercises all administrative and judicial appeal rights. In addition, before we can pay an award, we must collect any additional taxes, penalties, or fines, assessed by reason of your information. Collection action could also take several years.

At the conclusion of our review and/or investigation, we will only be able to tell you whether or not the information you provided met our criteria for paying an award. Unfortunately, we cannot tell you specific details about what actions we took, if any, using the information you gave us. Internal Revenue Code Section 6103 protects the tax information of all taxpayers and prevents us from making these disclosures.

We will notify you as soon as all actions relating to your claim have been completed. Please note that we will be sending all correspondence from this office regarding this claim to you at the address you provided. If you move or change the address to which you want correspondence directed, you must inform this office in writing

2

of the change of address. Failure to notify this office of a change of address regarding this claim could result in you not receiving time-sensitive correspondence.

Additional information about the whistleblower claim process can be found in Publication 5251, The Whistleblower Claim Process. Publication 5251 can be found online at IRS.gov.

Sincerely,

/s/ Anna Hirji

Associate Director
Whistleblower Office

2

Exhibit 10:

GRSM

Withdrawal

(April 28)

Exhibit 16



**GORDON REES SCULLY MANSUKHANI**
YOUR 50 STATE LAW FIRM™



**NICOLE E. DEMMON**
ndemmon@grsm.com



**RACHAEL A. CURTIS**
rcurtis@grsm.com

701 5th Avenue, Suite 2100
Seattle, WA 98104
www.grsm.com

April 28, 2025

**VIA E-MAIL**
▬▬▬▬▬▬, Arbitration Practice Administrator
JAMS
▬▬▬▬▬▬

> Re:    **Hollingsworth v. DRVM LLC, et al**
>        **JAMS Case No. 5160000821**

To Whom It May Concern:

Please be advised that Gordon Rees Scully Mansukhani, including attorneys Nicole Demmon, Rachael Curtis, and Sara Moore, hereby withdraw as counsel for DRVM, LLC. Please remove us from any further notices regarding this.

Yours truly,

GORDON REES SCULLY MANSUKHANI, LLP

Nicole E. Demmon
Rachael Curtis
Sara Moore

1

Exhibit 17:

Follow - up Email

Thread with JAMS

**To:** Thornton <@jamsadr.com>
**Cc:** Scott, Stephen <smscott@fisherphillips.com>; Edwards, Bobbi <bedwards@fisherphillips.com>; McClintock, Cyndi <cmcclintock@fisherphillips.com>
**Subject:** FOLLOW-UP: JAMS Case No. 5160000821 / Hollingsworth v. DRVM LLC, et al. / Respondent DRVM's Notice of Appearance

 Caution: This email originated from outside JAMS. Do not click on links, scan QR codes, or open attachments

unless you recognize the sender and know the content is safe.

Hi

I'm following up again, as it's now been several business days since the JAMS dashboard was updated to reflect Fisher Phillips as counsel for DRVM. I appreciate the coordination in managing the transition following GRSM's withdrawal, but I'd like to respectfully request an update regarding arbitrator assignment.

I understand this is a complex and high-profile matter, and I appreciate the logistical effort involved. However, this ongoing delay and continued clarity is creating the perception that respondents are able to stall and play procedural games without consequence. As a pro se claimant navigating this process alone, the lack of clarity around representation and the arbitrator appointment places me at a significant procedural disadvantage.

At this point, I'd like to confirm whether JAMS intends to issue a list for party ranking or proceed with a direct appointment. With several filings pending, including whistleblower submissions now under review by federal agencies, I remain concerned about the growing procedural maneuvering and timeline. If assignment is not resolved shortly, I will be prepared to raise these delay concerns with the assigned arbitrator and request appropriate sanctions once the panel is in place.

If JAMS anticipates further delay in assigning an arbitrator due to the need for Fisher Phillips to clarify its role with respect to upstream parties, I'd sincerely appreciate a written update so that I can better understand the current procedural status. I only raise this out of a desire for transparency and balance in ensuring both sides are proceeding under the same expectations.

Please advise the next step in arbitrator assignment so I may prepare accordingly.


Thank you again for your continued coordination.


Best regards,

Jorden Hollingsworth

**From:** Jorden Timothy <​███████████████​>
**Sent:** Tuesday, May 13, 2025 4:30 PM
**To:** ███ Thornton ███████ @jamsadr.com>
**Cc:** Scott, Stephen <smscott@fisherphillips.com>; Edwards, Bobbi <bedwards@fisherphillips.com>; McClintock, Cyndi <cmcclintock@fisherphillips.com>
**Subject:** Re: FOLLOW-UP: JAMS Case No. 5160000821 / Hollingsworth v. DRVM LLC, et al. / Respondent

DRVM's Notice of Appearance

⚠ Caution: This email originated from outside JAMS. Do not click on links, scan QR codes, or open attachments unless you recognize the sender and know the content is safe. ⚠

Thank you very much for the update. Look forward to the next step.

Sincerely,

Jorden Hollingsworth

On Tue, May 13, 2025 at 4:28 PM ███ Thornton ███████ @jamsadr.com> wrote:

Thank you – JAMS is reviewing all the documents submitted thus far to ensure we have everything we need to move forward with commencement.  I hope to have an update for all Parties within the next few business days.

Sincerely,





 **Thornton**

Arbitration Practice Administrator
P: 4██████████

██████ @jamsadr.com



*The future of ADR is here, and JAMS Next is leading the way with*

*breakthrough ideas and technologies. Learn more*

2

 On Thu, May 15, 2025 at 4:53 PM Thornton <████@jamsadr.com> wrote:

Good Afternoon,

I hope everyone is doing well.  JAMS has reviewed all documents provided thus far and sent this matter for internal review for any consumer designations, the results of which will be sent to all Parties early next week via US MAIL along with the appropriate filing fees based off the results of that review.  Once all filing fees have been paid JAMS can move forward with the commencement of the matter to begin the arbitrator selection process.

In the meantime, upon review of the Amended Proof of Service that accompanied the Fourth Amended Demand, I see the same address is listed for multiple Respondents who seem to be unrelated.  Please confirm all addresses are correct as listed on the Amended Proof of Service (JAMS will have to send all notices via US MAIL as we do not have email addresses for all named Respondents).  If JAMS receives any returned mail from any of the Parties, a revised Proof of Service will need to be produced with the correct contact information in order to move forward.

Thank you and please let me know if you should have any questions.

Sincerely,



 Thornton

Arbitration Practice Administrator

P████

████@jamsadr.com



*The future of ADR is here, and JAMS Next is leading the way with*

*breakthrough ideas and technologies. Learn more*

3

**From:** Jorden Timothy <​███████@gmail.com>
**Sent:** Friday, May 16, 2025 8:34 AM
**To:** ███ Thornton ███████@jamsadr.com>
**Cc:** bedwards@fisherphillips.com; smscott@fisherphillips.com; bwelsh@fisherphillips.com; McClintock, Cyndi <cmcclintock@fisherphillips.com>
**Subject:** Re: FOLLOW-UP: JAMS Case No. 5160000821 / Hollingsworth v. DRVM LLC, et al. / Respondent DRVM's Notice of Appearance

⚠ Caution: This email originated from outside JAMS. Do not click on links, scan QR codes, or open attachments unless you recognize the sender and know the content is safe. ⚠

Hi 

Hope all is well. Following up on our prior exchange, I wanted to provide additional clarity regarding the overlapping addresses listed in the **Amended Proof of Service**, to help ensure everything proceeds without delay.

1. **Chattem Inc.** is wholly owned by **Sanofi-Aventis**, and business registrations confirm that Chattem uses Sanofi's corporate address.

2. **Quten Research Institute** is co-founded by **Ashraf Boutros** and **Deepak Chopra**, with Mr. Boutros listed as CEO. As such, his address is used consistently across related filings.

3. **DRVM** and **AMJ Services** share the same CEO, **Maged Boutros**, and were originally served together at the same address. Despite being the same underlying entity and individual, **Gordon Rees** later retreated representation of both AMJ Services and Maged Boutros.

4. Per your guidance after that withdrawal, I re-served **AMJ Services** and **Maged Boutros** via their registered agent in Oregon to ensure proper notice.

Regarding **Marie-Laurie Amaird-Boutros**, I've been informed that certified mail has been refused on my attempts. This was done at her last known personal address. If JAMS receives returned mail specific to her, I understand further steps may be necessary. However, I respectfully request that proceedings continue for all other respondents without delay. Given her connection to the broader entity network, I anticipate she will be reintroduced during discovery.

Given the respondents' pattern of procedural delay and withdrawal, I anticipate continued efforts to stall this case. I'm providing this clarification now to ensure there are no further holdups and that the arbitration can move forward with the urgency and transparency it demands.

Please let me know if further clarification or updates are needed.

Best regards,

Jorden Hollingsworth

4

**From:** Jorden Timothy <span style="background:black">████████</span>
**Sent:** Friday, May 30, 2025 6:04 AM
**To:** <span style="background:black">██</span> Thornton <span style="background:black">████████</span>@jamsadr.com>
**Cc:** bedwards@fisherphillips.com; smscott@fisherphillips.com; bwelsh@fisherphillips.com; McClintock, Cyndi <cmcclintock@fisherphillips.com>
**Subject:** Re: FOLLOW-UP: JAMS Case No. 5160000821 / Hollingsworth v. DRVM LLC, et al. / Respondent DRVM's Notice of Appearance

 Caution: This email originated from outside JAMS. Do not click on links, scan QR codes, or open attachments unless

you recognize the sender and know the content is safe. 

Hi ,

I hope you're doing well and had a smooth holiday weekend.

I wanted to follow up respectfully regarding your May 15 update. You had mentioned that the fee notices and internal review results would be sent by U.S. Mail early the following week. As of today (May 30), I haven't received anything in the mail and just wanted to confirm whether those were sent, or if there's been any delay I should be aware of.

Totally understand if there have been slight postal delays with the holiday. I just want to make sure nothing has been missed or returned undelivered. I remain eager to move into arbitrator selection and appreciate all your time and support keeping this moving.

Thank you again — truly.

Warmly,

Jorden Hollingsworth

On Fri, May 16, 2025 at 5:19 PM <span style="background:black">████</span> Thornton <span style="background:black">████████</span>@jamsadr.com> wrote:

Thank you!

Sincerely,





 **Thornton**

Arbitration Practice Administrator

P: <span style="background:black">████████</span>

<span style="background:black">████████</span>@jamsadr.com





*The future of ADR is here, and JAMS Next is leading the way with*

*breakthrough ideas and technologies. Learn more*

 Gmail



## FOLLOW-UP: JAMS Case No. 5160000821 / Hollingsworth v. DRVM LLC, et al. / Respondent DRVM's Notice of Appearance

Thornton <▮▮@jamsadr.com>                                    Fri, May 30, 2025 at 4:33 PM
To: Jorden Timothy ▮▮▮▮
Cc: "bedwards@fisherphillips.com" <bedwards@fisherphillips.com>, "smscott@fisherphillips.com" <smscott@fisherphillips.com>, "bwelsh@fisherphillips.com" <bwelsh@fisherphillips.com>, "McClintock, Cyndi" <cmcclintock@fisherphillips.com>

Good Afternoon,

Thank you for your email and checking in on the above referenced matter. Parties should receive the first wave of notices within the next few business days followed by Respondents portion of the filing fee which will need to be paid prior to the arbitrator selection process. Thanks again and I hope everyone has a relaxing weekend!

Sincerely,





Thornton
Arbitration Practice Administrator
P: ▮▮▮▮
@jamsadr.com

**f** **in** **X**

*The future of ADR is here, and JAMS Next is leading the way with*

*breakthrough ideas and technologies. Learn more*

6

Exhibit 18:

Notice of Intent

Waiver Granted



# NOTICE OF INTENT TO INITIATE ARBITRATION

NOTICE TO ALL PARTIES                                    June 3, 2025

RE:   **Hollingsworth, Jorden vs. DRVM LLC, et al.**
      Reference #: 5160000821

Dear Parties:

JAMS has received a Demand for Arbitration in the above-referenced matter pursuant to a mandatory pre-dispute arbitration clause contained in a contract between the parties.

Pursuant to the parties' pre-dispute arbitration agreement and JAMS policy, this arbitration shall be conducted in accordance with the JAMS Employment Arbitration Rules and Procedures. It is important to familiarize yourself with the arbitration rules. A copy of these rules can be obtained by visiting our website at www.jamsadr.com.

Under the JAMS Policy on Employment Arbitration Minimum Standards of Procedural Fairness, when an employee initiates arbitration against the employer, the only fee required to be paid by the employee is $400.00. However, the employee has submitted a Declaration in Support of Application for Waiver of Fees which has been granted. Therefore, the employee does not have to pay the $400.00 portion and the employer Respondent must pay the full $3,500.00 non-refundable Filing Fee. Payment is due upon receipt. **Please note that California Code of Civil Procedure sections 1281.97 – 1281.99 may apply to the payment of fees for this arbitration.**

Upon receipt of the Filing Fee from Respondent, JAMS will formally commence this matter and proceed with the arbitrator selection process.

Contact me at ███████ or ███████ @jamsadr.com if you have questions.

Sincerely,

*Yvette Valadez*

Yvette Valadez, on behalf of
████ Thornton
Arbitration Practice Administrator
████ @jamsadr.com

Exhibit 19:

Petitioner Motion to Appoint

Due to Obstruction and

Nonpayment – Ryan

Abbott Nomination

**BEFORE THE JAMS TRIBUNAL**

**JAMS Ref. No. 5160000821**

**CLAIMANT'S MOTION TO APPOINT ARBITRATOR DESPITE RESPONDENTS' NONPAYMENT AND TO ADVANCE PROCEEDINGS PURSUANT TO JAMS RULE 6(e)**

**JORDEN HOLLINGSWORTH (Claimant)**

**v.**

**SANOFI-AVENTIS US LLC, CHATTEM INC., QUTEN RESEARCH INSTITUTE LLC, DEEPAK CHOPRA, MAGED "MIKE" BOUTROS, ASHRAF "PETER" BOUTROS, DRVM LLC, and AMJ SERVICES LLC (Respondents)**

**I. INTRODUCTION**

Claimant Jorden Timothy respectfully submits this **Motion to Appoint an Arbitrator Despite Respondents' Nonpayment,** pursuant to **JAMS Employment Arbitration Rule 6(e)**, and requests that this arbitration move forward immediately to prevent **further prejudice, obstruction, and bad-faith delay** by Respondents.

Respondents—including DRVM LLC, represented by Fisher Phillips LLP, and indirectly controlled by Sanofi via corporate shell structures, have **refused** to pay their required arbitration fees despite being **contractually and ethically obligated** to do so. This calculated inaction appears designed to obstruct the arbitration process and financially burden the Claimant, who is a pro se whistleblower litigating against a structure involving a $130 billion multinational pharmaceutical company.

1

## II. FACTUAL BACKGROUND

### 1.    Binding Arbitration Agreement

Claimant and DRVM LLC executed a **Mutual Arbitration Agreement** signed on **October 15, 2024**, which mandates that:

*"Employer must pay all arbitrator fees and costs of arbitration, except that Employee must pay arbitration filing fees up to the amount the Employee would have to pay to file a lawsuit in court."*

### 2.    Claimant's Compliance

Claimant has paid their portion of the arbitration fees and has fulfilled all required procedural obligations.

### 3.    Respondents' Nonpayment and Silence

Despite receiving notice and having legal counsel (Fisher Phillips LLP) on record, Respondents have not paid their share of arbitration fees, nor have they affirmatively withdrawn or engaged in meaningful procedural participation.

### 4.    Entity Reactivation Confirms Active Oversight

DRVM LLC, previously dissolved, was recently reactivated under a trust structure— strongly suggesting that Respondents are actively monitoring this case but **intentionally stalling through procedural delay.**

## III. LEGAL BASIS — JAMS RULE 6(e)

**JAMS Employment Arbitration Rule 6(e)** provides:

*"If a Party fails to respond to a demand for arbitration, or otherwise fails to participate in the arbitration process, JAMS may proceed with the arbitration and may appoint the arbitrator if the other Party so requests."*

The purpose of **Rule 6(e)** is to ensure that one party cannot obstruct the process by refusing to engage. In this case, the Respondents' silence and nonpayment amount to a de facto refusal to participate, warranting unilateral appointment of the arbitrator and continuation of proceedings.

## IV. ARGUMENT

### 1.    Respondents Are Breaching Their Own Agreement

The arbitration clause requires Respondents to pay arbitrator fees. Their refusal constitutes a breach of contract, designed to delay accountability and obstruct procedural justice.

### 2.    Claimant Is Entitled to an Adjudicative Forum

Claimant has brought forth serious claims involving corporate fraud, wage theft, and systemic shell structuring involving a major pharmaceutical entity. Refusing to appoint an arbitrator due to the Respondents' obstruction would deny Claimant any forum for redress, in direct conflict with JAMS' mission and public integrity.

### 3.    JAMS' Institutional Integrity Is at Stake

JAMS cannot allow a $130 billion company—or its proxies—to dodge arbitration by hiding behind shell entities and reactivated trusts. If Respondents are permitted to stall this proceeding, it would signal to other large corporate entities that arbitration obligations are optional when faced with whistleblower complaints.

3

## V. REQUEST FOR RELIEF

Claimant respectfully requests that JAMS:

    **1.**     **Appoint an arbitrator immediately pursuant to Rule 6(e)**, despite Respondents' nonpayment and lack of participation;

    **2.**     **Advance proceedings without further delay**, allowing Claimant to pursue all relevant motions, discovery, and sanctions requests;

    **3.**     **Preserve Claimant's right to seek:**
- Reimbursement of all costs advanced due to Respondents' breach,
- Adverse inference due to their silence,
- Default judgment if Respondents continue to obstruct or fail to appear.

**Preferred Arbitrator Selection**

Should JAMS grant this motion under **Rule 6(e)**, Claimant respectfully nominates **Dr. Ryan Abbott** as the sole arbitrator. Dr. Abbott is internationally recognized for his expertise in **artificial intelligence, ethics, and law** — which aligns directly with the technological dimensions of this case. **Given both parties' demonstrated use of AI and the growing public interest in AI-enabled legal action**, Dr. Abbott's leadership would ensure thoughtful and forward-looking adjudication.

Claimant is also open to alternative selections JAMS deems most appropriate, but believes Dr. Abbott's appointment would represent a **historic step in leveling the legal playing field in high-tech, high-stakes arbitration.**

## VI. CONCLUSION

This case involves a whistleblower fighting against billion-dollar entities attempting to bury accountability behind procedural silence. JAMS must now act decisively and in accordance with its own rules to ensure that justice is not a function of wealth or delay.

Claimant remains ready to proceed and requests that an arbitrator be assigned without further delay.

Respectfully submitted,

Jorden Hollingsworth
Pro Se Claimant
Date: June 14th, 2025

5

Exhibit 20:

DRVM Objection on

Ryan Abbott



**Portland**
560 SW Tenth Avenue
Suite 450
Portland, OR 97205
(503) 242.4262 Tel
(503) 242-4263 Fax

**Writer's Direct Dial:**
(503) 205-8094

**Writer's E-mail:**
smscott@fisherphillips.com

fisherphillips.com

June 27, 2025

*e-Filed JAMS Access Portal*
*and Email to ▬▬▬@jamsadr.com*

Thornton
Arbitration Practice Administrator
JAMS

Copy to: Claimant Jorden Hollingsworth (by email and first-class mail)

Re:   *Jorden Hollingsworth v. DRVM LLC, et al.*
      JAMS Ref. No.: 5160000821

Dear Ms. Thornton,

As you know, this firm represents Respondent DRVM LLC, in the above-referenced matter. I write on behalf of Respondent to register our formal non-consent to the appointment of Dr. Ryan Abbott as arbitrator in this matter. While we acknowledge Dr. Abbott's distinguished background in artificial intelligence and his co-authorship of the JAMS AI Guidelines, his expertise is entirely untethered from the narrow issues presented here—namely, an uncomplicated Oregon wage dispute.

This case does not turn on matters of algorithmic design, AI ethics, or emerging technology. Instead, it requires a neutral arbitrator with practical knowledge of Oregon wage statutes, industry-standard payroll practices, and statutory penalty calculations. Accordingly, Dr. Abbott's qualifications, however impressive, bear no relevance to the factual and legal questions before us.

To ensure efficient resolution and to honor the parties' mutual interest in a prompt determination, Respondent respectfully requests that JAMS appoint an arbitrator whose background and experience align with state-law wage disputes. Respondent will submit its arbitrator preferences through JAMS' Rank and Strike process and remains ready to proceed without further delay once an appropriately qualified arbitrator has been selected.

**Fisher & Phillips LLP**
Atlanta • Baltimore • Bethesda • Boston • Charlotte • Chicago • Cleveland • Columbia • Columbus • Dallas • Denver • Detroit • Fort Lauderdale • Gulfport
Houston • Irvine • Kansas City • Las Vegas • Los Angeles • Louisville • Memphis • Nashville • New Jersey • New Orleans • New York • Orlando • Philadelphia
Phoenix • Pittsburgh • Portland • Sacramento • San Diego • San Francisco • Seattle • Tampa • Washington, DC

FP 55339301.2

1

JAMS
June 27, 2025
Page 2

Thank you for your attention to this matter. Please let me know if you require any additional information or further briefing on our position.

Sincerely,

Stephen M. Scott
Partner
For FISHER & PHILLIPS LLP

SMS:be

2

Exhibit 21:

Petitioners

Response to

Objection

Exhibit 21

**Response to Fisher Phillips' June 27 Objection to Arbitrator Nomination and Request for Representation Clarification**

**Case: Jorden Hollingsworth v. DRVM LLC, et al.**

**JAMS Ref No.: 5160000821**

Dear Ms. Thornton,

This letter responds to Fisher Phillips' June 27 objection to the appointment of Dr. Ryan Abbott as arbitrator.

Let me be absolutely clear: **this is not a simple Oregon wage dispute, and any attempt to frame it as such misrepresents** the procedural history, the corporate structuring, and the fraudulent conduct that has now come to light.

This letter not only responds to Fisher Phillips' objection but places on record the broader procedural concerns that have emerged in this arbitration. While Respondents seek to minimize the nature of this case, the facts, structure, and procedural history demand a transparent and

1

appropriately informed arbitrator. **The objections raised by Fisher Phillips require a full response,** not only to preserve fairness but to protect the institutional integrity of JAMS.

**This Case Is Not "Uncomplicated"**

This matter began with a local Oregon payroll issue. But what followed, and is now firmly documented, includes:

- **The discovery of a nationwide fraudulent employment scheme, anchored by a Nevada-based shell company (DRVM LLC) that has since been dissolved in Oregon, yet is being used by all respondents to avoid transparency. Multiple business entities tied to respondents were reinstated or reactivated during arbitration, suggesting reactive concealment behavior.**

- **The entire employment arrangement was fabricated, not just wage issues. From onboarding to benefits to classification, the employment was misrepresented at every level.**

- **GRSM LLP previously represented DRVM, then withdrew without disclosing who authorized the withdrawal. Fisher Phillips now claims to represent DRVM, but partner Stephen Scott previously denied awareness of GRSM's involvement, despite both firms being tied to the same entity.**

- **No party has disclosed who is funding Fisher Phillips or whether representation extends to Sanofi, Chattem, Deepak Chopra, or Quten Research Institute, all of whom are connected through filed exhibits and government submissions.**

- **This case includes IRS whistleblower claims, active documentation of shell entity fraud, and evidence of coordinated misrepresentation.**

2

This is not just a "wage claim." This is an **employment fraud structure masquerading as legitimate work,** with parties now stalling while **hiding behind a shell corporation dissolved in Oregon.**

### Dr. Ryan Abbott's Appointment Is Not Only Relevant, It's Necessary

Fisher Phillips describes **Dr. Abbott's AI expertise as irrelevant**. That assertion is both **misleading and strategically self-serving.**

- **As a pro se claimant, I have used artificial intelligence to investigate, draft, file, and pursue this case from day one, against an entire billion-dollar legal and corporate infrastructure.**
- **My AI usage has been public, transparent, and consistent. I am not abusing technology. I am using it to survive a process designed to favor wealth and institutional power.**
- **If there is any case in JAMS history that merits the presence of an arbitrator who understands the intersection of AI, transparency, and legal ethics, it is this one.**
- **The objection to Dr. Abbott is not about his qualifications. It is about avoiding a sophisticated neutral who cannot be easily manipulated.**

### III. JAMS Rules Now Require Clarification of Representation and Payment

Fisher Phillips now confirms it represents DRVM LLC, but still **fails to disclose who retained them, who is paying them, or whether that authorization came from Sanofi, Chattem, Chopra, or any upstream party.**

GRSM LLP initially represented DRVM, then **withdrew without identifying who authorized it.** Fisher Phillips then entered quietly, with partner **Stephen Scott previously claiming he had no awareness of GRSM's involvement.** Now that I have exposed the truth and nominated a qualified arbitrator, Mr. Scott has chosen to speak up after silence for two months, not to clarify the party structure, **but to minimize the case and downplay the silence.**

Under JAMS Administrative Policies, and the **service agreement that applies to attorneys as well as parties**, I formally request that JAMS compel immediate disclosure of:

- **The party or parties instructing Fisher Phillips;**
- **The entity funding Fisher Phillips' legal work;**
- **Whether representation extends to any respondent other than DRVM;**
- **And whether DRVM is the party of record for itself or on behalf of a concealed parent or funder.**

**JAMS must not allow counsel to litigate in the dark.**

**The Record Shows Mid-Arbitration Entity Manipulation**

Since this arbitration began:

- **Entities have been reactivated or altered mid-proceeding;**
- **Names and roles of respondents remain unconfirmed;**
- **And procedural silence has been used to shield higher-level actors from accountability.**

**This violates the spirit of JAMS's commitment to neutrality, fairness, and procedural clarity.**

4

**This Is the First Documented AI-Assisted Pro Se Case Against a Billion-Dollar Structure**

To my knowledge, and based on JAMS' own docket disclosures, this is the first known case in which:

- **A single pro se claimant is using artificial intelligence as a litigation tool,**
- **To go up against multiple law firms and a billion-dollar corporate network,**
- **While doing so publicly, ethically, and transparently.**

In this context, appointing Dr. Ryan Abbott, **the co-author of JAMS's own AI Guideline,** is not just fair, **it is essential.**

If the respondents are not misusing AI (**being the self-proclaimed leading AI pharmaceutical company in the world**), and if I am using it transparently, **then there should be no objection to having a neutral who is equipped to understand and navigate these dynamics.**

**Requests for Immediate Action**

I respectfully request that JAMS:

1.   **Reject or disregard Fisher Phillips' objection to Dr. Abbott or proceed with arbitrator selection without deference to their framing;**

2.   **Compel full representation and funding disclosure before arbitrator selection moves forward;**

3.   **Review and address the mid-arbitration reactivation of entities as a procedural warning sign;**

4.   **Acknowledge the uniqueness of this case as a landmark example of AI-assisted arbitration, and ensure that arbitrator selection reflects the technological, ethical, and structural complexity now in the record.**

This is not a routine wage dispute. **This is a systemic fraud case**, one that has been exposed and advanced almost entirely through the **transparent, ethical use of artificial intelligence by a pro se claimant up against a billion-dollar legal and corporate structure.** I did not nominate Dr. Ryan Abbott because I believe he will rule in my favor. **I nominated him because he is the co-author of JAMS's own AI Guidelines, and this is the first arbitration in which AI is being used openly and substantively by a party navigating the system alone.** We need an arbitrator who understands not just shell structures and employment law, but how modern legal tools like AI are shaping the pursuit of truth itself. **Appointing Dr. Abbott would not tilt the case, it would protect the integrity of the process**. JAMS now has an opportunity to show that it takes its own standards seriously and that it can evolve alongside the very technologies it claims to regulate.

I appreciate your attention to this matter and ask that this letter be included in the case file and considered as part of the arbitrator selection process.

Exhibit 22:

Email Thread: Nonpayment,
Arbitrator Objection, 48-Hour
Federal Petition
Deadline, and
Deposit Conditions

Exhibit 22

## Re: FOLLOW-UP: JAMS Case No. 5160000821 / Hollingsworth v. DRVM LLC, et al. / Respondent DRVM's Notice of Appearance

**Jorden Timothy** ~~████████████████~~                            Mon, Jun 16 at 7:45 AM
To: ~~████~~ Thornton ~~████████~~@jamsadr.com>
Cc: bedwards@fisherphillips.com <bedwards@fisherphillips.com>, smscott@fisherphillips.com
<smscott@fisherphillips.com>, bwelsh@fisherphillips.com <bwelsh@fisherphillips.com>, McClintock, Cyndi
<cmcclintock@fisherphillips.com>

Dear Amy,

Hope all is well. Today marks the tenth business day since the JAMS invoice was issued without payment from Respondents.

Although Rule 6(e) does not directly govern fee disputes, Claimant respectfully requests that JAMS appoint an arbitrator in light of Respondents' ongoing nonparticipation and failure to pay, which, under the totality of the circumstances, constitutes abandonment of the proceeding. Consistent with JAMS' authority and the Employment Arbitration Minimum Standards, Claimant asks that the case be allowed to proceed.

I respectfully submit the attached motion requesting the appointment of an arbitrator despite Respondents' failure to pay. To date, they have not paid the required fees, despite being large, resource-rich entities that drafted and enforced the arbitration agreements themselves.

To clarify, I understand Rule 6(e) does not override fee obligations under Rule 31. However, in this case, respondents have not only failed to pay, but have refused to engage whatsoever for two months. There is no dispute to resolve, only abandonment. This motion asks that an arbitrator be appointed in light of these facts to preserve the integrity of the proceeding.

I am representing myself (pro se) in a $15 billion arbitration involving Sanofi, Deepak Chopra, and a network of shell entities tied to one of the most complex corporate fraud cases currently in arbitration. Since filing, I've made each step public and used AI to self-educate on civil procedure, corporate structuring, arbitration, and whistleblower law. What began as one person investigating his own firing evolved into exposure of systemic misconduct buried behind dissolved LLCs and false payroll stubs.

This case is not just about corporate liability, it's about who gets access to justice.

Sanofi has publicly embraced artificial intelligence in its drug development and corporate strategy. Deepak Chopra has long promoted AI as a consciousness-expanding tool and runs his own AI ventures. Both parties are deeply engaged with AI and likely using advanced tools to defend against this case.

Meanwhile, I am just one individual, using publicly available AI to research, draft, and prosecute this case. I've persisted despite 30+ firms refusing to take it, despite online censorship, and despite silence from the press, because the evidence is real, and the truth matters.

I strongly believe Dr. Ryan Abbott is uniquely qualified for this matter due to his co-authorship of the JAMS AI Guidelines and extensive expertise in artificial intelligence and arbitration.

Dr. Abbott is internationally recognized for his work on AI, law, and ethics and is a co-author of the JAMS AI Guidelines. He is uniquely suited to oversee a case where AI is not just a topic of evidence, but a foundational part of how the dispute is being fought.

While I strongly believe Dr. Abbott is ideal for this arbitration, I fully respect JAMS' discretion and welcome the

appointment of any arbitrator you believe is most qualified to fairly oversee this matter.

This is a historic opportunity, for JAMS to lead, to adapt to a new kind of dispute, and to affirm that the future of arbitration belongs to anyone willing to fight for the truth.

Thank you for your time and consideration.

Sincerely,

Jorden Hollingsworth

Pro Se Claimant

JAMS Case #5160000821

**From:** ▀▀ Thornton ▀▀▀ @jamsadr.com>
**Sent:** Tuesday, June 17, 2025 12:40 PM
**To:** Jorden Timothy <▀▀▀▀▀▀▀▀▀▀▀▀▀>
**Cc:** Edwards, Bobbi <bedwards@fisherphillips.com>; Scott, Stephen <smscott@fisherphillips.com>; Welsh, Betsy <bwelsh@fisherphillips.com>; McClintock, Cyndi <cmcclintock@fisherphillips.com>
**Subject:** RE: FOLLOW-UP: JAMS Case No. 5160000821 / Hollingsworth v. DRVM LLC, et al. / Respondent DRVM's Notice of Appearance

Good Afternoon,

I hope everyone is doing well today. Thank you for checking in on the above matter.  JAMS will be issuing its Final Request for

Respondents portion of the filing fee today via US MAIL which will again request payment for Respondents portion of the filing fee as well as alerting all Parties JAMS will close its file in 30 days absent payment.  Once payment has been received JAMS can commence the case to begin the arbitrator selection process.  If payment is not received, JAMS will close its file for nonpayment per California Code of Civil Procedure sections 1281.97 – 1281.99.

Please let me know if any questions, thanks!

Sincerely,







**▀▀▀ Thornton**
Arbitration Practice Administrator
P: ▀▀▀▀▀▀▀▀
▀▀▀@jamsadr.com



*The future of ADR is here, and JAMS Next is leading the way with*

*breakthrough ideas and technologies. Learn more*

2

**From:** Edwards, Bobbi <bedwards@fisherphillips.com>
**Sent:** Tuesday, June 17, 2025 12:43 PM
**To:** Thornton <████@jamsadr.com>; Jorden Timothy <████████████████>
**Cc:** Scott, Stephen <smscott@fisherphillips.com>; Welsh, Betsy <bwelsh@fisherphillips.com>; McClintock, Cyndi <cmcclintock@fisherphillips.com>
**Subject:** RE: FOLLOW-UP: JAMS Case No. 5160000821 / Hollingsworth v. DRVM LLC, et al. / Respondent DRVM's Notice of Appearance

 **Caution:** This email originated from outside JAMS. Do not click on links, scan QR codes, or open attachments unless you recognize the sender and know the content is safe. 

Hello, ████

DRVM, LLC made a payment that was accepted by JAMS earlier today.

Kindly,

Bobbi



**Bobbi J. Edwards**

Counsel

Fisher & Phillips LLP

bedwards@fisherphillips.com
O: (503) 205-8062 | C: (614) 571-2825

3

## Re: FOLLOW-UP: JAMS Case No. 5160000821 / Hollingsworth v. DRVM LLC, et al. / Respondent DRVM's Notice of Appearance

Thornton ◀━━━▶@jamsadr.com>                                    Mon, Jun 23, 2025 at 1:43 PM
To: "Edwards, Bobbi" <bedwards@fisherphillips.com>, Jorden Timothy ◀━━━━━━━━▶
Cc: "Scott, Stephen" <smscott@fisherphillips.com>, "Welsh, Betsy" <bwelsh@fisherphillips.com>, "McClintock, Cyndi"
<cmcclintock@fisherphillips.com>

Good Afternoon,

Thank you. The commencement notice is scheduled to be sent via US Mail to all today.  Please let me know if you should have any
questions.  Thanks!

Sincerely,

  Thornton

Arbitration Practice Administrator
P: ◀━━▶

◀━━━━━▶@jamsadr.com



The future of ADR is here, and JAMS Next is leading the way with


breakthrough ideas and technologies. Learn more

**JAMS Case No. 5160000821 / Hollingsworth v. DRVM LLC, et al. / Respondent's Non-Consent to Claimant's Request for Dr. Ryan Abbott Be Appointed Arbitrator**
9 messages

**McClintock, Cyndi** <cmcclintock@fisherphillips.com>                    Fri, Jun 27 at 12:04 PM
To: ⬛Thornton ⬛⬛⬛@jamsadr.com>
Cc: Scott, Stephen <smscott@fisherphillips.com>, Edwards, Bobbi <bedwards@fisherphillips.com>, McClintock, Cyndi
<cmcclintock@fisherphillips.com>, Jorden Timothy ⬛⬛⬛⬛⬛

Dear Ms. Thornton,


Attached is a courtesy copy of Respondent's Non-Consent to Claimant's Request for Dr. Ryan Abbott Be
Appointed Arbitrator, which was filed through the JAMS Access Portal today.


A service copy is being sent by first-class mail to Claimant as well.


Thank you.

Cyndi McClintock




**Cyndi McClintock**
**Legal Secretary**

Fisher & Phillips LLP
560 S.W. Tenth Avenue | Suite 450 | Portland, OR 97205
cmcclintock@fisherphillips.com | O: (503) 205-8067

***We have moved. Please note new address above.**


Website        *On the Front Lines of Workplace Law℠*

**Jorden Timothy <**  **>**                                                    Fri, Jun 27 at 1:38 PM
To: ▓ Thornton <▓▓@jamsadr.com>
Cc: Scott, Stephen <smscott@fisherphillips.com>, Edwards, Bobbi <bedwards@fisherphillips.com>, McClintock, Cyndi <cmcclintock@fisherphillips.com>

Dear Ms. Thornton,

Please find attached my formal response to Fisher Phillips' June 27 objection regarding the nomination of Dr. Ryan Abbott, along with my request for immediate clarification of representation and funding in this arbitration.

This submission is being provided for the record and in support of a fair, transparent arbitrator selection process in accordance with JAMS rules and administrative policies.

If any additional information is needed, I am available to provide it.

Sincerely,

Jorden Hollingsworth

Claimant, Pro Se



[Quoted text hidden]
**Response to Fisher Phillips' June 27 Objection to Arbitrator Nomination and Request for Representation Clarification.pdf**

---

**▓ Thornton <**▓▓**@jamsadr.com>**                                                    Tue, Jul 1 at 9:19 AM
To: Jorden Timothy <▓▓▓▓>
Cc: Scott, Stephen <smscott@fisherphillips.com>, Edwards, Bobbi <bedwards@fisherphillips.com>, McClintock, Cyndi <cmcclintock@fisherphillips.com>

Thank you – please post to the case docket on JAMS Access if you haven't already.

Sincerely,

▓

Logo

[?]

**▓ Thornton**

Arbitration Practice Administrator
P: 4▓

6

 **Thornton** <████████@jamsadr.com>
To: Jorden Timothy ████████████████

Tue, Jul 1 at 12:27 PM

Cc: Scott, Stephen <smscott@fisherphillips.com>, Edwards, Bobbi <bedwards@fisherphillips.com>, McClintock, Cyndi <cmcclintock@fisherphillips.com>

Good Afternoon,

I hope everyone is doing well.  Thank you for your most recent submissions.  JAMS must follow the arbitration agreement(s) or joint stipulation(s) provided and signed by both Parties. The arbitration agreement provided for this matter reads: "If the Parties cannot agree on an arbitrator, the court can appoint one."

Please let JAMS know once Parties have mutually agreed to an arbitrator; or have all agreed to use to JAMS strike and rank process in place of mutually selecting (please note: all Parties will need to agree to use the strike and rank process); or advise once the Court has appointed an arbitrator on behalf of Parties.

Thank you and please let me know if you have any questions.

Sincerely,

████

Logo



**Thornton**

Arbitration Practice Administrator
P: ◄████████

████████@jamsadr.com



*The future of ADR is here, and JAMS Next is leading the way with*

*breakthrough ideas and technologies. Learn more*

Jorden Timothy ████████████████                                    Tue, Jul 1 at 12:51 PM
To: ███ Thornton ████████████@jamsadr.com>

Cc: Scott, Stephen <smscott@fisherphillips.com>, Edwards, Bobbi <bedwards@fisherphillips.com>, McClintock, Cyndi <cmcclintock@fisherphillips.com>

Dear Amy, Stephen, and all,

Thank you for the update.

I am more than willing to agree to the JAMS strike-and-rank process if the Parties can first agree on a list of arbitrators with demonstrable expertise in artificial intelligence and emerging technologies. This is not merely a preference, it is an obligation under the procedural framework that governs this matter.

This arbitration is not a conventional employment dispute. It is a systemic fraud case involving corporate concealment, shell structuring, and the ethical use of artificial intelligence by a pro se claimant as a core legal engine. AI is not incidental here, it is foundational to how this arbitration is being navigated and contested.

Under Rule 15(b) of the JAMS Employment Arbitration Rules, it is clearly stated:

"JAMS shall propose, subject to availability, only panelists approved by JAMS for evaluating disputes involving technical subject matter with appropriate background and experience. JAMS shall also provide each party with a brief description of the background and experience of each Arbitrator candidate."

This rule must be honored in this case, especially considering the level of technical reliance already documented in the record. To ensure a fair and appropriate process, any arbitrator list must include panelists with AI and related technical qualifications, in accordance with Rule 15(b).

If the respondents are unwilling to agree to a strike list containing such qualified arbitrators, I will consider the strike-and-rank process invalid in light of JAMS' own rules and the terms of the arbitration agreement. In that event, I will submit a petition to federal court after a deadline of 48 hours seeking the appointment of an arbitrator.

This filing will include exhibits and procedural documentation, which will then enter the public record under federal court rules.

I remain ready to proceed in good faith if the list reflects the actual technical nature of this case, as required by JAMS Rule 15(b).

Sincerely,

Jorden Hollingsworth

Pro Se Claimant

8

**Jorden Timothy** ⬛⬛⬛⬛⬛⬛⬛⬛⬛                                    Tue, Jul 1 at 12:54 PM
To: Scott, Stephen <smscott@fisherphillips.com>, Edwards, Bobbi <bedwards@fisherphillips.com>, McClintock, Cyndi <cmcclintock@fisherphillips.com>
Cc:⬛ Thornton ⬛⬛⬛⬛@jamsadr.com>

Stephen,

As a follow-up to my prior message, I'll be brief:

⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛

If we can agree on a JAMS arbitrator list that includes candidates with AI and technical subject matter expertise as required by Rule 15(b), I'm fully prepared to proceed with the strike-and-rank process.

If not, I will petition federal court for arbitrator appointment after a deadline of 48 hours. That petition will include exhibits, evidence, and procedural history, all of which will become part of the public docket.

I'm offering this window as a good faith opportunity to resolve selection cooperatively. Let me know if you're willing to proceed with a list that complies with JAMS policy and the technical nature of this case.

[Quoted text hidden]

---

**Jorden Timothy** ⬛⬛⬛⬛⬛⬛⬛⬛⬛                                    Tue, Jul 1 at 4:39 PM
To: Scott, Stephen <smscott@fisherphillips.com>, Edwards, Bobbi <bedwards@fisherphillips.com>, McClintock, Cyndi <cmcclintock@fisherphillips.com>, ⬛ Thornton ⬛⬛⬛⬛@jamsadr.com>

Dear Amy, Stephen, and all,

I am formally notifying the parties that I am submitting a Notice of Unsolicited Payment by DRVM LLC to the case docket today, July 1, 2025.

This filing documents a $6,130.10 deposit made directly into my personal bank account by DRVM LLC, the same entity that has been presented as the sole respondent participating in arbitration, despite overwhelming evidence of upstream control and concealment. The timing of this unsolicited deposit, occurring within the 48-hour window I previously outlined before filing a federal petition to appoint an arbitrator, raises significant legal, ethical, and procedural concerns.

This notice has been entered into the record not as an acceptance of any terms, but to ensure full transparency and preserve the evidentiary integrity of these proceedings. As detailed in the document, this action appears inconsistent with prior conduct, off-record discussions, and the arbitration framework currently in place.

I remain willing to resolve arbitrator selection through JAMS strike-and-rank, but only if the list complies with Rule 15(b), requiring appropriate technical background given the central role of artificial intelligence in this arbitration. Absent agreement on such a list within the remaining window, I will proceed with a federal court petition to assign an arbitrator, at which point this matter and all supporting evidence will enter the public record.

Respectfully,

[Quoted text hidden]
CLAIMANT'S NOTICE OF UNSOLICITED PAYMENT FROM RESPONDENT DRVM LLC.pdf, Exhibit 110 - Undisclosed DRVM Deposit July 1st, 2025.pdf

Exhibit 2h:
Undisclosed ($6,130.10
Deposit on July 1
(No Paystub, No
Settlement Agreement,
No Explanation)

**3:25** ... 5G+ 🔋

**Credit Builder**
## $0.00

[Add money]

**Checking**
## $5,988.18

[View]

Savings Account
## $0.00

[Open Account]

# Recent Transactions

Credit Builder          **Checking**

 **MyPay repayment**    - $100.00
Jul 1 2025 at 2:09 PM

 **MyPay instant advance fees**   - $2.00
Jul 1 2025 at 2:09 PM

 **Drvm Llc, Direct Dep**   + $6,130.10
Jul 1 2025 at 2:09 PM

🛍️ **Tobacco Town 2**    - $33.00
Feb 28 2025 at 7:43 PM

app.chime.com

1



Exhibit 24:

Petitioner's

Notice of

Unsolicited

Payment

**CLAIMANT'S NOTICE OF UNSOLICITED PAYMENT FROM RESPONDENT DRVM LLC (JULY 1, 2025)**
**JAMS Case No. 5160000821**
**Hollingsworth v. DRVM LLC, et al.**

### 1. Introduction

On **July 1, 2025,** Claimant received an unsolicited deposit of **$6,130.10** into a dormant personal checking account. The deposit was issued from DRVM LLC, the named respondent in this arbitration. Claimant has made no request, settlement acceptance, or agreement that would justify this deposit outside of formal proceedings.

### 2. Context of Payment

This amount aligns closely, though not exactly, with a prior informal settlement ballpark figure discussed with a Human Resources representative from DRVM LLC in early communications (see Exhibit 86). At the time of those discussions, Claimant had not yet uncovered the corporate fraud and shell structuring that now define the central theory of this case.

Claimant notes that Exhibit 86, already entered into the record, documents communications with an individual purporting to represent Human Resources for DRVM LLC during early wage discussions. While Claimant does not formally allege fraudulent identity here, the broader evidentiary pattern strongly suggests misrepresentation or lack of lawful authority on behalf of that individual.

### 3. Procedural and Ethical Concerns

The unsolicited deposit raises multiple procedural and ethical issues:

- **Jurisdictional Ambiguity:** Is this a settlement offer? A trap? An attempt to later claim waiver or mootness?

- **Entity Misrepresentation:** DRVM LLC has positioned itself as the sole participant in arbitration, yet all available evidence, including corporate filings and JAMS disclosures, show it operates as a shell entity controlled by upstream parties who have avoided participation.

1

- **Bypassing Due Process:** Attempting to settle outside the record contradicts the binding procedural requirements under JAMS.

Claimant has not accepted, used, or endorsed this payment and considers it procedurally improper and legally irrelevant to the pending arbitration unless formalized and approved by the Tribunal.

### 4. Request for Tribunal Review and Clarification

Claimant requests that the Tribunal take judicial notice of this attempted payment and issue any necessary procedural order or warning to prevent improper influence or spoliation of the arbitration record. Respondents must not be permitted to resolve such matters outside the forum they contractually agreed to and have delayed for months.

### 5. Supporting Exhibit

Claimant attaches Exhibit 110, a screenshot of the banking transaction showing the July 1, 2025 deposit of $6,130.10 from DRVM LLC into Claimant's account.

### 6. Conclusion

Claimant makes this filing solely to preserve the integrity of the arbitration, not to imply acceptance or agreement. If Respondents wish to resolve any portion of this matter, it must be done transparently, on record, and with full participation of all implicated entities and upstream controlling parties.


Respectfully submitted,

Jorden Hollingsworth
Pro Se Claimant
July 1, 2025

2

Exhibit 25:

DRVM Agreement

for Criteria to

Avoid Federal

Petition



Fisher
Phillips

fisherphillips.com

**Portland**
560 SW Tenth Avenue
Suite 450
Portland, OR 97205
(503) 242.4262 Tel
(503) 242-4263 Fax

**Writer's Direct Dial:**

**Writer's E-mail:**

July 2, 2025

*e-Filed JAMS Access Portal
and Email to a* 

Arbitration Practice Administrator
JAMS

Copy to:  Claimant Jorden Hollingsworth (by email and first-class mail)

**Re:**  *Jorden Hollingsworth v. DRVM LLC, et al.*
JAMS Ref. No.:  5160000821

Dear Ms.

Pursuant to Rule 15(b) of the JAMS Comprehensive Arbitration Rules and Procedures, DRVM LLC hereby consents to the use of the strike–and–rank panel appointment process for selection of a sole arbitrator. In order to ensure that the tribunal is properly equipped to address the substantive issues in this dispute—namely, Oregon wage-and-hour claims—DRVM's consent is expressly conditioned on JAMS furnishing a roster of candidates each of whom has experience adjudicating Oregon wage and hour matters in addition to any additional qualifications requested by Mr. Hollingsworth.

We appreciate JAMS' assistance in providing at least five (5) qualified arbitrator candidates, accompanied by a brief summary of each candidate's background and relevant experience. Once we receive the list, DRVM will proceed with striking and ranking in accordance with Rule 15(b)'s prescribed procedures.

**Fisher & Phillips LLP**

Atlanta • Baltimore • Bethesda • Boston • Charlotte • Chicago • Cleveland • Columbia • Columbus • Dallas • Denver • Detroit • Fort Lauderdale • Gulfport
Houston • Irvine • Kansas City • Las Vegas • Los Angeles • Louisville • Memphis • Nashville • New Jersey • New Orleans • New York • Orlando • Philadelphia
Phoenix • Pittsburgh • Portland • Sacramento • San Diego • San Francisco • Seattle • Tampa • Washington, DC

FP 55474447.2

Exhibit 26:

DRVM Answer

(July 16) — No

Mention of the

Deposit

1  STEPHEN M. SCOTT, OSB No. 134800
   Email: smscott@fisherphillips.com
2  BOBBI EDWARDS, OSB No. 211574
   Email: bedwards@fisherphillips.com
3  FISHER & PHILLIPS LLP
   560 SW TENTH AVENUE, SUITE 450
4  Portland, OR 97205
   Phone: 503.242.4262
5
   Attorneys for Respondent DRVM LLC
6

7

8                          IN RE ARBITRATION

9             JAMS ALTERNATIVE DISPUTE RESOLUTION

10

11  JORDEN HOLLINGSWORTH,                    Case No. 5160000663

12           Claimant,                       **RESPONDENT'S ANSWER TO**
                                             **CLAIMANT'S DEMAND FOR**
13     v.                                    **ARBITRATION**

14  SANOFI-AVENTIS LLC, QUTEN
15  RESEARCH INSTITUTE LLC, CHATTEM
    INC., MAGED "MIKE" BOUTROS,
16  ASHRAF "PETER" BOUTROS, DRVM
    LLC, AMJ SERVICES, DEEPAK CHOPRA
17
             Respondent.
18

19      For its answer to the corresponding paragraphs of Claimant's: (1) Demand for Arbitration

20  submitted to JAMS on February 18, 2025; (2) Amended Demand for Arbitration submitted to JAMS on

21  February 26, 2025; (3) Third Amended Demand for Arbitration submitted to JAMS on April 7, 2025;

22  and (4) Fourth Amended Demand for Arbitration on April 8, 2025 (collectively "Demands"),

23  Respondent DRVM LLC responds as follows:

24  / / /

25  / / /

26  / / /

PAGE 1 –  RESPONDENT'S ANSWER TO CLAIMANT'S          **FISHER & PHILLIPS LLP**
          DEMAND FOR ARBITRATION                      560 SW Tenth Avenue, Suite 450
                                                      Portland, Oregon 97205
                                                      (503) 242-4262

FP 55514934.7

## ANSWER

### I.    FEBRUARY 18, 2025: DEMAND FOR ARBITRATION

1.

Claimant's February 18, 2025 Demand for Arbitration, pages 1-12, contains statements of law to which no response is required.

2.

Claimant's February 18, 2025 Demand for Arbitration, pages 1-12, contains legal conclusions to which no response is required.

3.

Claimant's February 18, 2025 Demand for Arbitration, pages 1-12, contains Claimant's discovery requests to which no response is required.

4.

Claimant's February 18, 2025 Demand for Arbitration, pages 1-12, contains factual allegations pertaining to entities other than Respondent DRVM LLC. Respondent DRVM LLC lacks sufficient knowledge or information to admit or deny allegations concerning any other named entity. Respondent DRVM LLC responds only on its own behalf and expressly disclaims any authority to admit or deny allegations concerning any other entity.

5.

Claimant's February 18, 2025 Demand for Arbitration, pages 1-12, contains demands for damages. Respondent DRVM LLC denies that Claimant has suffered the damages alleged in his February 18, 2025, Demand for Arbitration.

6.

To the extent that there are remaining factual allegations in Claimant's February 18, 2025 Demand for Arbitration pertaining to Respondent DRVM LLC, Respondent DRVM LLC admits the following: (1) Respondent DRVM LLC and Claimant entered into a valid and binding

PAGE 2 –   RESPONDENT'S ANSWER TO CLAIMANT'S
           DEMAND FOR ARBITRATION

FISHER & PHILLIPS LLP
560 SW Tenth Avenue, Suite 450
Portland, Oregon 97205
(503) 242-4262

FP 55514934.7

arbitration agreement invoking JAMS' rules and procedures; (2) Respondent DRVM LLC employed Claimant; (3) Respondent DRVM LLC terminated Claimant's employment on December 12, 2024; (4) Respondent DRVM LLC included Claimant's commissions as separate line items on Claimant's bi-weekly wage statement; (5) Respondent DRVM LLC admits that it paid Claimant all wages due within the statutory twelve-day notice period provided by ORS 652.150; and (6) Respondent DRVM LLC admits that it paid Claimant the statutorily-capped 100 percent penalty as provided by ORS 652.150 on January 8, 2025. As to all other allegations in Claimant's February 18, 2025, Demand for Arbitration, Respondent DRVM LLC denies.

## II.    FEBRUARY 26, 2025: FIRST AMENDED DEMAND FOR ARBITRATION

7.

Claimant's February 26, 2025 First Amended Demand for Arbitration, pages 1-66, contains statements of law to which no response is required.

8.

Claimant's February 26, 2025 First Amended Demand for Arbitration, pages 1-66, contains legal conclusions to which no response is required.

9.

Claimant's February 26, 2025 First Amended Demand for Arbitration, pages 1-66, contains Claimant's discovery requests to which no response is required.

10.

Claimant's February 26, 2025 First Amended Demand for Arbitration, pages 1-66, contains factual allegations pertaining to entities other than Respondent DRVM LLC. Respondent DRVM LLC lacks sufficient knowledge or information to admit or deny allegations concerning any other entity. Respondent DRVM LLC responds only on its own behalf and expressly disclaims any authority to admit or deny allegations concerning any other named entity.

PAGE 3 –   RESPONDENT'S ANSWER TO CLAIMANT'S
          DEMAND FOR ARBITRATION

FISHER & PHILLIPS LLP
560 SW Tenth Avenue, Suite 450
Portland, Oregon 97205
(503) 242-4262

FP 55514934.7

11.

Claimant's February 26, 2025 First Amended Demand for Arbitration, pages 1-66, contains demands for damages. Respondent DRVM LLC denies that Claimant has suffered the damages alleged in his February 26, 2025 First Amended Demand for Arbitration.

12.

To the extent that there are remaining factual allegations pertaining to Respondent DRVM LLC, Respondent DRVM LLC admits the following: (1) Respondent DRVM LLC and Claimant entered into a valid and binding arbitration agreement; (2) Respondent DRVM LLC employed Claimant; (3) Respondent DRVM LLC terminated Claimant's employment on December 12, 2024; (4) Respondent DRVM LLC included Claimant's commission as separate line items on Claimant's bi-weekly wage statement; (5) Respondent DRVM LLC admits that it paid Claimant all wages due within the statutory twelve-day notice period provided by ORS 652.150; and (6) Respondent DRVM LLC admits that it paid Claimant the statutorily-capped 100 percent penalty as provided by ORS 652.150 on January 8, 2025. As to all other allegations in Claimant's February 26, 2025 First Amended Demand for Arbitration, Respondent DRVM LLC denies.

III.    **March 31, 2025: SECOND AMENDED DEMAND FOR ARBITRATION**

13.

Claimant's March 31, 2025 Second Amended Demand for Arbitration, page 1, contains statements of law to which no response is required.

14.

Claimant's March 31, 2025 Second Amended Demand for Arbitration, page 1, contains legal conclusions to which no response is required.

15.

Claimant's March 31, 2025 Second Amended Demand for Arbitration, page 1, contains Claimant's discovery requests to which no response is required.

PAGE 4 –  RESPONDENT'S ANSWER TO CLAIMANT'S
DEMAND FOR ARBITRATION

**FISHER & PHILLIPS LLP**
560 SW Tenth Avenue, Suite 450
Portland, Oregon 97205
(503) 242-4262

FP 55514934.7

1

16.

2

Claimant's March 31, 2025 Second Amended Demand for Arbitration, page 1, contains

3

factual allegations pertaining to entities other than Respondent DRVM LLC. Respondent DRVM

4

LLC lacks sufficient knowledge or information to admit or deny allegations concerning any other

5

named entity. Respondent DRVM LLC responds only on its own behalf and expressly disclaims

6

any authority to admit or deny allegations concerning any other named entity.

7

17.

8

Claimant's March 31, 2025 Second Amended Demand for Arbitration, page 1, contains

9

demands for damages. Respondent DRVM LLC denies that Claimant has suffered the damages

10

alleged in his March 31, 2025 Second Amended Demand for Arbitration.

11

18.

12

To the extent that there are remaining factual allegations in Claimant's March 31, 2025

13

Second Amended Demand for Arbitration pertaining to Respondent DRVM LLC, Respondent

14

DRVM LLC incorporates the following admissions: (1) Respondent DRVM LLC and Claimant

15

entered into a valid and binding arbitration agreement; (2) Respondent DRVM LLC employed

16

Claimant; (3) Respondent DRVM LLC terminated Claimant's employment on December 12,

17

2024; (4) Respondent DRVM LLC included Claimant's commissions as separate line items on

18

Claimant's bi-weekly wage statement; (5) Respondent DRVM LLC admits that it paid Claimant

19

all wages due within the statutory twelve-day notice period provided by ORS 652.150; and

20

(6) Respondent DRVM LLC admits that it paid Claimant the statutorily-capped 100 percent

21

penalty as provided by ORS 652.150 on January 8, 2025. As to all other allegations in Claimant's

22

March 31, 2025 Second Amended Demand for Arbitration, Respondent DRVM LLC lacks

23

sufficient knowledge and information to confirm or deny and therefore denies.

24

///

25

///

26

///

PAGE 5 – RESPONDENT'S ANSWER TO CLAIMANT'S
DEMAND FOR ARBITRATION

**FISHER & PHILLIPS LLP**
560 SW Tenth Avenue, Suite 450
Portland, Oregon 97205
(503) 242-4262

FP 55514934.7

## IV.    April 7, 2025: THIRD AMENDED DEMAND FOR ARBITRATION

19.

Claimant's April 7, 2025 Third Amended Demand pages 1-3, contains statements of law to which no response is required.

20.

Claimant's April 7, 2025 Third Amended Demand for Arbitration, pages 1-3, contains legal conclusions to which no response is required.

21.

Claimant's April 7, 2025 Third Amended Demand for Arbitration, pages 1-3, contains Claimant's discovery requests to which no response is required.

22.

Claimant's April 7, 2025 Third Amended Demand for Arbitration, pages 1-3, contains factual allegations pertaining to entities other than Respondent DRVM LLC. Respondent DRVM LLC lacks sufficient knowledge or information to admit or deny allegations concerning any other entity. Respondent DRVM LLC responds only on its own behalf and expressly disclaims any authority to admit or deny allegations concerning any other named entity.

23.

Claimant's April 7, 2025 Third Amended Demand for Arbitration, pages 1-3, contain demands for damages. Respondent DRVM LLC denies that Claimant has suffered the damages alleged in his April 7, 2025 Third Amended Demand for Arbitration.

24.

To the extent that there are remaining factual allegations in Claimant's April 7, 2025 Third Amended Demand for Arbitration pertaining to Respondent DRVM LLC, Respondent DRVM LLC incorporates the following admissions: (1) Respondent DRVM LLC and Claimant entered into a valid and binding arbitration agreement invoking JAMS' rules and procedures; (2) Respondent DRVM LLC employed Claimant; (3) Respondent DRVM LLC terminated

PAGE 6 –  RESPONDENT'S ANSWER TO CLAIMANT'S
DEMAND FOR ARBITRATION

**FISHER & PHILLIPS LLP**
560 SW Tenth Avenue, Suite 450
Portland, Oregon 97205
(503) 242-4262

FP 55514934.7

Claimant's employment on December 12, 2024; (4) Respondent DRVM LLC included Claimant's commissions as separate line items on Claimant's bi-weekly wage statement; (5) Respondent DRVM LLC admits that it paid Claimant all wages due within the statutory twelve-day notice period provided by ORS 652.150; and (6) Respondent DRVM LLC admits that it paid Claimant the statutorily-capped 100 percent penalty as provided by ORS 652.150 on January 8, 2025. As to all other allegations in Claimant's April 7, 2025 Third Amended Demand for Arbitration, Respondent DRVM LLC denies.

## V.    April 8, 2025: FOURTH AMENDED DEMAND FOR ARBITRATION

25.

Claimant's April 8, 2025 Fourth Amended Demand for Arbitration, pages 1-3, contains legal conclusions to which no response is required.

26.

Claimant's April 8, 2025 Fourth Amended Demand for Arbitration, pages 1-3, contains statements of law to which no response is required.

27.

Claimant's April 8, 2025 Fourth Amended Demand for Arbitration, pages 1-3, contains Claimant's discovery requests to which no response is required.

28.

Claimant's April 8, 2025 Fourth Amended Demand for Arbitration, pages 1-3, contains factual allegations pertaining to entities other than Respondent DRVM LLC. Respondent DRVM LLC lacks sufficient knowledge or information to admit or deny allegations concerning any other entity. Respondent DRVM LLC responds only on its own behalf and expressly disclaims any authority to admit or deny allegations concerning any other named entity.

///

///

PAGE 7 –   RESPONDENT'S ANSWER TO CLAIMANT'S
DEMAND FOR ARBITRATION

**FISHER & PHILLIPS LLP**
560 SW Tenth Avenue, Suite 450
Portland, Oregon 97205
(503) 242-4262

FP 55514934.7

29.

Claimant's April 8, 2025 Fourth Amended Demand for Arbitration, pages 1-3, contains demands for damages. Respondent DRVM LLC denies that Claimant has suffered the damages alleged in his April 8, 2025 Fourth Amended Demand for Arbitration.

30.

To the extent that there are remaining factual allegations in Claimant's April 8, 2025 Fourth Amended Demand for Arbitration pertaining to Respondent DRVM LLC, Respondent DRVM LLC incorporates the following admissions: (1) Respondent DRVM LLC and Claimant entered into a valid and binding arbitration agreement invoking JAMS' rules and procedures; (2) Respondent DRVM LLC employed Claimant; (3) Respondent DRVM LLC terminated Claimant's employment on December 12, 2024; (4) Respondent DRVM LLC included Claimant's commissions as separate line items on Claimant's bi-weekly wage statement; (5) Respondent DRVM LLC admits that it paid Claimant all wages due within the statutory twelve-day notice period provided by ORS 652.150; and (6) Respondent DRVM LLC admits that it paid Claimant a the statutorily-capped 100 percent penalty as provided by ORS 652.150 on January 8, 2025. As to all other allegations in Claimant's April 8, 2025 Fourth Amended Demand for Arbitration, Respondent DRVM LLC denies.

## VI.  GENERAL DENIAL

31.

Except as expressly admitted above, Respondent DRVM LLC denies each and every allegation contained in Claimant's Demands as they pertain to Respondent DRVM LLC.

## CLAIMANT'S CAUSES OF ACTION

32.

Claimant's Demands assert vague and ambiguous causes of action, on that basis Respondent DRVM LLC denies each and every cause of action put forward by Claimant in his Demands.

PAGE 8 –   RESPONDENT'S ANSWER TO CLAIMANT'S
DEMAND FOR ARBITRATION

**FISHER & PHILLIPS LLP**
560 SW Tenth Avenue, Suite 450
Portland, Oregon 97205
(503) 242-4262

FP 55514934.7

33.

Claimant's Demands are vague and ambiguous as they fail to identify which of the 11 named individuals and entities are responsible for each of his factual allegations, on that basis Respondent DRVM LLC denies each and every cause of action put forward by Claimant in his Demands.

**CLAIMANT'S CLAIMS FOR RELIEF**

34.

Respondent DRVM LLC incorporates its admissions, denials, and answers to paragraphs 1-33.

35.

Respondent DRVM LLC avers that ORS 659A.140 speaks for itself, and to the extent Claimant misrepresents its contents or legal significance, Respondent DRVM LLC denies the same.

36.

To the extent that Claimant misrepresents applicable statutory and case law, its contents or legal significance, Respondent DRVM LLC denies liability for each and every one of Claimant's claims for relief.

37.

Respondent DRVM LLC denies that it is liable to Claimant for any economic damages.

38.

Respondent DRVM LLC denies that it is liable to Claimant for any noneconomic damages.

39.

Respondent DRVM LLC denies that it is liable to Claimant for any punitive damages.

40.

Respondent DRVM LLC denies that Claimant is owed reasonable attorneys' fees or costs associated with arbitration.

///

///

///

PAGE 9 –   RESPONDENT'S ANSWER TO CLAIMANT'S
          DEMAND FOR ARBITRATION

**FISHER & PHILLIPS LLP**
560 SW Tenth Avenue, Suite 450
Portland, Oregon 97205
(503) 242-4262

1

2

3

4

5

**RESPONDENT'S GENERAL DENIAL**

41.

To the extent not expressly admitted, Respondent DRVM LLC denies each and every allegation contained in each of Claimant's Demands.

6

7

**RESPONDENT'S DEFENSES**

42.

8

9

10

11

Respondent DRVM LLC incorporates by reference paragraphs 1 through 41 of this Answer to the following defenses below. Without waiving any defenses or denials, without assuming the burden of proof on any issue, and reserving the right to amend or delete defenses as information becomes available through investigation and discovery, Respondent DRVM LLC raises the following defenses:

12

13

14

**FIRST DEFENSE**

**(No Willful Violation)**

43.

15

Defendant DRVM LLC did not willfully withhold payments demanded by Claimant.

16

17

18

**SECOND DEFENSE**

**(Good Faith)**

44.

19

20

21

22

Respondent DRVM LLC acted in good faith at all times with respect to the allegations made in Claimant's Demands and had reasonable grounds for believing that the alleged acts or omissions were not in violation of the law. Respondent DRVM LLC made good faith efforts to comply with all applicable laws and acted only according to good faith beliefs.

23

24

25

**THIRD DEFENSE**

**(Full Satisfaction)**

45.

26

Respondent DRVM LLC has completely or substantially performed its obligations, if any.

PAGE 10 – RESPONDENT'S ANSWER TO CLAIMANT'S
DEMAND FOR ARBITRATION

**FISHER & PHILLIPS LLP**
560 SW Tenth Avenue, Suite 450
Portland, Oregon 97205
(503) 242-4262

FP 55514934.7

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

**FOURTH DEFENSE**

**(Failure to State a Claim)**

46.

Without waiving any other defenses or denials, Claimant's Demands fail to state a claim against Respondent DRVM LLC upon which relief can be granted. Demands contain numerous conclusory allegations that Claimant pleads as if they are actual facts.

**FIFTH DEFENSE**

**(Claimant's Conduct Precludes Recovery)**

47.

Claimant is barred from bringing his claims against Respondent DRVM LLC by the doctrines of fraud, unjust enrichment, and unclean hands.

**SIXTH DEFENSE**

**(Acts and Omissions of Agents and Employees)**

48.

Respondent DRVM LLC may not be held liable for acts or omissions of its agents and employees (or others acting on its behalf), including to the extent that such person acted outside the scope of their agency, employment, or authority. Respondent DRVM LLC was not aware of, and did not ratify or consent to, any unlawful acts or omissions by its agents or employees, or others acting on its behalf.

**SEVENTH DEFENSE**

**(Statute of Limitations)**

49.

To the extent that any of Claimant's claims or allegations are untimely, they are barred by the appropriate statute of limitations.

/ / /

/ / /

PAGE 11 – RESPONDENT'S ANSWER TO CLAIMANT'S
DEMAND FOR ARBITRATION

**FISHER & PHILLIPS LLP**
560 SW Tenth Avenue, Suite 450
Portland, Oregon 97205
(503) 242-4262

FP 55514934.7

1

**EIGHTH DEFENSE**

2

**(Failure to Mitigate)**

3

50.

4

To the extent that Claimant has failed to make reasonable attempts to mitigate his damages, if

5

any, and his right to recover against Respondent DRVM LLC, Claimant's claims or allegations are

6

untimely, and they are barred by the appropriate statute of limitations.

7

**NINTH DEFENSE**

8

**(Unjust Enrichment)**

9

51.

10

Claimant did not suffer from damages for which he is entitled to relief, and Claimant would be

11

unjustly enriched by any recovery.

12

**RESERVATION OF RIGHTS**

13

By way of reservation of rights, and without waiver, Respondent DRVM LLC specifically

14

reserves its right to amend this Answer, its Affirmative Defenses, and its Counterclaim as additional

15

investigation, discovery, or circumstances may warrant.

16

**RESPONDENT'S PRAYER FOR RELIEF**

17

WHEREFORE, having answered Claimant's Demands, Respondent DRVM LLC prays for

18

judgment as follows:

19

    1.      For dismissal of Claimant's Complaints in their entirety with prejudice;

20

/ / /

21

/ / /

22

/ / /

23

/ / /

24

/ / /

25

/ / /

26

/ / /

PAGE 12 – RESPONDENT'S ANSWER TO CLAIMANT'S
DEMAND FOR ARBITRATION

**FISHER & PHILLIPS LLP**
560 SW Tenth Avenue, Suite 450
Portland, Oregon 97205
(503) 242-4262

FP 55514934.7

1

2.    That Respondent DRVM LLC be awarded its costs in defending this action, including

2

its reasonable attorneys' fees incurred in defending this action pursuant to ORS 20.105, ORS 20.107,

3

28 U.S.C. Chapter 123, Fed. R. Civ. P. 54, and any other applicable fee-shifting statute; and

4

3.    For any other and further relief that the Arbitrator deems appropriate.

5

DATED this 16th day of July, 2025.

6

FISHER & PHILLIPS LLP

7

*s/ Stephen M. Scott*

8

Stephen M. Scott, OSB No. 134800
smscott@fisherphillips.com

9

Bobbi J. Edwards, OSB No. 211574
bedwards@fisherphillips.com

10

503.242.4262 Tel.

11

503.242.4263 Fax

12

Attorneys for Respondent DRVM LLC

13

14

15

16

17

18

19

20

21

22

23

24

25

26

PAGE 13 – RESPONDENT'S ANSWER TO CLAIMANT'S
DEMAND FOR ARBITRATION

**FISHER & PHILLIPS LLP**
560 SW Tenth Avenue, Suite 450
Portland, Oregon 97205
(503) 242-4262

FP 55514934.7

Exhibit 27:

Petitioner Follow-Up to

Answer and Reminder

of Arbitrator

Agreement

---

## Follow-Up on Arbitrator Selection – Hollingsworth v. DRVM LLC (Ref #5160000821)

3 messages

---

**Jorden Timothy** <▉▉▉▉▉▉▉▉▉▉▉>                                    Fri, Jul 18 at 8:41 AM
To: ▉▉▉▉▉▉▉ ▉▉▉▉▉▉.▉@jamsadr.com>
Cc: Scott, Stephen <smscott@fisherphillips.com>, Edwards, Bobbi <bedwards@fisherphillips.com>, McClintock, Cyndi <cmcclintock@fisherphillips.com>

Dear ▉▉▉,

I hope you're well. I'm writing to follow up regarding the arbitrator selection in **Hollingsworth v. DRVM LLC et al., Ref #5160000821.** <—

As of July 2, both parties agreed to proceed with a strike-and-rank selection process under Rule 15(b), with the understanding that proposed arbitrators would possess relevant experience in artificial intelligence and emerging technologies. It has now been more than 10 business days, and no list or update has been provided.

In that time, several material developments have occurred:

• **Unsolicited Deposit:** On July 1 — the same day I notified respondents of a pending federal petition, DRVM deposited $6,000 into my personal account without any prior communication, agreement, or documentation. This unexplained transfer has been formally submitted into the record as Exhibit 110. Despite its direct relevance to the dispute, it was entirely omitted from their subsequent Answer, which instead claims "full payment" and "good faith."

• **Answer Submission Without Arbitrator:** On July 16, Fisher Phillips submitted an Answer on behalf of respondents, even though no arbitrator has been appointed. This raises concern not only due to the omission of the July 1 deposit but also because of the factual contradictions and general denials contained in the filing.

• **Entity Conflict & Authority Questions:** Perhaps most troubling, Fisher Phillips first filed a Notice of Appearance on April 14, 2025 — a time when DRVM LLC was still dissolved in the Oregon business registry. DRVM was not reinstated until April 25. This means that Fisher Phillips's engagement occurred during a period when DRVM had no legal capacity to operate or retain counsel, raising serious questions about who retained and instructed the firm during that period. This aligns with the broader concern that upstream entities — potentially AMJ Services, Maged, Sanofi, or others — are directing this matter behind a shell.

• **JAMS Disclosure Conflict:** As you know, JAMS itself disclosed at case initiation that DRVM and AMJ Services are interlinked for purposes of conflict and disclosure. Despite this, respondents continue to insist that DRVM is independent. Their ongoing denial, in direct contradiction of JAMS's own statements, is not just misleading — it prejudices the forum and undermines confidence in a fair proceeding.

Additionally, Fisher Phillips claims to represent only DRVM LLC — not Maged "Mike" Boutros, the CEO of both DRVM and AMJ Services. These companies share leadership, address, and business function. Their separation in this forum is artificial and obstructive. Under ORS 63.654 and ORS 63.651, a dissolved Oregon LLC cannot maintain legal proceedings until reinstated. Yet counsel filed their notice of appearance on behalf of a dissolved entity,

2

adding to the confusion and reinforcing the need for transparency around control and authorization.

Given the timeline and prior communications, I trust that JAMS is aware of the urgency and the implications of further delay or deviation from our agreed scope under Rule 15(b).

I respectfully request two things:

**1. Clarification on Timeline:** Please confirm when the Rule 15(b) strike-and-rank list will be issued.

**2. Confirmation on Arbitrator Criteria:** As previously agreed, all proposed arbitrators should have demonstrable experience in AI and emerging technologies. A hybrid list containing only one qualifying arbitrator would not reflect the scope or complexity of this matter, especially given the scale of the allegations and the procedural irregularities already in the record.

Should this list not reflect our agreed criteria, or if further delay and disagreements on the arbitrator continue without explanation, I will have no choice but to explore all available procedural remedies. I have deferred action thus far out of respect for this forum's process, but continued procedural maneuvering or lack of transparency will necessitate immediate escalation.

Please confirm receipt of this message and let me know when I can expect the arbitrator list. Given the nature of the case and the continued pattern of omissions and contradictions, we need formal oversight in place as soon as possible.

Sincerely,

Jorden Hollingsworth
Pro Se

@jamsadr.com>                                        Tue, Jul 22 at 11:56 AM
To: Jorden Timothy <jorden                           @g         >
Cc: Scott, Stephen <smscott@fisherphillips.com>, Edwards, Bobbi <bedwards@fisherphillips.com>, McClintock, Cyndi <cmcclintock@fisherphillips.com>

Good Morning,

Thank you for the below update and my apologies for the delayed response.  JAMS is currently working on the strike list for the above matter and Parties can expect to receive it via US Mail within the next week or so.  Please let me know if Parties should need anything in the meantime.

Sincerely,



Logo





Arbitration Practice Administrator
P: 

@jamsadr.com

**f   in   𝕏**

*The future of ADR is here, and JAMS Next is leading the way with*

*breakthrough ideas and technologies. Learn more*

3

Exhibit 28:

Strike List with

Qualifications

Summary



## STRIKE LIST

NOTICE TO ALL PARTIES                                    July 25, 2025

   RE:   **Hollingsworth, Jorden vs. DRVM LLC, et al.**
         JAMS Ref. No.: 5160000821

Dear Parties:

JAMS commenced the above referenced arbitration on June 23, 2025. The parties were asked to agree upon an Arbitrator. Unfortunately, this process did not yield an Arbitrator.

If the parties are still unable to mutually agree upon an Arbitrator, then using the following list of Arbitrator candidates each party may strike two (2) name(s) and rank the remaining candidates in order of preference. The deadline for return of your strike list is close of business on **August 6, 2025** [Note: Strike lists should not be exchanged amongst the parties.]:

                Hon. Chad Allred (Ret.)
                Hon. Marla Anderson (Ret.)
                Hon. Robert B Freedman (Ret.)
                Hon. Faith Ireland (Ret.)
                Hon. J. Kathleen Learned (Ret.)
                Hon. Dean Lum (Ret.)
                Hon. Judith Ramseyer (Ret.)

Résumés and rules are available on our website, www.jamsadr.com, or by contacting me.

If a party fails to respond to the list of Arbitrator candidates by the deadline, that party shall be deemed agreeable to all the proposed candidates. JAMS will then confirm the appointment of the Arbitrator and begin scheduling. If the parties are unable to agree on a date and time, the Arbitrator shall determine those issues.

Contact me at ▮▮▮▮▮▮▮▮or ▮▮▮▮▮▮@jamsadr.com if you have questions. We look forward to working with you.

Sincerely,

▮▮▮▮▮▮
Arbitration Practice Administrator
▮▮▮▮@jamsadr.com

Enclosures

Attachment – Arbitrator Background Summary and Relevance Assessment

## **Attachment – Arbitrator Background Summary and Relevance Assessment**

This attachment provides a detailed summary of the professional backgrounds of all arbitrators listed on the JAMS strike list issued July 29, 2025. Each profile includes a brief description of the arbitrator's primary legal experience, followed by a direct assessment of whether they meet the necessary qualifications to oversee this case. As previously stated, this matter involves AI-assisted filings, whistleblower law, pharmaceutical fraud, federal oversight, and complex shell company structuring. These are not theoretical concerns, they are central to the $15 billion dispute currently under IRS whistleblower filings and formal arbitration.

The purpose of this attachment is to demonstrate, in plain terms, that not a single arbitrator on the provided list has verifiable experience in any of the core subject areas required to fairly adjudicate this matter.

Each of the listed neutrals is undoubtedly accomplished in their respective areas — including family law, wage disputes, employment matters, and general commercial litigation but none possess the specialized expertise required for a case involving AI-assisted litigation, pharmaceutical fraud, whistleblower law, or shell company concealment.

### **Hon. Faith Ireland (Ret.)**

Experienced In: Employment disputes, personal injury, insurance, family law, government land issues

Not Experienced In: Pharma fraud, IRS whistleblower, AI litigation, shell structuring

1

2

Attachment – Arbitrator Background Summary and Relevance Assessment

## Hon. Robert B. Freedman

Experienced In: Class actions, consumer fraud, wage/hour law, construction defects, mass torts

Not Experienced In: AI filings, shell structuring, whistleblower law, pharma concealment

## Judge Dean S. Lum

Experienced In: Class actions, personal injury, insurance, employment, real estate, franchise disputes

Not Experienced In: Whistleblower law, IRS audits, AI-assisted filings, payroll fraud

## Judge Judith H. Ramseyer

Experienced In: Commercial litigation, civil rights, family law, professional liability, estate law

Not Experienced In: Entity fraud, AI litigation, IRS fraud concealment, pharma fraud

## Judge J. Kathleen Learned

Experienced In: Construction defects, product liability, estate disputes, environmental claims

Not Experienced In: Dissolved corp concealment, AI litigation, fraud tech, whistleblower law

## Hon. Marla O. Anderson

Experienced In: Business breakups, probate, medical malpractice, personal injury, employment law

Not Experienced In: Shell concealment, AI filings, fraud structuring, federal oversight

2

Attachment – Arbitrator Background Summary and Relevance Assessment

**Judge Chad Allred**

Experienced In: Personal injury, construction, estates, public agency claims, federal trials

Not Experienced In: AI litigation, shell fraud, whistleblower claims, pharma structuring

---

After reviewing each arbitrator on the provided strike list, it is clear that none meet the agreed-upon qualifications necessary for this case. This is not a matter of personal capability — many of these individuals are highly respected in their respective fields — but none possess experience in AI-assisted litigation, whistleblower law, pharmaceutical fraud, or complex shell structuring. The list, as issued, does not comply with the foundational terms established on July 2, 2025. Under JAMS Rule 15(b) and the JAMS Optional AI Rules, the panel must reflect the nature and complexity of the case. This list fails to do so and therefore cannot proceed.

4

Exhibit 29:

Email Thread:

Objection and

48 - Hour Deadline

to Fix

Exhibit 29

---

## Re: Follow-Up on Arbitrator Selection — Hollingsworth v. DRVM LLC (Ref #5160000821)

5 messages

---

**Jorden Timothy** <███████████████████>                              Tue, Jul 29 at 8:17 AM

To: ███████████ <████████████████████>

Cc: Scott, Stephen <smscott@fisherphillips.com>, Edwards, Bobbi <bedwards@fisherphillips.com>, McClintock, Cyndi <cmcclintock@fisherphillips.com>



Attached is my formal objection to the arbitrator strike list. The list provided lacks any neutral with the required expertise in healthcare fraud, whistleblower law, or AI-assisted litigation — all central to this case.

As outlined in the document, the parties previously agreed this would be an AI-governed case. This list violates that agreement and threatens the integrity of the proceeding. The implications are not minor: this case involves a $15 billion healthcare fraud claim under active IRS review, with evidence already made public. Assigning an unqualified arbitrator to a matter of this scale and complexity would undermine the process entirely.

JAMS has 48 hours to correct this and produce a list that includes a qualified neutral such as Ryan Abbott or Daniel Garrie. If not, I will file a federal petition to appoint an arbitrator with the necessary background to oversee this dispute fairly and competently.

Sincerely,

Jorden Hollingsworth
Pro Se
████████████████████

μ

**Jorden Timothy** <jordentimothy11@gmail.com>                    Tue, Jul 29 at 8:41 PM
To: ██████████████████@jamsadr.com>
Cc: Scott, Stephen <smscott@fisherphillips.com>, Edwards, Bobbi <bedwards@fisherphillips.com>, McClintock, Cyndi <cmcclintock@fisherphillips.com>

Dear ███

Quick clarification: In my previous message, I mistakenly referenced July 26 as the date the 48-hour deadline began. To be accurate, the list was issued on the morning of July 29, and that is when I submitted my objection — both by email and on the JAMS dashboard.

Accordingly, the 48-hour deadline runs through July 31 and remains in full effect.

Sincerely,
[Quoted text hidden]

███████ <████████@jamsadr.com>                    Wed, Jul 30 at 9:21 AM
To: Jorden Timothy <j████████████████>
Cc: Scott, Stephen <smscott@fisherphillips.com>, Edwards, Bobbi <bedwards@fisherphillips.com>, McClintock, Cyndi <cmcclintock@fisherphillips.com>

Good Morning,

Thank you for your email.  Can all Parties please confirm the below?

[Quoted text hidden]

OBJECTION FOR ARBITRATOR STRIKE LIST – LACK OF QUALIFIED NEUTRAL FOR HEALTHCARE FRAUD AND AI CASE.pdf

---

A█████████ <█████@jamsadr.com>                          Tue, Jul 29 at 5:50 PM
To: Jorden Timothy <j███████████████████>
Cc: Scott, Stephen <smscott@fisherphillips.com>, Edwards, Bobbi <bedwards@fisherphillips.com>, McClintock, Cyndi <cmcclintock@fisherphillips.com>

Good Evening,

Thank you for your email.  Per JAMS Employment Rules (Rule 15) all Parties will have 7 calendar days to respond to any challenge of an arbitrator(s)/strike list provided by JAMS.  If all Parties are not in agreement to receive a revised strike and rank list as requested by Claimant below, please provide your response to the attached by close of business August 6, 2025.  Once all Parties have submitted their response(s), JAMS will review all Parties' positions and provide Parties with next steps.

Thanks again and please let me know if you have any questions.

[Quoted text hidden]
OBJECTION FOR ARBITRATOR STRIKE LIST – LACK OF QUALIFIED NEUTRAL FOR HEALTHCARE FRAUD AND AI CASE.pdf

---

Jorden Timothy <j███████████████████@jamsadr.com>          Tue, Jul 29 at 6:11 PM
To: A█████████ <█████████@jamsadr.com>
Cc: Scott, Stephen <smscott@fisherphillips.com>, Edwards, Bobbi <bedwards@fisherphillips.com>, McClintock, Cyndi <cmcclintock@fisherphillips.com>

Dear █████,

Thank you for your message. However, I must respectfully clarify that on July 2, we reached a clear agreement that any arbitrator assigned to this matter must have verifiable experience in AI and emerging technology — consistent with the nature of this case and the JAMS Optional Rules for Disputes Involving Artificial Intelligence Systems. That was a foundational agreement to ensure fairness in a case involving whistleblower law, healthcare fraud, AI-assisted filings, and complex shell company structuring.

This is not a routine employment case. This is a $15 billion matter involving active federal IRS whistleblower filings and allegations of falsified W-2s through dissolved companies. Under JAMS Rule 15(b), a case of this magnitude and complexity should be matched with an arbitrator who is genuinely qualified to oversee it. Instead, the current strike list includes no one with experience in any of the core subjects: not AI litigation, not pharmaceutical fraud, not whistleblower law, and not shell structuring.

On July 18, I made it explicitly clear that I would not accept any strike list that excluded qualified arbitrators. On July 26, I gave a 48-hour deadline for correction. Since this list was issued within that 48-hour window, we are still within the deadline period — and my position remains unchanged. The list must be corrected.

JAMS invoking a 7-day strike rule assumes both parties are engaging with the list in good faith. That is not the case here. Respondents have failed to appear for months, reactivated a dissolved shell company mid-arbitration, and submitted a $6,130 deposit without disclosing it to me or the case record. They have shown every intent to manipulate the process, and this list, lacking all relevant qualifications, furthers that pattern.

The 48-hour deadline still stands. I will proceed with my federal petition under 9 U.S.C. § 5 to compel appointment of a qualified arbitrator. As stated, the only names presented who are reasonably aligned with the issues are Daniel Garrie and Ryan Abbott. If respondents agree to one of them immediately, I am willing to proceed. And that is generous after extreme bias. Otherwise, I cannot continue in a forum that has repeatedly ignored its own standards and enabled concealment.

Respectfully,

[Quoted text hidden]

3

Exhibit 30:

Petitioner's

Objection to

Strike List

OBJECTION FOR ARBITRATOR STRIKE LIST

Jorden Hollingsworth



## IN THE MATTER OF ARBITRATION
### BEFORE JAMS

JORDEN HOLLINGSWORTH,

Petitioner,

**JAMS Reference No. 5160000821**

v.

SANOFI-AVENTIS US; CHATTEM INC.;
QUTEN RESEARCH INSTITUTE LLC; AMJ
SERVICES LLC; DRVM LLC; DEEPAK
CHOPRA; MAGED BOUTROS; ASHRAF
BOUTROS; MARIE-LAURIE AMIARD-
BOUTROS,

Respondents.

## OBJECTION FOR ARBITRATOR STRIKE LIST – LACK OF QUALIFIED NEUTRAL FOR HEALTHCARE FRAUD AND AI CASE

**PLEASE TAKE NOTICE** that Claimant hereby formally objects to the arbitrator strike list

issued in this matter, pursuant to JAMS Rule 15(b) and the July 2, 2025 agreement between the

parties. The basis for this objection is detailed below.

OBJECTION FOR ARBITRATOR STRIKE LIST

1. This case involves highly complex, federally significant issues, including:

   • **Proven healthcare fraud by a global pharmaceutical company**

   • **Tax evasion using dissolved entities and shell structures**

   • **Confirmed IRS whistleblower submissions**

   • **AI-generated legal filings and forensic exhibit evidence**

   • **Multi-layered national payroll and labor law violations**

2. Before the strike list was issued, Claimant made it explicitly clear, and both parties agreed on July 2, 2025, that under JAMS Rule 15(b), **every arbitrator presented must have relevant experience in AI, emergent technology, and digital evidence.** That agreement was central, because AI is not a side element of this case. It is the core of how the fraud was identified, how the filings were produced, and how the evidence is structured.

3. The sectors involved—**healthcare fraud, tax concealment, whistleblower law, labor misclassification**—all intersect through AI-powered forensic investigation. Without arbitrators who understand that technological foundation, no fair or competent evaluation of the case can occur. The agreement applied to the entire list that was given.

4. Per **JAMS' Artificial Intelligence Dispute Rules (adopted in 2024),** AI-related disputes require procedural oversight tailored to emerging tech, digital evidence handling, and

2

expert inspection. These responsibilities assume an arbitrator who understands AI-supported filings, data structures, and technology-integrated legal arguments.

5.  Additionally, after a thorough review, not one arbitrator on this list has any documented experience handling a federal whistleblower case, including matters under the **False Claims Act, the IRS Whistleblower Program, or any large-scale healthcare fraud enforcement actions.** This omission is not procedural, it is foundational. The core of this case centers on **confirmed IRS submissions, pharmaceutical fraud, and complex shell structuring used to conceal payroll, taxes, and liability through dissolved and misrepresented entities.**

6.  While all of the listed arbitrators are undoubtedly honorable and highly experienced in their respective fields —such as employment law, insurance defense, construction litigation, or probate — none possess the subject matter expertise required to fairly adjudicate this dispute. None of the arbitrators have:

    •   **Presided over national-level healthcare fraud or global pharmaceutical concealment schemes**

    •   **Adjudicated whistleblower claims involving tax fraud, entity structuring, or federal agency submissions**

    •   **Worked with AI-generated legal filings, smart contracts, or technology-driven audit frameworks**

    •   **Handled cases involving multi-billion-dollar fraud claims with federal enforcement implications**

OBJECTION FOR ARBITRATOR STRIKE LIST

7. None of the proposed arbitrators have any documented experience adjudicating shell structuring abuse, entity concealment, or layered corporate fraud. The entire scheme depends on fake or dissolved companies, off-book payroll, and concealment of liability across corporate layers. To ignore that in the selection of arbitrators is to erase the very nature of the fraud.

8. The result is a list that, while composed of accomplished neutrals, is categorically unfit to oversee a **whistleblower-led arbitration rooted in AI evidence, national healthcare fraud, and systemic shell structuring abuse.** This strike list fails to meet the agreed-upon standards set under **JAMS Rule 15(b) and the 2024 JAMS AI Dispute Guidelines,** and **it directly contradicts the subject matter agreement made by both parties on July 2, 2025.** As such, it jeopardizes the procedural integrity of the arbitration and must be corrected immediately.

9. **This list appears to be procedurally stacked against Claimant.** It does not reflect the qualifications agreed to on July 2, and it does not reflect what JAMS itself claims to offer under its 2024 AI framework. As such, it is both procedurally and ethically deficient.

10. JAMS has an affirmative duty to maintain the integrity and neutrality of the arbitration process, and to avoid even the appearance of bias or procedural stacking.

OBJECTION FOR ARBITRATOR STRIKE LIST

11. Claimant hereby gives JAMS **48 hours** from the date of this notice to issue a corrected

strike list that includes arbitrators with the following qualifications:


1.      **Documented experience in AI, smart contracts, cybersecurity, or digital**

**evidence**

2.      **Prior handling of healthcare fraud, billing concealment, or pharmaceutical**

**oversight**

3.      **Familiarity with whistleblower law and large-scale corporate structuring**

**abuse**

4.      **Demonstrated capacity to preside over multi-billion-dollar or federally**

**triggered disputes**

5.      **Demonstrated understanding of corporate shell structuring, entity-layer**

**concealment, and the use of dissolved or fraudulent companies to evade payroll, tax,**

**and regulatory obligations**


12. If JAMS does not correct the list within this window, **Claimant will proceed to request**

**federal court oversight and judicial appointment of a qualified arbitrator,** pursuant

to the procedural fairness required by the nature of this case and the rules already agreed

upon.


13. This case has already triggered federal scrutiny and IRS action. If JAMS is unwilling or

unable to provide a qualified neutral consistent with its own AI framework and the


5

OBJECTION FOR ARBITRATOR STRIKE LIST

parties' agreement, the matter will be immediately escalated to preserve procedural

fairness.

14. Claimant respectfully requests confirmation of receipt and clarification on how JAMS

intends to respond to this objection.

Respectfully submitted,

Dated: July 29th, 2025

/s/ Jorden Hollingsworth
Jorden Hollingsworth
Pro Se Petitioner

6

Exhibit 31:

JAMS

Disclosures

**JAMS Commencement Disclosure (MKT018I)**

Hollingsworth, Jorden vs. DRVM LLC, et al.

JAMS administers approximately 20,000 cases per year. This report lists the numbers of cases JAMS has administered in the last five years involving any party, lawyer, or law firm in the present case. "Administered" means any case in which JAMS received a payment, regardless of which party (or parties) remitted payment. The numbers below do not include the present case. All branches of law firms are included. JAMS has more than 450 neutrals on its panel, and approximately one third of JAMS neutrals have an ownership share in the company. Each owner has one share.

Owners are not privy to information regarding the number of cases or revenue related to cases assigned to other panelists. No shareholder's distribution has ever exceeded 0.1% of JAMS total revenue in a given year. Shareholders are not informed about how their profit distributions are impacted by any particular client, lawyer or law firm and shareholders do not receive credit for the creation or retention of client relationships. JAMS typically serves this report on the parties at the commencement of a JAMS matter. This report is not provided to JAMS' neutrals and will not be provided to the neutral eventually selected for this matter. JAMS neutrals are not informed about matters handled by other neutrals and are not privy to the numbers of matters involving any particular company, lawyer or law firm other than matters in which they have previously served as a neutral.

Please note, cases administered by JAMS Denver are not included in this report. JAMS Denver is a licensee office and does not share the same case administration system as JAMS. If you would like disclosure information for Denver administered cases, please notify your Case Manager within 15 days.

Once appointed in this case, the neutral will issue his or her own required disclosures.

Reference # 5160000821          06/23/2020 - 06/23/2025

---

### Claimant(s)

**Jorden Hollingsworth**

No Address Listed

**Cases heard with Jorden Hollingsworth**

No Cases to Report

---

### Counsel for Claimant

**Jorden Hollingsworth**



**Cases heard with Jorden Hollingsworth**

No Cases to Report

**Cases heard with**

No Cases to Report

---

1

JAMS Commencement Disclosure (MKT016I)

Hollingsworth, Jorden vs. DRVM LLC, et al

Reference # 5160000821    08/23/2020 - 08/23/2025

## Respondent(s)

### Ashraf Boutros

No Address Listed

Cases heard with Ashraf Boutros

No Cases to Report

### Deepak Chopra

No Address Listed

Cases heard with Deepak Chopra

No Cases to Report

### DRVM, LLC **

No Address Listed

Cases heard with DRVM, LLC **

No Cases to Report

### Maged Boutros

No Address Listed

Cases heard with Maged Boutros

No Cases to Report

### Marie-Laurie Amiard-Boutros

No Address Listed

Cases heard with Marie-Laurie Amiard-Boutros

No Cases to Report

2

**JAMS Commencement Disclosure (MKT016I)**

Hollingsworth, Jorden vs. DRVM LLC, et al

Reference # 5160000821          06/23/2020 - 06/23/2025

## Counsel for Respondent

**Ashraf Boutros**
10 Bloomfield Ave
Pine Brook, NJ 07058

**Cases heard with Ashraf Boutros**
No Cases to Report

**Cases heard with**
No Cases to Report

**Legal Department**
**Chattem, Inc.**
55 Corporate Dr.
Bridgewater, NJ 08807

**Cases heard with Legal Department**
No Cases to Report

**Cases heard with Chattem, Inc.**
Mediations\Neutral Analysis\Other

· Mediation(s) - Closed cases                                      1

**Deepak Chopra**
41 E. 11th St. 11th Floor
New York, NY 10003

**Cases heard with Deepak Chopra**
No Cases to Report

**Cases heard with**
No Cases to Report

**Bobbi Edwards**
**Fisher & Phillips LLP**
111 SW Fifth Ave
Suite 4040
Portland, OR 97204

**Cases heard with Bobbi Edwards**

*3*

JAMS Commencement Disclosure (MKT016I)

Hollingsworth, Jorden vs. DRVM LLC, et al.

Reference # 5160000821          08/23/2020 - 08/23/2025

No Cases to Report

**Stephen M. Scott**
**Fisher & Phillips LLP**
111 SW Fifth Ave
Suite 4040
Portland OR 97204

**Cases heard with Stephen M. Scott**

Arbitration

- Arbitration(s) - Closed cases                    2

- Arbitration(s) - Open cases                      1

**Cases heard with Fisher & Phillips LLP**

Arbitration

- Arbitration(s) - Closed cases                  984

- Arbitration(s) - Open cases                    360

Court Reference

- Court Reference(s) - Closed cases                3

- Court Reference(s) - Open cases                  1

Mediations\Neutral Analysis\Other

- Med-Arb(s) - Closed cases                        6

- Mediation(s) - Closed cases                    399

- Mediation(s) - Open cases                       29

- Meeting Facilitation(s) - Closed cases           1

**Marie-Laurie Amiard-Boutros**
836 E Hermosa Dr
Fullerton, CA 92835

**Cases heard with Marie-Laurie Amiard-Boutros**

No Cases to Report

**Cases heard with**

No Cases to Report

4

JAMS Commencement Disclosure (MKT016I)

Hollingsworth, Jorden vs DRVM LLC, et al

Reference # 5160000821          06/23/2020 - 06/23/2025

Legal Department
**Quten Research Institute LLC**
10 Bloomfield Ave  Building B
Pine Brook, NJ 07058

Cases heard with Legal Department
No Cases to Report

Cases heard with Quten Research Institute LLC
No Cases to Report

Legal Department
**Sanofi-Aventis U.S. Inc. \*\***
55 Corporate Dr
Bridgewater, NJ 08807

Cases heard with Legal Department
No Cases to Report

Cases heard with Sanofi-Aventis U.S. Inc. \*\*

Arbitration
- Arbitration(s) - Closed cases          1
- Arbitration(s) - Open cases            1

Court Reference
- Court Reference(s) - Closed cases      1

Mediations\Neutral Analysis\Other
- Mediation(s) - Closed cases            9

Legal Department
**Universal Registered Agents**
698 12th SE STE 200 Salem
Salem, OR 97301

Cases heard with Legal Department
No Cases to Report

Cases heard with Universal Registered Agents
No Cases to Report

5

**JAMS Commencement Disclosure (MKT016I)**

Hollingsworth, Jorden vs. DRVM LLC, et al

Reference # 5180000821          06/23/2020 - 08/23/2025

## Firm Names

### AMJ Services **

Disclosures for AMJ Services include the following entities in addition to AMJ Services
   DRVM, LLC

### DRVM, LLC **

Disclosures for DRVM, LLC include the following entities in addition to DRVM, LLC
   AMJ Services

### Sanofi-Aventis U.S. Inc. **

Disclosures for Sanofi-Aventis U.S. Inc. include the following entities in addition to Sanofi-Aventis U.S. Inc.
   Sanofi Aventis Singapore PTE Ltd.
   Sanofi Aventis Singapore PTE Ltd.
   Sanofi S.A.
   Sanofi S.A.
   Sanofi US Services, Inc.
   Sanofi US Services, Inc.
   Sanofi Winthrop Industries
   Sanofi Winthrop Industries
   Sanofi-Aventis Deutschland GmbH
   Sanofi-Aventis Deutschland GmbH
   Sanofi-Aventis U.S. LLC
   Sanofi-Aventis U.S. LLC

6

Exhibit 32:

Arbitration

Demand

Service

List

**FINAL SUPPLEMENTAL PROOF OF SERVICE**

Claimant: Jorden Hollingsworth

I, Jorden Hollingsworth, submit this Supplemental Proof of Service on **April 14th, 2025**, in connection with the above-captioned arbitration matter to provide full clarification regarding service of all named Respondents.

**Previously Served Respondents (Confirmed via USPS Certified Mail):**

| Respondent | Address | Tracking # | Delivered |
|---|---|---|---|
| Sanofi-Aventis U.S. LLC | 55 Corporate Dr, Bridgewater, NJ 08807 | 70223330000070316155 | March 4, 2025 |
| Deepak Chopra | 41 E. 11th St. 11th Floor New York, NY 10003 | 70223330000070316018 | March 4, 2025 |
| Chattem, Inc. | 55 Corporate Dr, Bridgewater, NJ 08807 | 70223330000070316148 | March 4, 2025 |
| Quten Research Institute LLC | 10 Bloomfield Ave. Building B, Pine Brook, NJ 07058 | 70223330000070316193 | March 10, 2025 |
| Ashraf "Peter" Boutros | 10 Bloomfield Ave. Pine Brook, NJ 07058 | 70223330000070315684 | March 10, 2025 |
| DRVM LLC | GRSM – 315 Pacific Ave San Francisco, California 94111 | 70223330000070260595 | February 24th, 2025 |
| AMJ Services | Universal Registered Agents– 698 12th SE STE 200 Salem, Oregon 97301 | 9589071052702820082997 | April 14th, 2025 |
| Maged "Mike" Boutros | Universal Registered Agents– 698 12th SE STE 200 Salem, Oregon 97301 | 9589071052702820082997 | April 14th, 2025 |

**Respondents Pending Service / Avoiding Service:**

| Respondent | Status | Tracking |
|---|---|---|
| Marie-Laurie Boutros | Amiard- 636 E Hermosa Dr. Fullerton, CA 92835 - Attempt made, no delivery confirmation | 70223330000070264562 |

These Respondents are believed to be connected to the core network of shell entities and will be addressed fully during discovery. Their participation in this matter is preserved and may be enforced upon arbitrator discretion.

**Certification:**

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief. All required service obligations have been fulfilled in accordance with JAMS Rules.

Signed,
Jorden Hollingsworth
Claimant, Pro Se
April 14th, 2025

2