IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

JORDEN HOLLINGSWORTH

    Petitioner,

  v.

SANOFI-AVENTIS US,
CHATTEM INC., QUTEN
RESEARCH INSTITUTE LLC,
AMJ SERVICES LLC,
DRVM LLC, DEEPAK CHOPRA, MAGED
BOUTROS, ASHRAF BOUTROS,
MARIE-LAURIE AMIARD-BOUTROS,

    Respondents.

Case No. 3:25-cv-01342-AB

OPINION & ORDER

Jorden Hollingsworth

    Self-represented

Bobbi J. Edwards
Stephen M. Scott
Fisher Phillips LLP
560 SW Tenth Ave Suite 450
Portland, OR 97205

    Attorneys for Respondents DRVM LLC and AMJ Services LLC

1 – OPINION & ORDER

Daniel J. Oates
Miller Nash LLP
605 5th Ave S Suite 900
Seattle, WA 98104

    Attorney for Respondent Deepak Chopra

**BAGGIO, District Judge:**

Petitioner Jorden Hollingsworth, a self-represented litigant, filed a Petition to Compel Arbitrator Appointment pursuant to 9 U.S.C. § 5 against nine Respondents. Pet. Compel Arb. Appointment ("Pet."), ECF No. 2. Respondent DRVM filed a Response. DRVM Resp., ECF No. 6. For the reasons below, the Court grants in part and denies in part Petitioner's Petition to Compel Arbitrator Appointment. The Court moots all other pending motions.

## BACKGROUND

Petitioner was employed by Respondent DRVM for a short period of time before Respondent DRVM terminated Petitioner's employment. Pet. ¶ 6; Pet. Ex. 2, at 2; DRVM Resp. 2–3 (stating Petitioner worked twenty-two shifts before his termination on December 12, 2024). The parties' underlying dispute centers on Petitioner's allegations that Respondent DRVM failed to pay Petitioner the proper amount of penalty wages after Respondent DRVM was late in paying Petitioner his final wage check. Pet. Ex. 2, at 2; DRVM Resp. 3.

This underlying dispute is subject to arbitration under an arbitration agreement signed by Petitioner and Respondent DRVM. Pet. Ex. 1 ("Agreement"). The Agreement covers "any claim . . . that arises out of or relates to any service Employee has performed for Employer." *Id.* ¶ B. Petitioner and Respondent DRVM do not dispute the validity or applicability of the Agreement to this dispute and were engaged with Judicial Arbitration and Mediation Services, Inc.

2 – OPINION & ORDER

("JAMS") prior to the filing of this Petition. *See, e.g.*, Pet. Exs. 27–30 (compiling exchanges between Petitioner, Respondent DRVM, and JAMS).

The instant dispute arises from a disagreement between Petitioner and Respondent DRVM about the criteria for selection of an arbitrator. The Agreement provides that "[a]ll covered claims shall be resolved by a neutral arbitrator," that the "Parties shall follow the JAMS Employment Arbitration Rules," and that "[i]f the Parties cannot agree on an arbitrator, the court can appoint one." Agreement ¶¶ A, C. Petitioner and Respondent DRVM attempted to use a rank-and-strike method provided by JAMS but could not agree on the criteria for the list of neutrals. Pet. Ex. 28; DRVM Resp. 5. Petitioner seeks an arbitrator with expertise in artificial intelligence (AI), emerging technologies, and similar fields, while Respondent DRVM seeks an arbitrator with Oregon wage and hour expertise. Pet. Ex. 28; DRVM Resp. 6–7. After coming to a deadlock between these competing selection criteria, Petitioner filed the instant Petition.

Concurrent with the above litigation, Petitioner has expanded his claim from a wage claim to one that also alleges "corporate concealment, misuse of shell entities, and broader misconduct" committed not just by Respondent DRVM but by a host of "upstream entities" including "[Respondents] Sanofi, Chattem Inc., Quten Research Institute, and individuals such as Deepak Chopra and members of the Boutros family, who held ownership interests and exercised material control over affiliated entities." Pet. ¶¶ 2, 6. Petitioner has also made a series of ultimatums to Respondents that if they do not settle by certain dates, Petitioner will increase his monetary demands. For example, Petitioner offered to settle for $10 billion within 48 hours, and warned that "the demand will increase to $15 billion . . . and will rise weekly by $500 million as legal exposure deepens." Pet. Ex. 9, at 1.

//

## STANDARDS

"A contract evidencing a transaction involving commerce" is subject to the Federal Arbitration Act ("FAA"). 9 U.S.C. § 2. The FAA provides for a cause of action in United States district court for a party "aggrieved by the alleged failure . . . of another to arbitrate under a written agreement for arbitration . . . ." 9 U.S.C. § 4. "By its terms, the [FAA] 'leaves no place for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed.'" *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000) (quoting *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985)).

Section 5 of the FAA instructs that where an arbitration agreement provides "a method of naming or appointing an arbitrator or arbitrators or an umpire, such method shall be followed." 9 U.S.C. § 5. Where the agreement does not specify a method or "if for any other reason there shall be a lapse in the naming of an arbitrator" then "upon the application of either party to the controversy the court shall designate and appoint an arbitrator . . . as the case may require." *Id.* Indeed, Section 5 "contemplates that the parties must follow the contractual procedure for arbitrator selection if such exists." *Pac. Reinsurance Mgmt. Corp. v. Ohio Reinsurance Corp.*, 814 F.2d 1324, 1327 (9th Cir. 1987). However, "the court itself may appoint an umpire if there is no such provision, if the specified method is not utilized by one of the parties, or if there is simply a lapse in time in the naming of the umpire for any other reason." *Id.*

## DISCUSSION

Petitioner petitions the Court to appoint an arbitrator consistent with his selection criteria and to direct all Respondents to arbitration. Pet. ¶ 34. The Court will first discuss the appropriate parties to this action before turning to the dispute about arbitrator selection.

4 – OPINION & ORDER

I.   **Parties to the Agreement**

Petitioner names nine Respondents, only one of which—Respondent DRVM—is a signatory to the Agreement. Petitioner writes that he was "employed by DRVM LLC, an entity with no standalone operations, personnel infrastructure, or independent business presence . . . ." Pet. ¶ 6. In support of his inclusion of additional Respondents, Petitioner alleges that Respondent DRVM is "under the direct or indirect control of larger corporate respondents, including Sanofi, Chattem Inc., Quten Research Institute, and individuals such as Deepak Chopra and members of the Boutros family, who held ownership interests and exercised material control over affiliated entities." *Id.*

"In general, only a party to an arbitration agreement can be compelled to arbitrate." *Tamsco Prop. LLC v. Langemeier*, 597 F. App'x 428, 429 (9th Cir. 2015). That said, the Ninth Circuit has "explained that 'nonsignatories of arbitration agreements may be bound by the agreement under ordinary contract and agency principles.'" *Comer v. Micor, Inc.*, 436 F.3d 1098, 1101 (9th Cir. 2006) (quoting *Letizia v. Prudential Bache Sec., Inc.*, 802 F.2d 1185, 1187 (9th Cir. 1986)). "Among these principals are '1) incorporation by reference; 2) assumption; 3) agency; 4) veil-piercing/alter ego; and 5) estoppel.'" *Id.* (quoting *Thomson–CSF, S.A. v. Am. Arb. Ass'n*, 64 F.3d 773, 776 (2d Cir. 1995)). Petitioner argues that he should be allowed to pierce the corporate veil with respect to nonsignatory parties. Pet. Ex. 2, at 26–31.

The Court looks to state law for contract and agency principles. In Oregon, "to pierce the corporate veil, [the petitioner] has the burden to prove that (1) [the respondent] had actual control of the entity, (2) [the respondent] used his control of [the entity] to engage in improper conduct, and (3) [the petitioner] was harmed as a result of that improper conduct." *Wetzel v. Sandlow*, 318 Or. App. 608, 612, 509 P.3d 182 (2022). With respect to the harm element, a party must

5 – OPINION & ORDER

"demonstrate a relationship between the misconduct and the plaintiff's injury." *Amfac Foods v. Int'l Sys.*, 294 Or. 94, 111, 654 P.2d 1092 (1982).

Here, Petitioner does not show a relationship between corporate misconduct and his injury. First, if the Court conceives of Petitioner's injury as stalled arbitration, there is no relationship between alleged corporate misconduct and the impasse. Respondent DRVM has communicated in the relevant email chains with Petitioner and JAMS; Respondent DRVM's corporate structure is not stalling arbitration. *See generally* Pet. Exs. 27–30 (compiling email communications between Petitioner, Respondent DRVM, and JAMS).

Second, if the Court conceives of Petitioner's injury as the alleged nonpayment of penalty wages, the relationship between the alleged misconduct and injury also falters. Petitioner avers a complex scheme, most of which is alleged in the arbitration demand included as an exhibit to the Petition. *See* Pet. Ex. 2. Petitioner argues that Respondents engaged in "corporate concealment [and] misuse of shell entities," Pet. ¶ 2, and created a "multi-layered payroll structuring operation . . . through a centralized financial hub" in Nevada. Pet. Ex. 2, at 1. Petitioner alleges that Respondent DRVM's business entity registration was inactive for a period in early 2025, that "[s]uccessor businesses were inadequately capitalized to meet payroll obligations," and that "[p]ayroll was structured through successor businesses and private trusts to defraud employees and evade financial responsibility." Pet. Ex. 2, at 64; Pet. Ex. 14, at 4 (appearing to show Respondent DRVM was inactive between January and April 2025). Petitioner further alleges that this structure meant "wage claims could not be directed at a singular employer." Pet. Ex. 2, at 16. However, Petitioner also acknowledges that all his paystubs listed "DRVM LLC" and that he was not employed by Respondent DRVM after December 12, 2024. *Id.* at 1, 10, 14, 19. Even assuming Petitioner's allegations of corporate shell games as true, those shell games did not

appear to cause Petitioner's injury of alleged nonpayment of penalty wages. Rather, the dispute is whether Respondent DRVM owes him penalty wages, as Petitioner alleges, or whether Respondent DRVM's January 2025 payment of penalty wages resolved the matter, as Respondent DRVM contends. Pet. Ex. 2, at 43, 46; DRVM Resp. 3.

In sum, Petitioner's efforts to pierce the corporate veil fail to tie the alleged corporate misconduct to the underlying injury. It is the dispute about the criteria for arbitrator selection—not corporate misconduct—that stands in the way of "mov[ing] the parties to an arbitrable dispute out of court and into arbitration as quickly and easily as possible." *Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 22 (1983).

Because Petitioner has failed to demonstrate a relationship between the alleged corporate misconduct and Petitioner's injury, the Court declines to pierce the corporate veil on that ground alone. Therefore, the nonsignatory Respondents are dismissed from this action. The next section applies only to the signatories of the Agreement—Petitioner[1] and Respondent DRVM.

## II. Arbitrator Selection

Petitioner argues that the arbitrator must have "AI and technical subject matter expertise," Pet. Ex. 22, at 9, because "this is a systemic fraud case, one that has been exposed and advanced almost entirely through the transparent, ethical use of artificial intelligence by a pro se claimant up against a billion-dollar legal and corporate structure." Pet. Ex. 21, at 6. Respondent DRVM disagrees, arguing that this case is a wage and hour claim under Oregon law. DRVM Resp. 2. Respondent DRVM seeks the appointment of "a neutral with substantial Oregon wage and hour law experience." *Id.* Respondent DRVM indicated in communications with

---

[1] Petitioner printed his name as Jorden Timothy, not Jorden Hollingsworth, on the Agreement. The parties do not dispute that this is the same person.

7 – OPINION & ORDER

JAMS and Petitioner that it would accept a neutral who had both Oregon wage and hour experience and the additional qualifications listed by Petitioner, but that Oregon wage and hour experience was a prerequisite. Pet. Ex. 25.

When parties to arbitration reach a stalemate and "the contractual selection method [is] doomed[,]" the "district judge [has] the power to appoint an umpire" pursuant to 9 U.S.C. § 5. *Pac. Reinsurance*, 814 F.2d at 1327–28. Section 5 of the FAA requires that the parties first be given an opportunity to select an arbitrator according to the methods in their agreement. 9 U.S.C. § 5. But when the district court "appoint[s] the umpire only after the parties [have] tried and failed to make such appointment, it is clear that the judge act[s] within the scope of the authority granted him by the Arbitration Act." *Pac. Reinsurance*, 814 F.2d at 1329; *see also Stop & Shop Supermarket Co. LLC v. United Food and Commercial Workers Union Local 342*, 246 F. App'x 7, 11 (2d Cir. 2007) (affirming district court's "authority" and "obligation" to appoint an arbitrator under Section 5 when "[e]ach party had designated its own pick, whom the other side refused to recognize as the legitimate arbitrator[,]" finding "[s]uch a deadlock satisfies [Section] 5's requirement of a 'lapse in the naming of an arbitrator'") (quoting 9 U.S.C. § 5). Indeed, "the intent of Congress was to spur the arbitral process forward, rather than to let it stagnate into endless bickering over the selection process." *Pac. Reinsurance*, 814 F.2d at 1329.

Here, the Agreement provides that the "Parties shall follow the JAMS Employment Arbitration Rules." Agreement ¶ C. In turn, Rule 15 of the JAMS Employment Arbitration Rules provides procedures for when, like here, the parties do not agree on an arbitrator: "JAMS shall send the Parties a list of at least five (5) Arbitrator candidates in the case of a sole Arbitrator" and the parties will have seven days to "strike two (2) names in the case of a sole Arbitrator . . . and shall rank the remaining Arbitrator candidates in order of preference." Jud. Arb. Mediation

Servs., *Employment Arbitration Rules & Procedures*, Rule 15(b)–(c) (2021).[2] For most cases, these procedures suffice for courts to deny a petition to compel appointment on the grounds that the contractual language does the job. *E.g.*, *Patrone v. Plasma Procurement Servs., Inc.*, No. CV 09–03429 RGK (AGRx), 2009 WL 10700383, at *3 (C.D. Cal. July 9, 2009) (declining to appoint arbitrator where arbitration agreement outlined a method of one party proposing and the other selecting because "if the parties designate an arbitrator or a method to select the arbitrator, a court order is unnecessary").

However, the record indicates that the parties already tried to proceed under JAMS Rule 15 procedures to no avail. *See* Pet. Ex. 30 (Petitioner objecting to all arbitrators proposed by JAMS). The JAMS method of rank-and-strike has not yielded an arbitrator because the parties cannot even agree on the criteria for the list of neutrals to then rank and strike. Petitioner insists on expertise in AI-assisted litigation among other criteria; Respondent DRVM insists on Oregon wage and hour law. *See* Pet. Ex. 28, at 1–4 (Petitioner rejecting all seven JAMS-proposed candidates because "none possess experience in AI-assisted litigation, whistleblower law, pharmaceutical fraud, or complex shell restructuring" and concluding that Petitioner "therefore cannot proceed"); DRVM Resp. 7 ("This matter needs a knowledgeable arbitrator that is experienced in Oregon wage and hour law . . . ."). JAMS has been unable to find a neutral with overlapping expertise.

The Court, in its authority under Section 5 as outlined in *Pacific Reinsurance*, orders the following appointment procedure. Because the Agreement mandates that the "Parties shall follow the JAMS Employment Arbitration Rules," the Court orders the parties to return to

---

[2] Available: https://www.jamsadr.com/rules-employment-arbitration/english [https://perma.cc/H4H3-8FEZ].

9 – OPINION & ORDER

JAMS. Agreement ¶ C. The parties shall again follow the procedures outlined in JAMS Employment Arbitration Rules & Procedures Rule 15. JAMS shall provide a list of neutrals with Oregon wage and hour experience. Each party shall be allowed the rank and strike privileges provided in JAMS procedures, but the parties must proceed with one of the JAMS-proposed neutrals with Oregon wage and hour experience. Petitioner may not object to the list of neutrals for lack of expertise with artificial intelligence, emerging technologies, pharmaceutical fraud, shell corporations, whistleblower law, federal oversight, AI assisted litigation, or similar.

## CONCLUSION

The Court GRANTS in part and DENIES in part Petitioner's Petition to Compel Arbitrator Appointment [2]. The Court grants the Petition insofar as the Court orders the parties to select an arbitrator according to the procedure described herein. The Court otherwise denies Petitioner's request for an arbitrator with experience in artificial intelligence, emerging technologies, or similar. Furthermore, the Court DISMISSES all Respondents other than the signatory party to the Agreement—Respondent DRVM—from this action. All other pending motions are DENIED as moot.

The parties shall complete the selection process described herein within 60 days of this Order. Upon selection, the parties shall immediately notify the Court, and this case will be dismissed.

IT IS SO ORDERED.

DATED this  24th  day of November, 2025.

*Amy M. Baggio*
AMY M. BAGGIO
United States District Judge

10 – OPINION & ORDER